Plaintiff's Exhibit B

# AGREEMENT

## Between the



## Union Pacific Railroad

### and the

## Transportation – Communications Union

**Effective July 31, 2006**
**PB-90100**

CONFIDENTIAL

UP-AVINA-002226

# INDEX

| | RULE | PAGE |
|---|---|---|
| Abolishing Converted Positions | Appendix S | 140 |
| Abolishing Agreement Positions | 18 | 17 |
| Absence from Duty | 43 | 35 |
| Acquisition of Seniority | 2 | 5 |
| Adjustment in Rates | 26 | 21 |
| All Services Rendered | | |
|     Rate Formula | Appendix Q | 138 |
|     Rate Formula (1-A) | Appendix R | 139 |
| Allowances | | |
|     Extra and Traveling Relief Employees | 32 | 23 |
| Application for Bulletined Positions | 11 | 12 |
| Application for Positions - Gen. | | |
|     Communications Offices | 63 | 44 |
| Application for Short Vacancies | 12 | 13 |
| Application for Positions - Other Zones | 15 | 16 |
| Arbitration Award No. 298 | Appendix F | 101 |
| Assignment Away from Headquarters | 32 | 23 |
| Assignment for Overtime | 38 | 26 |
| Attending Court - Company Witness | 49 | 39 |
| | | |
| Basic Eight (8) Hour Day | 22 | 20 |
| Basis of Pay | 23 | 21 |
| Beginning of Work Week | 41 | 30 |
| Bereavement Leave | 34 | 25 |
| Boarding Car Service | 30 | 22 |
| Bond Premiums and License Fees | 52 | 40 |
| Bulletin Boards for Employees | 60 | 44 |
| Bulletining Positions | 11 | 12 |
| | | |
| Call Rule | 39 | 27 |
| Change in Starting Time or Rest Days | 7 | 8 |
| Claims - Filing of Agreement Violations | 46 | 37 |
| Clerks, Definition of | 1 | 1 |
|     Commissions, Agents, | | |
|     Agent-Telegraphers | 68 | 47 |
| Communications Offices | 62 | 44 |
| Consolidations, Offices or Stations | 16 | 16 |

CONFIDENTIAL

UP-AVINA-002227

# INDEX (Continued)

|  | RULE | PAGE |
|---|---|---|
| Declining Promotion | 9 | 10 |
| Discipline Procedure | 45 | 36 |
| Dues Deduction Agreement | Appendix D | 75 |
| Duly Accredited Representative | 57 | 43 |
| Duties, Major Changing in | 33 | 24 |
| | | |
| Emergency Service | 67 | 47 |
| Enactment and Termination | 71 | 48 |
| Entry Rates | 3 | 6 |
| Equipment, Vehicles, Etc. | | |
|     Furnishing of | 51 | 40 |
| | | |
| Excepted Positions | 1 | 1 |
| Exercise of Seniority | 6 | 8 |
| Excessive Work | 69 | 47 |
| Extra Boards | 56 | 42 |
| | | |
| Failure to Qualify | 20 | 19 |
| Failure to Report After Leave Of Absence | 43 | 36 |
| Fitness & Ability | 8 | 9 |
| Five Day Work Week | 23 | 21 |
| Forms, Bidding, Bumping, etc. | 70 | 47 |
|     Standard | Appendix M | 120 |
| Forty Hour Work Week | 41 | 30 |
| Free Transportation | 47 | 38 |
| Funeral Pay | 34 | 25 |
| Furnishing Machines and Company Vehicles | 51 | 40 |
| | | |
| General Communications Offices - | | |
|     Functioning, Definitions | | |
|     and Maintenance Positions | 64 | 45 |
|         Managers | 66 | 46 |
| Grievances, Filing of | 46 | 37 |
| Guaranteed Extra Boards | 56 | 42 |
| | | |
| Health and Safety | 59 | 43 |
| Holiday Agreement, National Synthesis | Appendix B | 58 |
| Holiday, Call for Service | 39 | 27 |
| Holiday Pay Qualification | | |
|     Monthly Rates | Appendix N | 134 |
| Holiday Pay | 40 | 28 |
| Holiday Work | Appendix N | 134 |

CONFIDENTIAL

UP-AVINA-002228

# INDEX (Continued)

|  | RULE | PAGE |
|---|---|---|
| Incapacitated Employees | 54 | 41 |
| Intermittent Service | 36 | 25 |
| Interpretation of Rules | | |
|    by Carrier | 61 | 44 |
| Investigations - Hearings | 45 | 36 |
| | | |
| Job Stabilization Agreement | Appendix E | 85 |
| Jury Duty | 50 | 40 |
| | | |
| Leave of Absence | | |
|    Requests for | 43 | 35 |
|    Leave Of Absence, Returning from, | | |
|    Exercise of Seniority | 13 | 14 |
|    Licenses, Furnishing of | 52 | 40 |
| | | |
| Major Change in Duties | 33 | 24 |
| Managers - General Communications Offices | 66 | 46 |
| Meal Period | 35 | 25 |
| | | |
| Non-Discrimination | 53 | 41 |
| Notified or Called For Service | 39 | 27 |
| | | |
| Off-Track Vehicle Insurance | Appendix G | 105 |
| Overtime | 38 | 26 |
| | | |
| Pay Shortage | 48 | 39 |
| Personal Leave Days | 42 | 32 |
| Physical Examination- Disqualification | 54 | 41 |
| Political Contribution Agreement | Appendix V | 143 |
| Positions Abolished | 18 | 17 |
| Positions Abolished - Emergencies, Strikes | 17 | 16 |
| Posting Notices | 60 | 44 |
| | | |
| Posting Short Vacancies | 12 | 13 |
| Probationary Period - New Employees | 44 | 35 |
| Promotion to Non-Agreement | | |
|    Exempt Positions | 10 | 10 |
| | | |
| Qualify, Failure to | 20 | 19 |

III

CONFIDENTIAL

UP-AVINA-002229

# INDEX (Continued)

|  | RULE | PAGE |
|---|---|---|
| Rates, Changing of | 27 | 22 |
| Rating Positions | 24 | 21 |
| Rates, Preservation of | 25 | 21 |
| Rearrangement of Forces - Short Vacancies | 12 | 13 |
| Rearrangement of Forces - Sickness | 42 | 32 |
| Reduction in Forces | 18 | 19 |
| Reduction in Forces, Emergency, Strikes | 17 | 16 |
| Reinstated Positions | 19 | 19 |
| Relinquishing Positions | 6 | 8 |
| Representatives, Duly Accredited | 57 | 43 |
| Rest Days | 41 | 30 |
| Rest Days, Changing of | 7 | 8 |
| Resignation, Notification of | 55 | 42 |
| Retention of Seniority, Employees Promoted | 10 | 10 |
| Returning for Temporary Duty or Vacation | 13 | 14 |
| Roster, Seniority | 5 | 7 |
| Rulings | 61 | 44 |
| | | |
| Safety and Health | 59 | 43 |
| Seniority | | |
|     Acquisition of | 2 | 5 |
|     Fitness & Ability | 8 | 9 |
|     Roster | 5 | 7 |
|     Status - Employees Promoted | 10 | 10 |
|     Zones | 4 | 7 |
| Service Letter When Resigning | 55 | 40 |
| Service on Rest Days or Holidays | 39 | 27 |
| Scope | 1 | 1 |
| Shortage in Pay Checks | 48 | 39 |
| Short Vacancies | 12 | 13 |
| Sick Leave Allowance | 42 | 32 |
| | | |
| Standard Forms | 70 | 47 |
| Starting Time | 7 | 8 |
| Strikes, Returning from | 17 | 16 |
| Student Clerks | 37 | 26 |

IV

CONFIDENTIAL
UP-AVINA-002230

# INDEX (Continued)

| | RULE | PAGE |
|---|---|---|
| **Temporary Assignment** | | |
| Away From Home | 29 | 22 |
| Posting | 12 | 13 |
| Returning from | 13 | 14 |
| Temporary Road Service | 28 | 22 |
| Testing Employees | 14 | 15 |
| Time Limit on Claims - Filing of | 46 | 37 |
| Title, Positions Converted, Changing of | Appendix T | 141 |
| **Training Agreement** | | |
| Chief Operators - SC & NWD | Appendix H | 110 |
| Chief Operators - ED | Appendix I | 112 |
| Training Employees | 21 | 20 |
| Training Programs - Formal | Appendix O | 135 |
| Transferring | 31 | 23 |
| Across Zones | 15 | 16 |
| Positions Between Zones | 16 | 16 |
| Transportation - Allowances for | 47 | 38 |
| Travel Time - Boarding Cars | 30 | 22 |
| Traveling Relief - Chief Operators | Appendix J | 114 |
| Traveling Relief Employees | 32 | 23 |
| Traveling Relief Wire Chief | 65 | 46 |
| Tuition Reimbursement | 14 | 15 |
| | | |
| Uniforms | Appendix L | 118 |
| Union Shop Agreement | Appendix C | 64 |
| Union Shop Check-Off Agreement | Appendix D | 75 |
| | | |
| **Vacancies** | | |
| Bulletined | 11 | 12 |
| Short or Temporary | 12 | 13 |
| Manager -General Telegraph Offices | Appendix K | 116 |
| Vacation Agreement, National Synthesis | Appendix A | 49 |
| Vacation | 58 | 43 |
| | | |
| Witness, For Company | 49 | 39 |
| | | |
| Work, Overburdened or Excessive | 69 | 47 |
| Workweek | 41 | 30 |
| | | |
| Zones, Seniority | 4 | 7 |

v

## INDEX (Continued)

|  | RULE | PAGE |
|---|---|---|
| Vacation Agreement National Synthesis | Appendix A | 49 |
| Holiday Agreement, National Synthesis | Appendix B | 58 |
| Union Shop Agreement | Appendix C | 64 |
| Dues Deduction Agreement | Appendix D | 75 |
| Job Stabilization Agreement | Appendix E | 85 |
| Arbitration Award No. 298 | Appendix F | 101 |
| Off-Track Vehicle Insurance | Appendix G | 105 |
| Training Agreement | | |
|    Chief Operators - SC & NWD | Appendix H | 110 |
|    Chief Operators - ED | Appendix I | 112 |
| Traveling Relief - Chief Operators | Appendix J | 114 |
| Vacancies | | |
|    Manager -General Telegraph Offices | Appendix K | 116 |
| Uniforms | Appendix L | 118 |
| Standard Forms | Appendix M | 120 |
| Holiday Work | Appendix N | 134 |
| Holiday Pay Qualification Monthly Rates | Appendix O | 135 |
| Agreement Covering | | |
|    Formal Training Programs | Appendix P | 136 |
| All Services Rendered Rate Formula | Appendix Q | 138 |
| All Services Rendered Rate Formula (1-A) | Appendix R | 139 |
| Abolishing Converted Positions | Appendix S | 140 |
| Title, Positions Converted, Changing of | Appendix T | 141 |
| Understanding - Filling Short Vacancies | Appendix U | 142 |
| Political Contribution Payroll Deduction | Appendix V | 143 |
| Train Orders | Appendix W | 146 |
| | | |
| List of Excepted Positions D-1 | Attachment 1 | 148 |
| List of Excepted Positions D-2 | Attachment 2 | 153 |

CONFIDENTIAL

## RULE 1 - SCOPE. 

      (a)    These rules shall govern the hours of service, rates of pay and working conditions of the employees engaged in the work of the craft or class of clerical, office, station, tower and telegraph station and store house employees as such craft or class is or may be defined by the National Mediation Board.

      (b)    The work of the craft or class includes the writing or calculating incident to keeping records and accounts, writing and transcribing letters, bills, reports, statements and similar work and to the operation of the following machines or devices, or similar equipment or new office mechanical or electronic equipment or devices when used in the performance of work within the scope of this Agreement:

> Typewriters
> Adding Machines
> Calculating Machines
> Bookkeeping Machines
> Accounting Machines
> Timekeeping Machines
> Statistical Machines
> Teletype Machines
> Dictaphone Machines
> Keypunch Machines
> Electronic Accounting Machines
> Cathode Ray Tube Machines

      (c)    The following positions or work is subject to the provisions of this Agreement:

      <u>TELEGRAPHERS.</u>    Agents, agent-telegraphers, agent- telephoners, telegraphers, telephoners, telegrapher- clerks, telephoner-clerks, telegrapher-car distributors, ticket clerk-telegraphers, telegrapher-- switchtenders, C.T.C. telegraphers, train and tower directors, towermen, levermen, block operators, staffmen, managers, wire chiefs, repeater chiefs, chief operator, printer mechanicians, telephone operators (except switchboard operators) teletype operators, printer operators, agents non-telegraphers, and agents non-telephoners herein listed.

      <u>OTHERS.</u>    Office, station and stores employees, such as office boys, messengers, chore boys, train announcers, gatemen, baggage and parcel room employees (other than clerks), train and engine crew callers, station helpers, telephone switchboard operators, elevator operators, and watchmen (except in Special Service Department) employees engaged in assorting waybills and/or tickets, operators of office or station equipment devices, and appliances or machines for perforating, addressing envelopes, numbering claims and other papers, gathering and distributing mail, adjusting dictating machine cylinders and other analogous service; laundry workers, janitors and laborers employed in and around offices, stations, storehouses and warehouses.

      NOTE: The foregoing listing of positions is for reference and identification purposes only.  Such listing does not restrict inclusion within the Scope of the Agreement any positions not specifically listed above.

1

CONFIDENTIAL
UP-AVINA-002233

(d)  **EXCEPTIONS:**

(d-1)  The immediate office force of the following officers of the Company, the specific departments listed hereunder, and the positions listed in Attachment No. 1 are excepted from all of the provisions of this Agreement except Rules 1 and 2; however, all such positions are included in and are a part of the craft and class by this Agreement:

## EXECUTIVE OFFICES AND EXEMPT DEPARTMENTS

Office of:

| | |
|---|---|
| President | All Positions |
| Vice President - Executive Dept. | "    " |
| Vice President - Finance & Admin. | "    " |
| Vice President - Information Tech. | "    " |
| Exec. Vice President – Operations | "    " |
| Exec. Vice President - Marketing & Sales | "    " |
| Labor Relations Department | "    " |
| Law Department | "    " |
| Risk Management Section of Operations Department | "    " |
| Controller | "    " |
| Security & Special Services | "    " |

## ASSISTANT VICE PRESIDENT OFFICES

The following specific positions are also subject to this exception (d-1):

Assistant Vice President - Planning & Analysis
Administrative Assistant - AVP - P&A
Secretary - AVP - P&A

Assistant Vice President - Sales
Assistant to AVP - Sales
Secretary to AVP - Sales

Assistant Vice President - Marketing
Secretary to AVP - Marketing

Assistant Vice President - Intermodal Sales
Secretary to AVP - IMS

Vice President - Human Resources
EEO Coordinator (2)
Secretary to VP - Human Resources

Assistant Vice President - Supply
Personnel Administrator
Secretary to AVP- P&M

Assistant Vice President - Operations
Secretary to AVP - Operations

2

CONFIDENTIAL

UP-AVINA-002234

Except in the Executive Offices and Exempt Departments shown above, the establishment of additional positions under this class of 1(d-1) exception, including positions listed in the offices of Assistant Vice Presidents and those positions shown on Attachment 1, can only be accomplished by agreement between the Director of Labor Relations and the General Chairman.

(d-2)    The rules of this Agreement, except Rules 1, 2 and 10, are not applicable to clerical positions, the nature of which consists of Associate Business Systems Consultant, System Method Analyst, Information & Assistance Analyst, Junior Programmer, Programmer and Senior Programmer and the positions listed in Attachment No. 2.  Any addition to this list of excepted positions shall be made only by agreement between the Director of Labor Relations and the General Chairman.  Employees holding these excepted positions shall be subject to the terms and provisions of the Union Shop Agreement (Appendix C), notwithstanding the exceptions set forth in Sections 2 and 3 thereof.

(e-1)    Partially excepted positions are excepted from the promotion, assignment and displacement rules of this Agreement.  Employees holding these positions shall be subject to the Union Shop Agreement (Appendix No. C), notwithstanding the exceptions set forth in Sections 2 and 3 thereof.

(e-2)    All Services Rendered (ASR) partially excepted positions are excepted from the promotion, assignment displacement and "overtime and call" rules of this Agreement.  Employees holding these ASR positions shall be subject to the Union Shop Agreement (Appendix No. C), notwithstanding the exceptions set forth in Section 2 and 3 thereof.

The straight time hourly rate of the positions referred to herein will be determined by the formula established by the National Salary Plan.

As long as these positions are retained on this basis future adjustments of the rates of these positions will be on the same basis.

The designation of any partially excepted position as ASR will require an agreement between the Senior Director of Labor Relations and the General Chairman.

(e-3)    Partially excepted positions covered by Sections (e-1) and (e-2) shall be bulletined in the department or office affected in accordance with Rule 11, but selection of the incumbent shall be a matter for the determination of the head of the department, subject only to the condition that preference shall be given to employees in service.

Employees working in the Zone in which the partially excepted position is located shall be given preference, and if in the judgment of the head of the department none of the applicants from such Zone are qualified, selection shall be made from the qualified employees in other Zones.

(e-4)    The Carrier may designate not more than seventeen (17) percent of the current number of clerical positions covered by this Agreement (excluding Rule 1[d-1] and Rule 1[d-2] positions) as partially excepted positions.

(e-5)    In the event the Company transfers the partially excepted designation from one position to another, the General Chairman will be notified in writing five (5) days in advance of such transfer.  The position from which the partially excepted designation is transferred will be considered a new position and shall be bulletined for seniority choice.  If a partially excepted designation is transferred from one position to another, that designation will not again be transferred for a period of three (3) months.

3

CONFIDENTIAL
UP-AVINA-002235

(e-6)    The Company will provide the General Chairman with a listing of all authorized positions indicating the designation of each position (fully covered or partially excepted) at the first of each month.

(f-1)    Rules of this Agreement covering assigned work day, rest day and holiday service, overtime and calls, shall not apply to these positions except as provided in (f-2).

(f-2)    The number of days comprehended in the workweek for positions included in Section (f) of Rule 1 is six (6).  Such employees included in this Section (f) shall be assigned one regular rest day per week, Sunday, if possible.  Rules applicable to five (5) day positions covered by this Agreement shall apply to service on such assigned rest day.  Such employees may be used on the sixth day of the work week to the extent needed at the straight time rate of pay.  If not worked on the sixth day, or if worked less than a full day on such sixth day, there shall be no reduction in compensation.  Service on other than the assigned rest day shall be compensated for under the rules applicable to these positions prior to September 1, 1949.

The straight time hourly rate of the positions referred to herein will be determined by the formula established by the National Salary Plan.

(f-3)    Positions included in Section (f), classified as Agent-Telegraphers, shall be bulletined and assigned in accordance with the Bulletin and Assignment Rules.  All other positions included in this Section (f) shall be bulletined and applications considered on the basis of qualifications.  Applicants must be approved by the Service Unit Superintendent.   Where qualifications are sufficient, seniority shall govern.

(g)    Monthly rated positions of Communication Specialists shall be bulletined and applications considered on the basis of qualifications.

(h)    Employees covered by the provisions of this Agreement shall be given preference in filling positions included in Section (d-2) and Sections (e), (f) and (g) of this Rule 1.

(i)    The title of a position shall be determined by the preponderance of the duties assigned to such position.

(j)    Except as otherwise provided in this Agreement, work assigned to partially excepted or fully covered positions shall not be removed and assigned to excepted positions covered by paragraphs (d).

(k)    Except as otherwise provided in this Agreement, positions or work covered by this Scope Rule belong to the employees covered thereby and shall not be removed therefrom except by agreement between the Director of Labor Relations and the General Chairman.

(L)    Work covered by this Scope Rule which is incident to and directly attached to the primary duties of an employee not covered by this Agreement may be performed by such employee provided the performance of such work does not involve the preponderance of the duties of such other employee. Except as otherwise provided in this rule, nothing in this paragraph (L) will permit the abolishment of a clerical position and the transfer of the work of that position to an employee not covered by this Agreement.

4

CONFIDENTIAL

UP-AVINA-002236

(m)     Nothing in this Agreement shall be construed as removing positions or work from its coverage that was subject to the Agreement bearing an effective date of June 1, 1975.

(n)     <u>TYING AND UNTYING TRAILERS.</u>  The work of tying down and untying "piggy back" trailers, automobiles and containers moving on rail cars shall, except as otherwise provided, be performed by the employees covered by this agreement at those stations where, as of May 1, 1970, such work was being performed by them; provided, however, that at stations where the work is to be performed at a time when there are no such forces on duty, the work may be performed by other employees then on duty regularly assigned to such work.

> NOTE: It is understood this Section (n) makes no change in the practices where employees other than station forces perform the tiedown and untying work at points where the work is likewise handled by station forces, nor does it preclude reassignment of such duties to others where it is not the obligation of the Company to have the work performed by its own employees.

(o)     <u>TRAIN ORDERS.</u>

(o-1)     At locations which were identified as Union Pacific locations for purposes of applying the UP/TCU Agreement prior to the effective date of this Agreement, no employee other than covered by this Agreement and train dispatchers will be permitted to handle train orders at telegraph or telephone offices where a telegrapher or train order clerk is employed and is available or can be promptly located, except in an emergency, in which case the employee shall be paid a call as provided in Rule 39.

> NOTE: The term "train order clerk" shall mean an employee covered by this Agreement qualified to handle train orders.

(o-2)     At locations which were identified as Missouri Pacific (including Texas and Pacific) locations for purposes of applying the MP/TCU Agreement prior to the effective date of this Agreement, the respective Train Order Rules (Rule 48 and Rule 48-A) of the MP/TCU Agreement effective March 1, 1973 as amended by subsequent agreements, including National Agreements, will continue to apply.  (Appendix W)

<u>RULE 2 - SENIORITY DATE.</u>

(a)     Subject to the provisions of Rules 37 and 44 and except as hereinafter provided, employees in the craft and class shall establish a seniority date on the first day for which compensation is paid in the performance of work under this Agreement.

(b)     Where two or more persons are employed on the same day, seniority rank shall be determined by the last four digits of the persons' Social Security numbers.  The employee with the lowest last four digits will be ranked first and the other employees will follow in ascending sequential order.  In the event the last four digits of two or more employees' Social Security numbers are identical, the next two digits of those employees' Social Security numbers will be utilized with the lowest number placed on the seniority roster first and the other employees following in ascending sequential order."

5

CONFIDENTIAL

UP-AVINA-002237

(c)     When positions included in Rule 1(d-1) are filled by other than employees covered by this Agreement, a seniority date shall be granted on the date of such employment and shall be maintained provided that within sixty (60) days of such initial employment with the Carrier the employee establishes and thereafter maintains membership in good standing with the Organization as provided in Rule 10.

RULE 3 - ENTRY RATES.

Employees entering service on positions covered by an agreement with TCU shall be paid as follows for all service performed within the first thirty-six (36) calendar months of service, in accordance with the Scheinman Award dated December 5, 1994, amending Article III of the April 15, 1986 National Agreement:

(a)     For the first twelve (12) calendar months of employment, new employees shall be paid 85% of the applicable rates of pay (including COLA).

(b)     For the second twelve (12) calendar months of employment, such employees shall be paid 90% of the applicable rates of pay (including COLA).

(c)     For the third twelve (12) calendar months of employment, such employees shall be paid 95% of the applicable rates of pay (including COLA).

(d)     Employees who have had an employment relationship with the carrier and are rehired will be paid at established rates after completion of a total of thirty-six (36) months' combined service.

(e)     Service in a craft not represented by TCU shall not be considered in determining periods of employment under this rule.

(f)     Employees who have had a previous employment relationship with a carrier in a craft represented by TCU and are subsequently hired by another carrier shall be covered by this Article, as amended.  However, such employees will receive credit toward completion of the thirty-six (36) month period for any month in which compensated service was performed in such craft provided that such compensated service last occurred within one year from the date of subsequent employment.

(g)     Any calendar month in which an employee does not render compensated service due to furlough, voluntary absence, suspension, or dismissal shall not count toward completion of the thirty-six (36) month period.

(h)     Agreements which provide for training or other reduced rates that are lower than those provided for in Section 1 are preserved.  If such agreements provide for payment at the lower rate for less than the first thirty-six (36) months of actual service, Section 1 of this Article will be applicable during any portion of that period in which such lower rate is not applicable.

6

RULE 4 - MASTER SENIORITY ROSTER.

     (a)    A system-wide Master Seniority Roster shall be derived from a dovetailing of former Union Pacific Zones and Missouri Pacific Districts.

     (b)    For administrative purposes, the Master Roster shall be defined as Master Seniority Roster 250 and will be comprised of the following Seniority Zones:

Zone   200 - Omaha Headquarters
201 - Harriman Dispatch Center
202 - Field Operations Nebraska/Kansas/Iowa
203 - Field Operations Wyoming/Colorado
204 - Field Operations Idaho/Montana
205 - Field Operations Utah
206 - Field Operations Oregon/Washington
207 - Field Operations California/Nevada
208 - Marketing & Sales
209 – Field Operations Arizona
210 – NCSC Omaha
212 - Omaha Accounting
216 - St. Louis Headquarters
220 - Field Operations Texas (includes Nogalez, AZ and Calexico, CA)
222 - Field Operations Missouri/Illinois/Tennessee
223 - Field Operations Arkansas
224 - Field Operations Oklahoma/Louisiana
225 - Omaha Building Services
226 – UP Northern District

     (c)    Work location or department of employees holding seniority rights on the Master Seniority Roster shall determine the Zone to which each employee is initially and subsequently assigned.  Thereafter, the applicable rules of this Agreement will apply.

RULE 5 - SENIORITY ROSTERS. 

     (a)    The Master Seniority Roster shall show name, occupation, social security number, status code, location and seniority date of employee.  The Master Seniority Roster shall be brought up-to-date as soon as possible after January 1 of each year.  A copy of the Master Seniority Roster will be furnished to each General Chairman and all Local/District Chairmen as soon as possible, after January 1 of each year.  On the first day of each month, the Company shall furnish the General Chairman a list of all newly hired employees, showing name, home address, location of employment, and date first performed service, on the prescribed form.

     (b)    The Master Seniority Roster shall be officially approved by the General Chairmen and Director of Labor Relations.  Seniority dates of employees as shown on seniority rosters so approved shall be open for correction of errors for a period of one hundred twenty (120) days.  Upon presentation of proof of error, correction shall be made by agreement between the General Chairman and Director of Labor Relations and seniority dates established by such agreement shall not be subject to further protest.

7

CONFIDENTIAL

UP-AVINA-002239

(c)     Lists of all employees assigned to "Zones" established under Rule 4 indicating the information specified in (a) of this rule, shall also be brought up-to-date and posted as soon as possible after January 1 of each year at a place accessible to all employees in the Zone. A copy of the "Zone" Seniority Roster shall be furnished to the General Chairman and respective Local/District Chairman. Each "Zone" Seniority Roster will be officially approved and subject to correction as specified in paragraph (b) of this rule.

## RULE 6 - EXERCISE OF SENIORITY.

(a)     Except as otherwise provided in this Agreement, seniority rights of employees covered by these rules may be exercised only in case of vacancies, new positions or reduction of forces.

(b)     The exercise of seniority in the reduction or restoration of forces, or the displacement of junior employees, is subject to the provisions of Rules 8 and 18(b).

(c)     Displacement rights over junior employees shall be restricted to the Zone in which currently employed, except as otherwise provided in this Agreement.

(d)     An employee making application for new positions or vacancies shall be governed by Rules 8, 11, 12 and 15 of this Agreement.

(e)     An employee holding a bulletined assignment may relinquish position and move to an extra board in that Zone which has been established and is maintained in accordance with the provisions of Rule 56 of this Agreement. An employee relinquishing an assignment shall remain thereon until relieved by an employee assigned by bulletin, as provided by Rule 11 or by recall of a furloughed employee in accordance with Rule 18.

(f)     When the duties of a position have been expanded, modified or changed through the realignment of work, the affected employee may, upon written request and subject to the approval of the General Chairman and the authorized officer of the Company, exercise seniority rights to any position held by a junior employee, upon 36 hours advance notice and within 10 calendar days from the date of approval and will be afforded training as provided by, and subject to, provisions of Rule 21.



## RULE 7 - STARTING TIME - CHANGE IN STARTING TIME AND REST DAYS.

(a)     Bulletined assignments shall have a fixed starting time and designated rest days. The fixed starting time of such bulletined assignments shall not be changed without forty-eight (48) hours' advance notice. Notice shall be posted during the assigned hours of the employee affected.

(b)     No shift shall start or end between 12:00 o'clock midnight and 6:00 a.m.

(c)     The starting time of Agents and Agent-Telegraphers shall be at or between 6:30 AM and 8:30 AM.

NOTE:     Exceptions to Sections (b) and (c) of this Rule 7 may be made
          by agreement between the General Chairman and the Director
          of Labor Relations.

8

CONFIDENTIAL

UP-AVINA-002240

    (d)    When the established starting time of a bulletined position is changed one (1) hour and less than three (3) hours at one time, or one (1) hour and less than three (3) hours in the aggregate from the time the position was last bulletined, the employee affected may, within five (5) calendar days thereafter, upon thirty-six (36) hours' advance notice, exercise seniority rights in accordance with Rule 18 to any position held by a junior employee. Other employees affected must exercise seniority rights in the same manner.

    (e)    When the established starting time of a bulletined position is changed three (3) hours or more, either at one time or in the aggregate from the time the position was last bulletined, or when either or both of the assigned rest days are changed, it shall constitute a new position and shall be bulletined for seniority choice.

> NOTE:    Under Sections (a) and (d) of this rule, an employee filling a position on temporary basis under Rule 12, may, if the employee so elects, within thirty-six (36) hours of the changes, return to former position or remain on the position for the duration of the Rule 12 vacancy.

## RULE 8 - SENIORITY, FITNESS AND ABILITY.

    Employees covered by this Agreement shall be in line for promotion. Promotion, assignments and displacements shall be based on seniority, fitness and ability. Fitness and ability being sufficient, seniority shall prevail except this provision shall not apply to the positions listed in 1(e) and 1(f) - Agents only.

> NOTE: 1)    The word "sufficient" is intended to establish more clearly the rights of the senior employee to a new position or vacancy where two or more employees have adequate fitness and ability.
>
>      2)    Fitness and ability does not mean the applicant is immediately qualified to assume the duties of the position without guidance or assistance. It means the applicant must have minimum skills raising a reasonable probability that the applicant would be able to perform all the duties of the position within a reasonable time.
>
>      3)    In the event an applicant's fitness and ability are in question, the applicant will, upon written request, be given a fair test, if applicable, or otherwise permitted to demonstrate fitness and ability for the position. The applicant is entitled, upon request, to have a duly accredited representative present during the test or demonstration and the applicant and/or the representative will be permitted to review the results.

9

CONFIDENTIAL

UP-AVINA-002241

RULE 9 - DECLINING PROMOTION.

Employees declining promotion or declining to bid for a bulletined position shall not lose their seniority.

RULE 10 - SENIORITY STATUS - EMPLOYEES PROMOTED. 

(a-1)    Employees promoted to official or fully excepted positions with any of the Companies listed in Section (c) on or before May 16, 1980, shall retain and continue to accrue seniority under this Agreement.  Employees promoted to official or fully excepted positions with the Companies subsequent to May 16, 1980 shall, as a condition of retaining and accruing seniority under this Agreement, be required to maintain membership in good standing in the Organization party hereto. In the event such employee fails to maintain membership in good standing, the General Chairman shall notify the Director of Labor Relations or his designated representative.  If, within thirty (30) calendar days after receipt of such notification the employee has not retained membership in good standing with the Organization, the employee will forfeit all seniority under this Agreement. Employees entitled to retain and accumulate seniority under this rule shall be privileged to bid on bulletined positions in accordance with Rule 11.  Employees released from a position shall exercise seniority in the Zone where currently employed.  The exercise of seniority must be made within ten (10) calendar days from date released.

(a-2)    Employees on positions covered by Sections (e), (f) (agents) and (g) of Rule 1 shall not be subject to displacement by other employees in the exercise of seniority, except that employees may displace junior employees covered by paragraphs (1) and (2) of Section (e) or by Sections (f) (agents) or (g) of Rule 1 with approval of the head of the department.

(a-3)    Employees accepting full-time positions with the Transportation Communications Union shall be considered as in the service of the Company and on leave of absence, and shall upon release from such service be entitled to all service benefits under the control of the Company, normally accruing to active employees, and shall have the privilege of exercising seniority on any position bulletined during their absence or exercising seniority rights in accordance with the provisions of Rule 13.

(b-1)    Train Dispatchers.  Employees included under this Agreement shall be given first consideration for positions of train dispatchers not filled from the ranks of train dispatcher.

(b-2)    When additional train dispatchers are required, positions or vacancies shall be shown on bulletin issued on the Zone where located.  Employees desiring consideration for promotion to train dispatcher shall file their application with the appropriate Company Officer, who shall promptly notify applicants of acceptance, or rejection, and if rejected, the reason therefor, if requested.

(b-3)    Employees notified of acceptance of their application shall be expected to qualify within a reasonable time.  If more than one employee on a Zone is accepted as qualified, the senior employee shall be given preference.  Examinations shall be given as soon as practicable after employee indicated readiness, and if approved, shall be given a certificate of qualification.

(b-4)    Employees promoted to position of train dispatcher shall retain and continue to accumulate seniority, and may exercise seniority held under this Agreement in accordance with the provisions of Section (a-1) of this rule.

10

CONFIDENTIAL
UP-AVINA-002242

(b-5)    Employees included in this Agreement may hold their regular assignment while filling temporary train dispatcher vacancies or while filling temporary train dispatcher positions of less than ninety (90) days' duration (subject to extension of time limit by agreement with General Chairman) or until such time as they are able to work regularly as a train dispatcher for three (3) days or more a week, in which event their assignment shall be relinquished and position bulletined in accordance with the rules of this Agreement.

(c)    The term Companies as referred to in this Rule will apply to all of the following companies and/or subsidiaries:

Alameda Belt Line
Alton & Southern Railway Company
American Refrigerator Transit Company
Arkansas and Memphis Railway Bridge and Terminal Company
Belt Railway of Chicago
Brownsville and Matamoros Bridge Company
Chicago and Western Indiana Railway Company
Chicago Heights Terminal Transfer Railroad Company
Corpus Christi Terminal Association
Galveston, Houston and Henderson Railroad Company
Houston Belt and Terminal Railway Company
Insight Network Logistic, LLC
Kansas City Terminal Railway Company
Longview Switching Company
Ogden Union Railroad and Depot Company
Port Terminal Railroad Association
Portland Terminal Company
Terminal Railroad Association of St. Louis
Texarkana Union Station Trust
Union Pacific Distribution Services
Union Pacific Finance Corporation
Union Pacific Fruit Express
Union Pacific Motor Freight
Union Pacific Resources
Union Pacific Technology
Union Terminal Railway Company

The above list of companies and/or subsidiaries may be amended in the future by agreement between the parties.

(d)    Employees promoted or transferring to other non-clerical Carrier positions in another craft which is represented by TCU or an Organization directly affiliated with TCU (e.g. ARASA Supervisors, TCU Carmen, UPUYC Yardmasters) shall retain and continue to accumulate seniority, and may exercise seniority held under the TCU clerical Agreement in accordance with the provisions of Section (a-1) of this rule (Rule 10) provided such employees maintain membership in good standing with the appropriate division of TCU or affiliated Organization. It will be the responsibility of the employee transferring to notify the General Chairman of such transfer.

11

CONFIDENTIAL
UP-AVINA-002243

# RULE 11 - BULLETINING POSITIONS.

(a)    All new positions and vacancies, of thirty (30) days' or more duration, excluding vacations, shall be promptly bulletined on bulletin boards accessible to all employees in the affected zone for a period of ten (10) calendar days.  The bulletin shall show wage grade, location, title, duties of position, rate of pay, hours of service, assigned meal period, rest days, and, if temporary, the probable or expected duration.  Copies of bulletins shall be furnished to the General Chairman and Local/District Chairmen.

(b)    The positions advertised under Section (a) shall be dated on the 1st and 16th of the month and issued for posting on those dates or the first succeeding business day.  Employees desiring bulletined positions must have their applications, in duplicate, on file in the office of the official whose name is signed to the bulletin, or in the office of the supervisor as may be specified on the bulletin, not later than noon of the tenth (10th) day from date of bulletin.  A copy of the application must be furnished Local/District Chairman direct by the employee.  Applications for bulletined positions cannot be withdrawn subsequent to closing time and date specified in the vacancy notice.  The official whose name is signed to the bulletin shall acknowledge receipt of employee application by returning one copy of the application with proper notice thereon, and the assignments shall be made as specified above.  Shorter or longer time limits for bulletins and applications may be established by agreement.

NOTE: When the tenth (10th) day falls on Saturday, Sunday or a holiday, the closing date and time of the vacancy bulletin shall be extended to noon on the succeeding  business day.

(c)    Under the provisions of Sections (a) and (b), the name of the successful applicant shall be immediately posted in the zone for a period of ten (10) calendar days, and if vacating a bulletined assignment, a bulletin covering the vacancy shall be advertised in accordance with (b) above.  In the event no applications are received, the position shall be filled by appointment except as provided in Rule 18.

(d)    An employee applying for and assigned to a bulletined position shall be required to accept the assignment.

(e)    Except as otherwise provided in this Agreement, the employee assigned to a bulletined position pursuant to Section (b) shall be placed on the position as soon as practicable, but if applicant is not relieved to take the newly assigned position within ten (10) calendar days from the date of assignment notice, the employee shall be paid for each day worked, commencing with the tenth (10th) day at the rate of the newly assigned position or the position on which the employee works, whichever is greater.

(f)    In addition to the higher level of compensation as provided in Section (e), an employee who is not relieved to take the newly assigned position within ten (10) calendar days from the date of assignment notice shall, commencing on the eleventh (11th) day, be allowed a penalty allowance of five (5) dollars for each day worked up to the ninetieth (90th) day following the date of assignment notice, and seven (7) dollars for each day worked commencing with the ninety-first (91st) day until placed on the newly assigned position.  Such employee, if held at a station other than the home station, shall be allowed penalty compensation as provided above or actual personal expenses, whichever is the greater.

12

CONFIDENTIAL

UP-AVNA-002244

(g)     When the application of the senior applicant for a position is declined, the employee affected and the Local/District Chairman shall, upon request, be advised in writing the reasons therefore.

(h)     Employees may apply for any or all positions bulletined. Employees applying for more than one vacancy or new position bulletined at the same time must indicate preference. Employees may apply for positions in another Zone pursuant to the provisions of Rule 15.

(i)     By agreement between the parties, the bulletining process may be amended for certain departments and/or locations. In addition, the parties may also agree to amend the bulletining process to allow the use of CRT machines.


RULE 12 - SHORT VACANCIES.

(a)     New positions or vacancies of less than thirty (30) calendar days' duration are short vacancies and if they are to be filled, they shall be posted as a "Notice of Temporary Position or Vacancy" for application in accordance with the provisions of this rule. Whenever there is reasonable evidence that such positions or vacancies shall continue for thirty (30) days or more, they shall be immediately bulletined in accordance with the provisions of Rule 11 of this agreement. Except as provided in Section (e) of this rule, employees assigned to a short vacancy under this rule must be placed on the position on the first full shift subsequent to the time and date of the assignment notice and remain thereon for its duration unless displaced therefrom in a manner provided for in this Agreement. An employee assigned to a short vacancy may choose to remain thereon or assume a regular position assigned under Rule 11.

(b)     Except as may otherwise be provided in agreements made pursuant to Rule 56 (Reserve/Extra Board Agreements), new positions or vacancies posted in accordance with this rule shall be assigned to the senior qualified applicant in the office making written application within twenty-four (24) hours from time notice is posted.

(c)     Notice shall be posted on bulletin boards in the office where vacancy occurs. The senior qualified employee in the office making written application shall be assigned and must take all the conditions of the assignment. If vacancy is for five (5) days or more, the successful applicant shall take the rest days of the assignment.

(d)     Pending assignment of the senior qualified applicant as provided herein or in the event no applications are received, the vacancy shall be filled by the procedures as set forth below:

> First:     An available qualified reserve/extra board employee at points where guaranteed reserve/extra boards or similar arrangements are in effect.
>
> Second:  An available qualified furloughed employee who has not worked forty (40) hours in the work week commencing with Monday.
>
> Third:    Rearranging forces on a day-to-day basis during the same shift hours in the same office where the vacancy exists. The following rearrangement procedures shall be followed:

13

CONFIDENTIAL

UP-AVINA 002245

1)  Rearranging the senior available qualified employee in the office who has previously indicated in writing a desire to be rearranged.

2)  Rearranging the junior available qualified employee in the office.

    Employees so rearranged shall be allowed a penalty of $6.00 per day.

(e)  An employee who has worked one shift in a twenty-four (24) hour period shall not be permitted to work on a second shift in the same twenty-four (24) hour period if there are other furloughed employees available and qualified to perform service on the assignment at the straight-time rate. However, if an employee is worked on a second shift within a twenty-four (24) hour period, all time worked in excess of eight (8) hours within the same twenty-four (24) hour period shall be allowed at the time and one-half rate of pay.

(f)  Employees displaced as a result of reduction in force may displace one 12(c) vacancy at the location prior to exercising seniority to a bulletined position. An employee having no displacement on bulletined positions at the location, including those affected by force reduction, may continue to effect displacements on 12(c) vacancies retaining the right to further displacement, subject to recall to bulletined positions under Rule 18.

## RULE 13 - RETURNING AFTER LEAVE OF ABSENCE OR FROM TEMPORARY ASSIGNMENT.

(a)  An employee assigned to a temporary position, and/or returning after leave of absence or vacation, may return to former position except as provided in Section (b) of this rule, or may, upon return or within five (5) working days thereafter, exercise seniority rights to any position bulletined or established in the Zone on or after the date of the temporary bulletin to which the employee was assigned, or the day the employee left active service account leave of absence or vacation. An employee thus displaced may exercise seniority in the same manner. An employee displaced from a permanent assignment may exercise seniority to a position occupied by a junior employee as provided in Rule 18.

(b)  In the event the former position of the employee returning from vacation, leave of absence or from a temporary assignment:

(1)  has been abolished;

(2)  established starting time permanently changed one (1) hour or changed as provided in Rule 7;

(3)  assigned day or days off changed; or

(4)  a senior employee has exercised displacement rights thereon, the returning employee shall be governed by the provisions of Rule 18(b).

NOTE: The provisions of Sections (a) and (b) of this rule, insofar as military leaves are concerned, shall apply only to those employees returning from military service and having re-employment rights under Federal Law.

14

CONFIDENTIAL
UP-AVINA-002246

RULE 14 - TESTING EMPLOYEES - TUITION REIMBURSEMENT.

     (a)    In recognition of the principle that tests may be used in determining sufficient fitness and ability and qualification pursuant to Rules 8, 20 and 21, the Company will publish reasonable job-related standards and testing procedures on positions requiring shorthand, typing, keypunching, office machines and procedures and job-related skills.

     (b)    It is the policy of the Company to cooperate with employees in furthering their genuine desires and efforts to become qualified for promotion to more desirable positions.

     (c)    For the purpose of enhancing railroad employment opportunities for employees with more than one (1) year of service, tuition costs will be borne by the Company provided the following requirements are met:

    1.    Institution of learning approved by the Company.

    2.    Courses must relate to job-related clerical technical skills.

    3.    Courses must be successfully completed.

    4.    Receipts documenting tuition costs must be presented to Supervisor within sixty (60) days of course completion.

    5.    Report of passing grade must be submitted to Supervisor.

 RULE 15 - TRANSFERRING TO OTHER ZONES/ROSTERS.

     Employees with one (1) or more years of continuous employment relationship with the Company in the clerical craft shall be entitled to make application for bulletined positions, other than temporary, in another Zone as specified in Rule 4 of this Agreement. Such employees shall be governed by the following conditions:

    (1)    Employees desiring to transfer to another Zone shall make written request to the officer designated to administer the bulletin process in the zone to which transfer is desired. Copies of the request must be furnished Bulletining Officer and Supervising Officer in the Zone in which currently employed, and the applicable Local/District and General Chairman.

    (2)    Upon receipt of proper request the bulletining officer shall furnish the employee copies of all applicable bulletins as soon as practicable, however, no later than the second (2nd) bulletining period, as specified in Rule 11, following date such request is received. Thereafter, such employees may apply for said positions in the other Zone. Bulletins shall be furnished to the employee for a period not exceeding four (4) bulletining periods after which a new written request must be submitted as specified herein.

15

(3)    Employees will not be permitted to request transfer to more than one Zone at a time.  Transfers from one Zone to another under this rule shall be made without expense to the Company.

## RULE 16 - CONSOLIDATIONS.

Except as otherwise provided in existing agreements, when two (2) or more offices or departments are consolidated, employees affected shall have prior rights to corresponding positions in the consolidated office or department, after which the rules of this Agreement shall govern.

## RULE 17 - EMERGENCY REDUCTION IN FORCE.

(a)    No advance notice shall be required when positions are abolished or forces reduced under emergency conditions such as flood, snowstorm, tornado, hurricane, earthquake, fire or labor disputes other than covered in Section (b) hereof provided such conditions result in the suspension of the Company's operations in whole or in part.

Abolishments or force reductions shall, under this provision, be confided solely to those work locations directly affected by any suspension of operations.  Employees who are affected by an emergency force reduction under this provision who report for work on their positions without having been previously notified not to report shall receive four (4) hours' pay at the applicable rate of their position.  An employee who works any portion of the day, shall be paid in accordance with existing rules.

(b)    No advance notice shall be required where positions are abolished in whole or in part is due to a labor dispute between this Company and any of its employees.

(c)    Employees covered by this Agreement who are out of service because of a strike as specified in paragraphs (a) or (b) of this rule need not be formally recalled under Rule 18, but will be returned to service on their regular or temporary position, whichever is applicable, within thirty-six (36) hours from the beginning of the first full shift after strike is ended and pickets are removed.

## RULE 18 - REDUCTION IN FORCE.  

(a-1)    Except as otherwise provided in Rule 17, five (5) working days' notice shall be given of reduction in force of regularly assigned positions with a copy forwarded to the Local/District and General Chairmen.  The notice shall be posted in the affected office during working hours of the position or positions abolished indicating the names of the regularly assigned incumbents, position titles and the disposition of the remaining work, if any.

(a-2)    When forces are to be reduced in a pool of identical or similar jobs in a department, the Company shall abolish the position(s) occupied by the junior employee(s).

(b-1)    When forces are reduced, seniority rights shall govern.  An employee whose position is abolished or transferred must exercise seniority rights over junior employees and in turn the displaced employee must also exercise seniority.  In the exercise of said seniority rights, the affected employee(s) must exercise seniority over junior employees in the zone where employed.  Other employees affected must exercise their seniority in the same manner.  After exhausting seniority in the zone, employees may displace junior employees in other zones.  An employee

16

displacing from a General Office Building position to a General Office Building position has two (2) working days to exercise seniority rights to a position held by a junior employee. An employee displacing to or from a position outside the General Office Building, or between different General Office Buildings, has five (5) working days to exercise seniority rights to a position held by a junior employee. An employee exercising his seniority and displacing on a position which is part of a pool of similar or identical jobs in a department shall displace to the position occupied by the most junior employee.

(b-2) The time period to exercise seniority will be extended by a leave of absence or vacation granted with the concurrence of the Department Head and Local/District Chairman, which must then be exercised at the expiration of the leave or vacation or within five (5) working days thereafter.

(b-3) Employees who do not exercise seniority within the time period outlined in Item (b-1) above and are not granted a leave of absence or vacation, pursuant to (b-2) above, shall be considered furloughed, subject to return to service in accordance with this rule.

(b-4) An employee whose position is abolished or transferred who is assigned to a temporary vacancy prior to exercise of seniority in accordance with this rule may defer the exercise of seniority until relieved from the temporary vacancy, or within five (5) working days thereafter.

Employees who do not possess sufficient seniority, fitness and ability to displace a junior employee shall be furloughed. Employees furloughed under this rule must file name and address as prescribed by Section (c) of this rule.

(c) Employees desiring to protect their seniority rights and to avail themselves of this rule must within ten (10) calendar days from the date actually reduced to the furloughed list, file in writing their names and addresses in duplicate, both with the proper officer (the officer authorized to bulletin and award positions) and the Local/District Chairman, and advise promptly of any change in addresses or forfeit all seniority rights, except in cases of personal illness or other unavoidable causes. The official and Local/District Chairman shall sign and return to the employee as a receipt one copy of the address or changes in address so filed.

Employees furloughed under this rule shall not be required to refile their name and address unless a change has been made in their name or address.

(d-1) Non-protected employees furloughed in a zone covering more than one point may elect to be recalled only for a bulletined position at the location of their choice provided there is a position in existence in the zone at that point. Such election shall be made in writing to the proper official of the Company and Local/District Chairman at the time furloughed. After having made such election, the non-protected employee shall be recalled under the provisions of this rule only to a bulletined position at the location designated and shall otherwise be fully covered by the provisions of this rule.

(d-2) A non-protected employee not recalled for a bulletined position within a period of two (2) years from date furloughed, service and seniority rights of such non-protected employee shall be terminated, except that at any time prior to the expiration of the two (2) year period such non-protected employee may notify the proper official of the Company and Local/District Chairman in writing of desire to be recalled to a bulletined position in the zone under this rule.

17

(d-3)   A non-protected employee with less than three (3) years of continuous service who does not perform any compensated service for the Company for a period of 365 consecutive days will terminate all seniority rights under this Agreement.

The "365 consecutive days" shall exclude any period during which a furloughed employee receives compensation pursuant to an I.C.C. employee protection order or an employee protection agreement or arrangement.

(e-1)   When a bulletined new position or vacancy is not filled by an employee in service senior to a furloughed employee who has sufficient fitness and ability and who has protected seniority rights as provided in this rule, such senior furloughed employee shall be called to fill the position.

(e-2)   Furloughed employees failing to return to service within ten (10) days after being notified by registered or certified U.S. Mail sent to last address on file, or give satisfactory reason for not doing so, shall forfeit all service and seniority rights.

(f)   Furloughed employees who desire to return to service on positions or vacancies of less than thirty (30) days' duration must file written notice with the proper officer of the Company and the Local/District Chairman of the Organization, such notice may be cancelled or terminated in the same manner.  Subject to the provisions of Section (c) of Rule 12, such employees when available shall be called on a seniority basis when qualified for extra work or vacancies.

(g)   In the application of this Rule 18 a furloughed protected employee will not be recalled to or otherwise required to exercise seniority rights on a position requiring a "change in residence" in order to retain seniority and protected status, except as specifically provided by the UP/TCU Job Stabilization Agreement, as amended, which is attached as an Appendix to this Agreement.

(h)   The parties, by agreement, may amend the procedures for filing of name and address as outlined in Section (c) hereof.

RULE 19 - POSITIONS ABOLISHED AND REINSTATED.

(a)   If a position is abolished and reinstated by bulletin in the same or another Zone within ninety (90) days, the last regularly assigned incumbent shall be returned to the position without regard to seniority, provided such employee:

(1)   is still in service;
(2)   makes application therefor in accordance with Rule 11; and
(3)   furnishes advice on the application that such applicant was the last regularly assigned employee.

(b)   When an employee returns to a reinstated position under this rule, other employees who were displaced due to abolishment of the position may return to their former positions, if in existence, in the same manner as provided in Section (a) of this rule.

18

RULE 20 - FAILURE TO QUALIFY.

(a)     An employee who is assigned to or acquires a position by bulletin, exercise of seniority or in the application of these rules, will be given a reasonable time, with a minimum of thirty (30) working days, exclusive of days spent in formal training, in which to qualify.  In the event it is obvious an employee, after assuming the assignment, will be unable to qualify, the employee may be disqualified in a shorter period of time, subject to the provision of this rule.

(b)     When an employee is disqualified, the Company will have the burden of proof and will furnish written notice outlining the specific reasons for the disqualification.  The employee affected shall vacate such position and shall be governed by the provisions of Rule 18, except the employee may request a formal hearing as provided by Rule 45(k).  Employees disqualified on temporary positions shall be governed by the provisions of Rules 13 and 45(k).

(c)     Employees shall be given full cooperation of department heads and others in their efforts to qualify.


RULE 21 - TRAINING.

(a)     Except as otherwise provided in this rule, an employee assigned to or displacing on a bulletined position and who, in the judgment of the immediate supervisor, is not qualified for the position and is required by the supervisor to train thereon before being permitted to take over the assignment, may be required to train on the position for a reasonable length of time, not to exceed eight (8) weeks or other established training periods.  Such employee shall be allowed compensation at rate of position on which seniority has been exercised.  Local supervisors shall determine the extent to which training, if any, may be required or necessary under this rule.  Training shall be given during regular working hours of the position on which training is required.

(b-1)     Except a provided in Rule 33, when the incumbent of a position requires additional training as a result of a change in procedures or the installation of new machines, up to twenty (20) hours' training prior to or following and continuous with regular shift may be required.  The incumbent shall be compensated at the pro rata rate of the position to which assigned for time consumed in such training.

(b-2)     Where it is deemed necessary, other employees shall, upon request and by approval of the supervisor, be given training during regular hours without loss of compensation, or up to twenty (20) hours prior to or following and continuous with their regular shift.  Time consumed in training outside regular hours shall be paid for at the pro rata rate of the position held.

(b-3)     When an employee works his assigned hours and is also required to attend an instruction class outside those assigned hours, such employee will be allowed time and one-half on the minute basis for all time outside such assigned hours.  An employee required to attend an instruction class for eight (8) hours or less, who is not permitted to work his regular position or shift, will be allowed eight (8) hours' pay at the pro rata rate.

(c-1)     An employee afforded training as provided in this rule will be given full cooperation during the training period.  In the event the employee fails to demonstrate reasonable progress during the training period the employee may be disqualified in a shorter period than provided in this rule, subject to the provisions of Rule 20(b).

19

CONFIDENTIAL

UP-AVINA-002251

(c-2)    An employee who has been displaced and who is required to remain on the assignment for the purpose of training the displacing employee, shall not be required to exercise seniority until physically relieved; thereafter, Rule 18 shall apply.

(c-3)    Employees required to train or attend instruction classes on rest days or holidays will be compensated as provided by Rule 39(b).

> NOTE: In the application of this rule, it is understood the employee will be allowed compensation at the rate of position on which training is required, his/her EMR or the protected rate, whichever is greater.

## RULE 22 - BASIC DAY. 

Except as provided in Rules 17 and 36, eight (8) consecutive hours, exclusive of the meal period, shall constitute a day's work.

## RULE 23 - BASIS OF PAY.

(a)    Employees paid on a monthly, weekly, daily, hourly, or any other basis, shall continue to be paid on the same basis.  The conversion of monthly, daily or hourly rates to a different basis shall be in accordance with the formula set by the National Salary Plan.

(b)    Except as otherwise provided in this Agreement, regularly assigned employees shall not be reduced below five (5) days per week, provided, however, that this number may be reduced in a week in which holidays occur (within the five (5) days constituting the workweek) by the number of such holidays.

## RULE 24 - RATING POSITIONS.

(a)    Positions (not employees) shall be rated, and the transfer of rates from one position to another shall not be permitted except by agreement.

(b)    The rates of pay for new positions shall be established in accordance with Chapter 9.1 of the National Salary Plan.

(c)    Extra employees shall receive the rate of pay of the position on which service is being performed.

## RULE 25 - PRESERVATION OF RATES

Employees temporarily or permanently assigned to higher-rated positions for a period of four (4) hours or less during a shift shall be compensated for a minimum of four (4) hours at the higher rate.  Employees temporarily or permanently assigned to higher-rated positions in excess of four (4) hours during a shift shall be compensated for the entire shift eight (8) hours at the higher rate.

A "temporary assignment" contemplates the fulfillment of the duties and responsibilities of the position during the time occupied, whether the regular occupant of the position is absent or whether the temporary assignee does the work, irrespective of the presence of the regular employee.

20

RULE 26 - ADJUSTING RATES.

(a)     Where the duties and responsibilities of a position are increased or reduced to the extent that it compares with other existing positions of different rates of pay in the same Zone, adjustment shall be considered in accordance with Chapter 9.2 of the National Salary Plan. Any adjustment in rate of pay will be effective at the beginning of the next payroll period following completion of the job evaluation. Joint on-the-ground investigations shall be held within sixty (60) days if requested by the General Chairman.

(b)     Established positions shall not be discontinued and new positions created under different titles covering relatively the same class of work, for the purpose of reducing the rate of pay or evading the application of these rules.

(c)     If there are no positions in existence with comparable duties and responsibilities, the rate of pay of such positions shall be established by the procedures set forth in the National Salary Plan.


RULE 27 - CHANGES IN RATES.

Except when changes in rates result from negotiations for adjustments of a general character, the changing of a rate of a position shall constitute a new position unless otherwise mutually agreed.


RULE 28 - TEMPORARY ROAD SERVICE.

Employees not regularly assigned to road service, who are temporarily required to perform service on their regular assignment away from their headquarters point which necessitates their traveling, shall be allowed necessary expenses while away from their headquarters and shall be paid at the straight time rate for any additional time traveling outside of regular assigned hours to and from the temporary assignment, except that no time shall be allowed between 10:00 PM and 7:00 AM when sleeping accommodations are furnished or are available, and an opportunity for five (5) or more hours' sleep is afforded.


RULE 29 - TEMPORARY ASSIGNMENT AWAY FROM HOME.

Employees holding a regular or temporary assignment who are required by the Company to perform service on another assignment at other than their home station shall receive the higher rate of the two (2) positions and be compensated at the straight time rate for all time worked within the hours of the assigned position, and at the time and one-half rate for time worked outside the hours of the regularly assigned position and shall be allowed actual necessary expenses while away from headquarters.

21

CONFIDENTIAL
UP-AVINA-002253

## RULE 30 - TRAVEL TIME IN BOARDING CARS.

(a)     Where employees are regularly required throughout their workweek to live away from home in outfit cars, the facility furnished by the Company shall be adequate for the purpose and maintained in a clean, healthful and sanitary condition.  If outfit cars are furnished to such employees required to live away from home, the employees shall receive no reimbursement for lodging at their outfit headquarter.  If such employees are required to live away from home during their workweek at points where outfit cars are not furnished, such employees shall be reimbursed for the actual reasonable expense thereof not to exceed $22.00 per day.

(b)     If such employees are required to leave their outfit headquarters for service at other locations where outfit lodging is not provided (except at the employee's home), such employees shall be reimbursed for meal and lodging expense incurred in accordance with Rule 29.

(c)     Where commissary cars are furnished, such employee shall be required to secure meals from the commissary car and shall be reimbursed for actual cost of meals.  If commissary cars are not furnished, such employees shall be reimbursed for actual reasonable meal expense with a maximum of $15.00 per day.  The meal allowances provided for in this paragraph shall only be paid for days on which the employee remains with the outfit cars.

(d)     Such employees, when traveling from one work point to another, shall be paid time and one-half for all hours outside of regularly assigned hours or on rest day or holiday during which the employee is required to perform service, such as driving trucks, making a check of maintenance employees in the gang, etc.  When such employees perform no service outside assigned hours when traveling from one work point to another, they shall receive no compensation outside regularly assigned hours on rest day or holiday (this provision, as it pertains to holiday, relates to service performed on the holiday and does not set aside the holiday pay provisions as they apply to situations where no service is performed on the holiday).

## RULE 31 - TRANSFERRING.

Regularly assigned employees subject to the Hours of Service Act transferring from one station to another, from one position to another, or to accept a bulletined position shall be allowed compensation at the rate of the position vacated on the basis of eight (8) hours for each day's pay lost as a result of transferring.

22

CONFIDENTIAL

UP-AVINA_002254

## RULE 32 - ALLOWANCES - EXTRA AND TRAVELING RELIEF EMPLOYEES.

Extra or traveling relief employees who are required in the course of their employment to be away from their headquarters point as designated by the Company shall be compensated as follows:

1.  The Company shall designate a headquarters point for each regularly assigned traveling relief position and for each extra employee. No designated headquarters point may be changed more frequently than once each sixty (60) days and only after at least fifteen (15) days' written notice to employee affected.

2.  When such employees are unable to return to their headquarters point on any day they shall be reimbursed for the actual reasonable cost of meals and lodging away from their headquarters point not in excess of $22.00 per day.

3.  An employee in such service shall be furnished with free transportation by the Company in travelling from headquarters point to another point and return, or from one point to another. If such transportation is not furnished, the employee shall be reimbursed for the cost of the rail fare if such employee travels on other rail lines, or the cost of other public transportation used in making the trip; or if such employee has an automobile which the employee is willing to use and the Company authorizes the use of said automobile, such employee shall be paid an allowance on the basis of current mileage rate established by the Company for each mile in traveling from headquarters point to the work point, and return, or from one work point to another.

4.  If the time consumed in actual travel, including waiting time en route from the headquarters point to the work location, together with necessary time spent waiting for the employee's shift to start, exceeds one (1) hour, or if on completion of shift necessary time spent waiting for transportation plus the time of travel, including waiting time en route, necessary to return to headquarters point or to the next work location exceeds one (1) hour, then the excess over one (1) hour in each case shall be paid for as working time at the straight time rate of the job to which traveled. When employees are traveling by private automobile, time shall be computed at the rate of two (2) minutes per mile traveled.

23

RULE 33 - MAJOR CHANGE IN DUTIES.

When the duties and/or responsibilities of a position or positions undergo major change not requiring the abolishment of the position(s) under other rules of this Agreement, the incumbent(s) of the position(s) affected shall be offered the following options:

1.     Remain on the position and receive training required as a result of the change. Such training shall include keypunch training, if required, and/or other job-related training for a reasonable period of time in order to enable the employee to meet minimal standards of the position.

2.     Exercise displacement rights to a position assigned to a junior employee and afford the displacing employee training as provided for, and subject to, Rule 21.

    NOTE: Major change as contemplated under this rule is a change in duties or responsibilities of a position of such a nature as to raise question as to the incumbent's ability to perform the functions of the position, without training as provided in Section 1 above.

When a major change of a position(s) is contemplated by the Carrier, the Director of Labor Relations will notify the General Chairman in writing and provide the particulars relating to the nature of the change, such as position(s), employee(s) affected, effective date of change, etc.

If a dispute arises over whether there has been a major expansion of duties, the General Chairman will notify the Director of Labor Relations in writing, and they or their representatives will conduct a joint check within ten (10) days from date the General Chairman's letter is received.

RULE 34 - BEREAVEMENT RULE.

(a)     In the event of death of a spouse, child, step child, parent, parent-in-law, stepparent, stepparent-in-law, grandparent, grandchild, guardian, brother or sister of an employee who has been in service one (1) year or more, such employee shall be allowed time necessary with pay to attend funeral and handle matters related thereto, not to exceed three (3) consecutive workdays, unless, in individual hardship cases, local agreement is otherwise reached.

(b)     Under this rule, it shall be optional with the Company to fill, partially fill or blank the position of an employee who is absent for the bereavement purposes.

(c)     An employee falsely claiming bereavement time under this rule shall be subject to disciplinary action.

24

CONFIDENTIAL    UP-AVJNA_002256

RULE 35 - MEAL PERIOD. 

     (a)    Unless otherwise agree to by the designated Company Officer and General Chairman, the meal period shall not be less than thirty (30) minutes nor more than one (1) hour.

     (b)    For regular operations requiring sixteen (16) or more continuous hours, eight (8) consecutive hours without meal period shall be assigned as constituting a day's work, in which case, twenty (20) minutes shall be allowed in which to eat, without deduction in pay, between the ending of the third hour and the beginning of the sixth hour after starting work.

     (c)    Except for regular operations requiring sixteen (16) or more continuous hours, all regularly established positions shall have an assigned meal period, which shall be allowed between the ending of the third hour and the beginning of the sixth hour after starting time, and the meal period shall not be changed without thirty-six (36) hours' advance notice.

     (d)    Employees required to work any part of the assigned meal period shall be paid for the actual time worked at the rate of time and one-half and at the first opportunity shall be allowed not less than thirty (30) minutes without deduction in pay in which to eat.

     (e)    Employees shall not be required to work more than two (2) hours continuous with their regular eight (8) hour assignment without being permitted to go to meals. Time taken for meals shall not terminate the continuous service period and shall be paid for up to thirty (30) minutes. If by reason of an emergency an employee is required to work through the second meal period and is not permitted to take time in which to eat before being released, such employee shall be paid an additional thirty (30) minutes at the rate of time and one-half.

RULE 36 - INTERMITTENT SERVICE.

     By mutual agreement between the designated officer of the Company and the General Chairman, intermittent service assignments may be established. When such assignments are established eight (8) hours' actual time on duty within a spread of twelve (12) hours shall constitute a day's work. Employees filling such positions shall be paid not less than eight (8) hours within a spread of twelve (12) consecutive hours, and shall be paid overtime for all time actually on duty or held for duty in excess of eight (8) hours from the time required to report for duty to the time of release within twelve (12) consecutive hours computed continuously from the time first required to report until final release. Time shall be counted as continuous service in all cases where the interval of release from duty does not exceed one (1) hour.

     This rule shall not be construed as authorizing the working of split tricks where continuous service is required.

     Intermittent service is understood to mean service of a character where during the hours of assignment there is no work to be performed for periods of more than one (1) hour's duration, and service of the employees cannot otherwise be utilized.

25

CONFIDENTIAL

UP-AVINA-002257

## RULE 37 - STUDENT CLERK.

Student Clerks will be paid in accordance with the National Salary Plan and Rule 3 (subject to COLA and basic wage adjustments) for the time spent in training. During the training period (which shall not exceed sixty (60) days unless otherwise specifically agreed to by the General Chairman) the student will not be permitted to do productive work of the Clerks' craft except, however, this shall not preclude on-the-job training under the direction of the incumbent of the position. Except as provided herein, time spent as a student will not be counted as part of the sixty (60) day probationary period as provided in Rule 44. Students will receive a seniority date as provided in Rule 2 at the conclusion of the training period or after thirty (30) calendar days, whichever occurs first, such seniority date shall be retroactive to the first compensated day of training. Upon being accorded a seniority date, and thereafter, the Student Clerk shall be subject to the terms of the existing Agreement, except that Student Clerks are not subject to displacement from the training program.

## RULE 38 - OVERTIME.

(a) Except as otherwise provided in these rules, time on duty in excess of eight (8) hours, exclusive of the meal period, on any day shall be considered overtime and paid on the actual minute basis at the rate of time and one-half.

(b) Employees shall not be required to suspend work during assigned hours to absorb overtime.

> NOTE: Under the provisions of this rule, an employee may not be requested to suspend work and pay during the tour of duty to absorb overtime previously earned or in anticipation of overtime to be earned. It is not intended that an employee cross craft lines to assist another employee. It is the intention, however, that an employee may be used to assist another employee during the tour of duty in the same office, station or location where working and in the Zone without penalty. An employee assisting another employee on a position paying a higher rate shall receive the higher rate for time worked while assisting such employee, except that existing rules which provide for payment of the highest rate for entire tour of duty shall continue in effect. An employee assisting another employee on a position paying the same or lower rate shall not have rate reduced.

(c) No overtime hours shall be worked except by direction of proper authority, except in cases of emergency where advance authority is not obtainable. In working overtime before and after assigned hours, employees filling the particular positions on which overtime is required shall be used.

(d) Provisions in existing rules which relate to the payment of daily overtime shall remain unchanged. Work in excess of forty (40) straight time hours in any workweek shall be paid at one and one-half times the basic straight time hourly rate except where such work is performed by an employee due to moving from one assignment to another or to or from an extra or furloughed list, or where days off are being accumulated under Section (g) of Rule 41.

26

CONFIDENTIAL

UP-AVINA-002258

(e)     Employees worked more than five (5) days in a workweek shall be paid one and one-half times the basic straight time hourly rate for work on the sixth and seventh days of their workweek, except where such work is performed by an employee due to moving from one assignment to another or to or from an extra or furloughed list, or where days off are being accumulated under Section (g) of Rule 41.

(f)     There shall be no overtime on overtime; neither shall overtime hours paid for, other than hours not in excess of eight (8) paid for at overtime rates on holidays or for changing shifts, be utilized in computing the forty (40) hours per week, nor shall time paid for in the nature of arbitraries or special allowances such as attending court, deadheading, travel time, etc., be utilized for this purpose, except when such payments apply during assigned working hours in lieu of pay for such hours, or where such time is now included under existing rules in computations leading to overtime.

## RULE 39 - NOTIFIED OR CALLED.

(a)     Except as provided in Section (c) of this rule, employees notified or called to perform work not continuous with, before, or after the regular work period shall be allowed a minimum of three (3) hours pro rata for two (2) hours' work or less, and if held on duty in excess of two (2) hours, time and one-half shall be allowed on the minute basis.

(b)     Employees notified or called to perform work on their designated rest days and specified holidays shall be allowed a minimum of five (5) hours and twenty (20) minutes at the rate of time and one-half for five (5) hours and twenty (20) minutes work or less, and if held on duty in excess of five (5) hours and twenty (20) minutes, time and one-half shall be allowed on the minute basis.

(c)     Employees who have completed their regular tour of duty and have been released, and required to return for further service, may, if the conditions justify, be compensated as if on continuous duty.

(d)     Employees called into work ahead of, and continuous with their regular shift, will be allowed a minimum of one (1) hour and thirty (30) minutes' pay at the time and one-half rate.

## RULE 40 - HOLIDAY PAY.

Section 1.    (a) Subject to the qualifying requirements contained in Section 3 hereof, and to the conditions hereinafter provided, each hourly and daily rated employee shall receive eight (8) hours' pay at the pro rata hourly rate for each of the following enumerated holidays:

| | |
|---|---|
| New Year's Day | Labor Day |
| Washington's Birthday | Thanksgiving Day |
| Good Friday | Day After Thanksgiving Day |
| Memorial Day | *Christmas Eve |
| Fourth of July | Christmas |
| | New Year's Eve |

*The day before Christmas is observed.

27

(b)     Holiday pay for regularly assigned employees shall be at the pro rata rate of the position to which assigned.

(c)     For other than regularly assigned employees, if the holiday falls on a day on which they would otherwise be assigned to work, they shall, if consistent with the requirements of the service, be given the day off and receive eight (8) hours' pay at the pro rata rate of the position which they otherwise would have worked.  If the holiday falls on a day other than a day on which they otherwise would have worked, they shall receive eight (8) hours' pay at the pro rata hourly rate of the position on which compensation last accrued to them prior to the holiday.

(d)     Subject to the applicable qualifying requirements in Section 3 hereof, other than regularly assigned employees shall be eligible for the paid holidays or pay in lieu thereof provided in paragraph (c) above, provided -

1.     compensation for service paid by the Company is credited to eleven (11) or more of the thirty (30) calendar days immediately preceding the holiday and

2.     have had a seniority date for at least sixty (60) calendar days or have sixty (60) calendar days of continuous service preceding the holiday beginning with the first day of compensated service, provided employment was not terminated prior to the holiday by resignation, for cause, retirement, death, non-compliance with a union shop agreement, or disapproval of application for employment.

Section 2.  (a) Monthly rates, the hourly rates of which are predicated upon 169-1/3 hours, shall be adjusted by adding the equivalent of eighty (80) pro rata hours to the annual compensation (the monthly rate multiplied by 12) and this sum shall be divided by twelve (12) in order to establish a new monthly rate.  The hourly factor shall thereafter be 176 hours and overtime rates shall be computed accordingly.  Weekly rates that do not include holiday compensation shall receive a corresponding adjustment.

(b)     All other monthly rates of pay shall be adjusted by adding the equivalent of twenty-eight (28) pro rata hours to the annual compensation (the monthly rate multiplied by 12) and this sum shall be divided by twelve (12) in order to establish a new monthly rate.  The sum of presently existing hours per annum plus twenty-eight (28) divided by twelve (12) shall establish a new hourly factor and overtime rates shall be computed accordingly.

Weekly rates not included in Section 2(a) shall receive a corresponding adjustment.

Section 3.  (a) A regularly assigned employee shall qualify for the holiday pay provided in Section 1 hereof if compensation paid by the Company is credited to the workdays immediately preceding and following such holiday or if the employee is not assigned to work but is available for service on such days.  If the holiday falls on the last day of a regularly assigned employees workweek, the first workday following rest days shall be considered the workday immediately following.  If the holiday falls on the first workday of the workweek, the last workday of the preceding workweek shall be considered the workday immediately preceding the holiday.

(b)     Except as provided in paragraph (c) below, all others for whom holiday pay is provided in Section 1 hereof shall qualify for such holiday pay if, on the day preceding and the day following the holiday, they satisfy one or the other of the following conditions:

(i)     Compensation for service paid by the Company is credited;

28

(ii)    Such employee is available for service.

> NOTE: "Available" as used in Subsection (ii) above is interpreted by the parties to mean that an employee is available unless laying off on own accord or does not respond to a call, pursuant to the rules of the applicable agreement, for service.

(c)    For the purposes of Section 1, other than regularly assigned employees who are relieving regularly assigned employees on the same assignment on both the workday preceding and the workday following the holiday shall have the workweek of the incumbent of the assigned position and shall be subject to the same qualifying requirements respecting service and availability on the workdays preceding and following the holiday as apply to the employee relieved.

> NOTE: Compensation paid under sick leave rules or practices shall not be considered as compensation for purposes of this rule.

Section 4.  (a)  Under no circumstances shall an employee be allowed, in addition to holiday pay, more than one (1) time and one-half payment for service performed on a holiday which is also a workday, a rest day and/or a vacation day.

(b)    When any of the eleven (11) recognized holidays enumerated in Section 1 of this rule, or any day which by agreement, or by law or proclamation of the State or Nation, has been substituted or is observed in place of any of such holidays, falls during hourly or daily rated employees' vacation periods, they shall, in addition to vacation compensation, receive the holiday pay provided for therein provided they meet the qualification requirements specified.  The "workdays" and "days" immediately preceding and following the vacation period shall be considered the "workdays" and "days" preceding and following the holiday for such qualification purposes.

## RULE 41 - FORTY HOUR WORKWEEK.  

(a)    Subject to the exceptions as hereinafter specified, employees shall have a workweek consisting of forty (40) hours which shall consist of five (5) days of eight (8) hours each with two (2) consecutive days off in each seven (7).  Workweeks may, however, be staggered to meet the Company's operational requirements.

> NOTE: The expression "positions" and "work" used in this rule refer to service, duties, or operations necessary to be performed the specified number of days per week and not to the workweek of individual employees.

(b)    Five-day Positions.  On positions the duties of which can reasonably be met in five (5) days, the days off shall be Saturday and Sunday.

(c)    Six-day Positions.  Where the nature of the work is such that employees shall be needed six (6) days each week, the rest days shall be either Saturday and Sunday or Sunday and Monday.

(d)    Seven-day Positions.  On positions which are to be filled seven (7) days per week, any two (2) consecutive days may be the rest days with the presumption in favor of Saturday and Sunday.

29

CONFIDENTIAL
UP-AVJNA-002261

(e-1)  Regular Relief Assignments.    All possible regular relief assignments with five (5) days of work and two (2) consecutive rest days shall be established to do the work necessary on rest days of assignments in six (6) or seven (7) day service or combinations thereof, or to perform relief work on certain days and such types of other work on other days as may be assigned under this Agreement.  Where no guarantee rule now exists, such relief assignments shall not be required to have five (5) days of work per week.

(e-2)  Assignments for regular relief positions may, on different days, include different starting times, duties and work locations for employees in the same seniority Zone, provided they take the starting time, duties and work locations of the employee or employees whom they are relieving.

(f)  Deviation from Monday - Friday Week.  If in positions or work extending over a period of five (5) days per week, an operational problem arises which the Company contends cannot be met under the provisions of Section (b) of this Rule 41, and requires that some of such employees work Tuesday to Saturday instead of Monday to Friday, and the employees contend the contrary, and if the parties fail to agree thereon, then if the Company nevertheless puts such assignments into effect, the dispute may be processed as a grievance or claim under this Agreement.

(g)  Non-consecutive Rest Days.  The typical workweek is to be one with two (2) consecutive days off, and it is the Company's obligation to grant this.  Therefore, when an operating problem is met which may effect the consecutiveness of the rest days of positions or assignment covered by Section (c), (d) and (e) of this rule, the following procedure shall be used:

1.  All possible regular relief positions shall be established pursuant to Section (e).

2.  Possible use of rest days other than Saturday and Sunday, by agreement or in accordance with other provisions of this Agreement.

3.  Efforts shall be made by the parties to agree on the accumulation of rest time and the granting of longer consecutive rest periods.

4.  Other suitable or practicable plans which may be suggested by either of the parties shall be considered and efforts made to come to an agreement thereon.

5.  If the foregoing does not solve the problem, then some of the relief or extra employees may be given non-consecutive rest days.

6.  If, after the foregoing has been done, there still remains service which can only be performed by requiring employees to work in excess of five (5) days per week, the number of regular assignments necessary to avoid this may be made with two (2) non-consecutive days off.

7.  The least desirable solution of the problem would be to work some regular employees on the sixth (6th) or seventh (7th) days at overtime rates and thus withhold work from additional relief employees.

30

CONFIDENTIAL

UP-AVINA-002262

8.      If the parties are in disagreement over the necessity of splitting the rest days on any such assignments, the Company may, nevertheless, put the assignments into effect subject to the right of employees to process the dispute as a grievance or claim under this agreement, and in such proceedings, the burden shall be on the Company to prove that its operational requirements would be impaired if it did not split the rest days in question and that this could be avoided only by working certain employees in excess of five (5) days per week.

(h)      <u>Rest Days of Extra or Furloughed Employees.</u>  To the extent extra or furloughed employees may be utilized under this Agreement, their rest days need not be consecutive; however, if they take the assignment of a regular employee they shall take the rest days of that assignment.

(i)      <u>Beginning of Workweek.</u>  The term "workweek" for regularly assigned employees shall mean a week beginning on the first day on which the assignment is bulletined to work, and for unassigned employees shall mean a period of seven (7) consecutive days starting with Monday.

(j)      <u>Service on Rest Days.</u>  Service rendered by employees on their assigned rest days shall be paid for under Rule 39(b) unless relieving an employee assigned to work on such day who does not work any portion of such employee's assignment, in which case they shall be paid eight (8) hours at the rate of time and one-half.

(k)      <u>Work on Unassigned Days.</u>  Where work is required by the Company to be performed on a day which is not a part of any assignment, it may be performed by an available extra or unassigned employee who will otherwise not have forty (40) hours of work that week; in all other cases, by the regular employee.

<u>RULE 42 - SICK LEAVE ALLOWANCE.</u> 

> **Comment:** See interpretation dated 11/29/95 - document named h:\master\rule42.int

Section 1.  There is hereby established a non-governmental plan for sickness allowance supplemental to the sickness benefit provisions of the Railroad Unemployment Insurance Act as now or hereafter amended.  It is the purpose of this sick leave rule to supplement the sickness benefits payable under the Act and not to replace or duplicate them.

(a)      An employee who has been in the continuous service of the Company for the period of time specified will be granted an allowance as set forth below for time absent on account of sickness or injury:

(1)      Upon completion of one (1) year of service, a total in the following year of five (5) days' pay.

(2)      Upon completion of two (2) years of service, a total in the following year of seven and one-half (7½) days' pay.

(3)      Upon completion of three (3) years of service, a total in the following year of ten (10) days' pay.

CONFIDENTIAL

UP-AVINA-002263

NOTE: In the application of paragraph (1) above, the rate of pay will be the rate of the position to which assigned, the employee's Employee Maintenance Rate (EMR) or protected rate being paid, whichever is higher, and for an extra employee assigned to a guaranteed reserve/extra board shall be the guaranteed reserve/extra board rate of pay, the employee's EMR or protected rate being paid, whichever is higher, for a reserve/extra employee working a non-guaranteed reserve/extra board shall be the rate of the position called for or protected rate being paid, whichever is higher.

(b-1)     Until an employee has completed three (3) years of continuous service, each consisting of twelve (12) calendar months, and does not lose their seniority, the employee sick leave allowance and eligibility therefore shall be calculated from the date of the employee entrance into service.

(b-2)     Effective January 1, following completion of three (3) years of continuous service as specified in the preceding paragraph, the calendar year, January 1 to December 31, shall be the "year of service" for sick leave purposes.

(b-3)     During the period of transition from a service year to a calendar year as provided above, an employee shall be allowed not more than the equivalent of one (1) working day for each calendar month or major fraction thereof intervening between the date of completion of three (3) years of service, but in any event not more than ten (10) days, exclusive of any unused sick leave allowance accrued under paragraph (d) of this rule.

Example:          An employee completed three (3) years of service on July 1. Regardless of whether he has received a sick leave allowance, prior to July 1, he will be allowed not more than six (6) working days, exclusive of any unused sick leave allowance accrued under paragraph (d) of this rule between July 1 and December 31, i.e., the equivalent of one (1) day for each intervening calendar month.

(c)     Where employees are regularly required to work their eight (8) hour assignments on their rest days and/or holidays, when they are absent due to sickness on such days, the designated holidays and assigned rest days will be considered as working days for the purpose of applying this rule; however, the absent employee will be allowed only straight-time rate for the time lost on such days.

(d)     After an employee has accumulated thirty (30) days of unused sick leave, thereafter, in each year of service, the employee shall have the option, which must be made in the month of October, of receiving payment in the month of December in five (5) full-day increments at the rate of seventy-five percent (75%) of the daily allowance or the employee may continue to accumulate the unused sick leave.  Pay for unused sick time will be based upon the rate of the position occupied on the last day of November, the employee's EMR or protected rate under the UP/TCU Job Stabilization Agreement, whichever is higher, and will be paid no later than the first half payroll of December.  (Pay for extra employees assigned to a guaranteed reserve/extra board will be based on the guaranteed reserve/extra board rate of pay, the employee's EMR or protected rate, whichever is higher.  Pay for furloughed employees and for extra employees working a non-guaranteed reserve/extra board will be based on the rate of the position last worked, the employee's EMR or protected rate, whichever is higher.)

32

CONFIDENTIAL

UP-AVINA-002264

(e)     An employee who is off account of sickness in any calendar year in excess of the specified allowance entitled to under paragraph (a) of this rule shall, upon request, be given additional sick leave with pay to the extent of unused sick leave in sick leave reserve.  Sick leave entitlement for the current year must be used before any sick leave in the sick leave reserve can be used.

(f)     Before the end of the last week in September of each year, each employee with unused sick leave will be notified of the number of unused days which are being placed in the employee sick leave reserve, and the total number of accumulated days in such sick leave reserve.

(g)     It will be optional with the Company to fill, partially fill, or not fill the position of an employee who is absent account of the employee's personal sickness and is receiving an allowance under this rule.  If the Company elects to fill the position in its entirety, appropriate rules of the Agreement will be followed.  The use of other employees on duty and on other positions in the same office to perform the duties of the employee absent under this rule is permissible and such employees will be compensated in accordance with Rule 25.

(h)     The employing officer must be satisfied that the sickness is bona fide.  Satisfactory evidence as to sickness from a reputable physician, preferably in the form of a certificate, may be required in case of doubt.  This requirement will be determined on an individual case basis and not in the form of blanket instructions.

(i)     No allowance will be made under this rule for any day on which the employee is entitled to compensation under any other rule or agreement.

(j)     Any sick leave allowance to be paid by the Company under this rule shall be reduced in the amount by the maximum daily allowance which the employee will be paid or could be paid, if proper claim were made by said employee under the Railroad Unemployment Insurance Act.  In computing such supplemental allowance, only the assigned work days during which the employee is accorded sick leave allowance as provided in this rule will be considered.  All sick leave allowances shall be paid in the current payroll period.

(k)     An employee falsely claiming sick time will be subject to disciplinary action.

(l)     Employees who retire or die shall receive pay for seventy-five percent (75%) of the accumulated and unused sick leave at the rate of the position last occupied, the employee's EMR or protected rate, whichever is higher.  (Pay for employees assigned to a guaranteed reserve/extra board will be based on the guaranteed reserve/extra board rate of pay, the employee's EMR or protected rate, whichever is higher.  Pay for furloughed employees and for employees assigned to a non-guaranteed reserve/extra board will be based on the rate of the position last worked, the employee's EMR or protected rate, whichever is higher.)  Pay on behalf of a deceased employee shall be paid to such beneficiary as may be designated or, in the absence of such designation, the surviving spouse or children or the employee estate, in that order of preference.

Section 2.  (From Article IX - Personal Leave of the December 11, 1981 National Agreement.)

(a)     A maximum of three days of personal leave will be provided on the following basis:

1.     Employees who have met the qualifying vacation requirements during eight calendar years under vacation rules in effect on January 1, 1982 shall be entitled to one day of personal leave in subsequent calendar years;

33

CONFIDENTIAL

UP-AVINA-002265

2. Employees who have met the qualifying vacation requirements during seventeen calendar years under vacation rules in effect on January 1, 1982 shall be entitled to two days of personal leave in subsequent calendar years; and

3. Employees who have met the qualifying vacation requirements during twenty calendar years under vacation rules in effect on January 1, 1982 shall be entitled to three days of personal leave in subsequent calendar years.

(b)     Personal leave days provided in Paragraph (a) may be taken upon 48 hours' advance notice from the employee to the proper Carrier officer; provided, however, such days may be taken only when consistent with the requirements of the Carrier's service.  It is not intended that this condition prevent an eligible employee from receiving personal leave days except where the request for leave is so late in a calendar year that service requirements prevent the employee utilization of personal leave days before the end of that year.

(c)     Personal leave days will be paid for at the regular rate of the employee position, the employee's EMR or the protected rate, whichever is higher.

(d)     The personal leave days provided in Paragraph (a) shall be forfeited if not taken during each calendar year.  The Carrier shall have the option to fill or not fill the position of an employee who is absent on a personal leave day.  If the vacant position is filled, the rules of the agreement applicable thereto will apply.  The Carrier will have the right to distribute work on a position vacated among other employees covered by the TCU agreement.

RULE 43 - LEAVE OF ABSENCE. 

(a)     Employees shall be granted leave of absence when they can be spared without interference to the service, but not to exceed ninety (90) days in a calendar year, except in cases of sickness, physical disability of the employee, Organization work, service with railroad bureaus, Interstate Commerce Commission, or holding public office, or by agreement between the supervising officer and Local/District Chairman.

(b)     Acceptance of other employment while on leave of absence, other than as provided in Section (a) of this rule, without the approval of Local/District Chairman and supervising officer, shall terminate an employee's service and seniority.

(c)     All leaves of absence in excess of ten (10) working days must be in writing and copies shall be furnished Local/District Chairman.  Leaves of absence of ten (10) days or less may be required in writing.

(d)     An employee desiring to return from leave of absence before the expiration thereof must give at least thirty-six (36) hours' advance notice before making displacement.

(e)     After an employee has been on leave of absence for a period of one (1) year, the position vacated and previously held by such employee shall be bulletined as a permanent vacancy pursuant to Rule 11 of this Agreement, in lieu of temporary.

34

CONFIDENTIAL
UP-AVINA 002266

(f)     An employee failing to report for duty at the expiration of leave of absence may be subject to discipline under Rule 45 unless a reasonable excuse for such failure to report is furnished not later than ten (10) days from expiration of leave of absence.

## RULE 44 - PROBATIONARY PERIOD - NEW EMPLOYEES.

(a)     The applications of new employees entering the service shall be approved or rejected within sixty (60) days. When applicant is not notified to the contrary within the time stated, it shall be understood that the application is approved, but this clause shall not operate to prevent the removal from service of such applicant if subsequent to the expiration of sixty (60) days it shall be proven that the information given in the application is false, provided such action is taken by the Company within three (3) years from the date the employee enters the service.

(b)     Subsequent to the sixtieth (60th) day and prior to the expiration of the three (3) year period as provided in (a) above, an employee whose application has been approved, shall not be removed from service under the provisions of this rule without formal hearing as provided in Rule 45.

(c)     Applicants shall, within sixty (60) days from date of employment, have returned to them all service cards, letters of recommendation and other papers which have been furnished by them to the railroad for filing with their application.

## RULE 45 - DISCIPLINE PROCEDURE.

(a)     No employee shall be disciplined or dismissed without a fair and impartial hearing. Suspension in proper cases pending a hearing, which shall be held within seven (7) days of the time charge is made or employee suspended, shall not be considered a violation of this principle. However, by mutual agreement between the Company and the affected employee, such employee may waive in writing the right to a formal investigation and accept specified discipline. Such employee shall be afforded an opportunity to consult with his duly accredited representative before signing a waiver.

NOTE: Proper cases in which an employee may be suspended pending a hearing are serious charges such as theft, altercation, Rule "G" violation, insubordination, serious misconduct and major offenses whereby the employee retention in service could be hazardous.

(b)     If an investigation is conducted, the employee shall be apprised at a reasonable time prior to such hearing of the precise charge(s). The charge(s) as provided herein must be made within fourteen (14) calendar days of the first date facts relating to the charge(s) are known by or to an officer of the Company having jurisdiction within the administrative territory involved and who is authorized to participate in the investigation. In case of unsatisfactory service or incompetency all charges to be investigated shall be stated. The employee shall have reasonable opportunity to secure the presence of witnesses and the right to be represented by the duly accredited representatives as defined in Rule 57.

c)     Investigations and hearings shall be held when possible at home terminal of the employee involved and at such time as not to cause the employee to lose time.

35

(d)     If the decision of the Company to issue discipline is to be appealed, a request to discuss the decision in conference must be made in writing directly to the highest officer designated by the Company to handle such disputes within sixty (60) days from the date discipline is issued. Further handling of the dispute will be in accordance with Paragraphs (c) and (d) of Rule 46 except this Paragraph (d) of Rule 45 and Rule 46 will not apply to requests for leniency and acceptance of discipline by waiving investigation.

(e)     If the final decision decrees that charges against the employee were not sustained, the record shall be cleared of the charge; if suspended or dismissed, the employee shall be reinstated and compensated for any loss of wages.

(f)     Where an employee is dismissed or suspended from service for cause and subsequently it is found that such discipline is unwarranted and the employee is restored to service with pay for time lost, earnings in other employment shall be used to offset the loss of earnings.

(g)     An employee disciplined as a result of formal investigation shall be advised in writing of the discipline assessed within fifteen (15) days after the investigation is held with copy to the General Chairman, unless a longer time limit is mutually agreed to in specific instances.

(h)     A copy of the transcript of evidence taken at a formal investigation shall be furnished to the employee and representative of the Organization within twenty (20) days from the date hearing is concluded.

(i)     When a notation is made against the record of the employee, the employee will be furnished copy and verification of receipt.

(j)     An employee who fails or refuses to be present for investigation or hearing after being duly notified to do so shall terminate service and seniority rights.

(k)     An employee disqualified under the provisions of Rule 20 of this Agreement shall upon request, which must be made in writing within seven (7) days after disqualification, be granted formal hearing within seven (7) days from date hearing is requested. The hearing shall be limited to the issue of qualification.  If the issue of disqualification is upheld, the affected employee shall exercise seniority as prescribed by Rules 18 and 20 and such employee shall have the right of appeal as provided in Section (d) of this rule.  If the issue of disqualification is not upheld, all employees affected shall be restored to their former positions and paid for any loss of wages.

(l)     Employees who consider themselves unjustly treated, other than covered by these rules, will be provided a hearing, if requested in writing to their immediate supervisor within seven (7) calendar days of cause of complaint.  A reason shall be provided when a request for unjust treatment hearing is submitted.

The provisions of this Section shall not apply to partially or fully excepted positions if the incumbent is released pursuant to Rule 10 or in instances involving an employee's failure to meet minimum fitness and ability requirements as set forth in Rule 8 and disqualification as provided in Rule 45(k).

(m)     Nothing herein shall abridge the right of the Company to reinstate, with original seniority status, to service employees who may have been relieved from active service for just cause; however, the exercise of their displacement rights will be subject to agreement between the Company and the General Chairman.

CONFIDENTIAL
UP-AVINA-002268

## RULE 46 - TIME LIMIT ON CLAIMS.

(a)    All claims or grievances must be presented in writing by or on behalf of the employee involved to the officer of the Company authorized to receive same within sixty (60) days from the date of the occurrence on which the claim or grievance is based.  Should any such claim or grievance be disallowed, the Company shall, within sixty (60) days from the date same is filed, notify whoever filed the claim or grievance (the employee or the representative) in writing of the reasons for such disallowance.  If not so notified, the claim or grievance shall be allowed as presented, but this shall not be considered as a precedent or waiver of the contentions of the Company as to other similar claims or grievances.

(b)    If a disallowed claim or grievance is to be progressed, a request for conference to discuss the claim or grievance must be presented in writing to the highest officer of the Company designated to handle claims and grievances within sixty (60) days from receipt of notice of disallowance.  Failing to comply with this provision, the matter shall be considered closed, but this shall not be considered as a precedent or waiver of the contentions of the employees as to other similar claims or grievances.

(c)    If conference to discuss the claim or grievance is requested, the parties shall meet within sixty (60) days from receipt of such request at a mutually agreeable time and place to review the claim or grievance in conference.  Within sixty (60) days from date of conference, the Company shall notify the  representative (or the employee if the employee who filed the claim or grievance is handling same) of the results of the conference.  If not so notified, the claim or grievance shall be allowed as presented, but this shall not be considered as a precedent or waiver of the contentions of the Company as to other similar claims or grievances.  It is understood, however, that the parties may, by agreement, at any stage of the handling of a claim or grievance on the property, extend the sixty (60) day periods established herein.

(d)    All claims or grievances involved in a notification of conference results by the Company which remain disallowed shall be barred, unless within nine (9) months from the date of said notification, proceedings are instituted by the employee or the duly authorized representative before the appropriate division of the National Railroad Adjustment Board or a system, group or regional board of adjustment that has been agreed to by the parties hereto as provided in Section 3, Second, of the Railway Labor Act.  It is understood, however, that the parties may by agreement in any particular case extend the nine (9) month period herein referred to.

(e)    A claim may be filed at any time for an alleged continuing violation of any agreement and all rights of the claimant or claimants involved thereby shall under this rule be fully protected by the filing of one claim or grievance based thereon as long as such alleged violations, if found to be such, continues.  However, no monetary claim shall be allowed retroactively for more than sixty (60) days prior to the filing thereof.  With respect to the claims and grievances involving an employee held out of service in discipline cases, the original notice or request for reinstatement with pay for time lost shall be sufficient.

(f)    This rule recognizes the right of representatives of the Organization to file and progress claims and grievances for and on behalf of the employees they represent.

(g)    This rule is not intended to deny the right of the employees to use any other lawful action for the settlement of claims or grievances provided such action is instituted within nine (9) months of the date of the decision of the highest designated officer of the Company.

37

CONFIDENTIAL

UP-AVINA 002269

RULE 47 - TRANSPORTATION.

    (a)    Committee of employees shall be granted transportation and necessary leave of absence for investigation, consideration and adjustment of grievances.

    (b)    Employees transferred by direction of the Company shall be furnished free transportation for themselves, dependent members of their families and household goods, consistent with Federal and State Laws.

    (c)    Employees covered by this Agreement and those dependent upon them for support shall be given the same consideration in granting free transportation as is granted other employees in service.

RULE 48 - SHORTAGE IN PAY CHECKS.

    (a)    Employees who are short in their payroll voucher an amount equal to one (1) day's pay or more shall be given a voucher within three (3) days on request.

    (b)    When time is claimed in writing and such claim is disallowed, the employee making the claim shall be notified in writing the reason for non-allowance.

RULE 49 - ATTENDING COURT AND OTHER HEARINGS AT THE REQUEST OF THE COMPANY.

    (a)    An employee required by the Company to:

        1.    Attend court or other public forum or tribunal as a witness for the Company

        2.    Attend court or other public forum tribunal as a witness for a party other than the Company where the employee's testimony is desired by reason of the employee's employment with the Company and the Company is not a party; or

        3.    Attend a hearing (investigation) under a labor contract as a witness for the Company only and is not charged with a rule violation[1], shall, subject to the conditions hereinafter specified, be:

            A.    Furnished transportation required away-from-home terminal;

            B.    Paid necessary expenses incurred away-from-home terminal; and

            C.    Compensated as follows, if required to attend any of the tribunals or hearings listed in Paragraphs 1, 2 or 3 above:

---

[1]Not applicable where the employee has been charged with an offense or rule violation under a labor contract and is attending a hearing or investigation as required by that contract as a condition precedent to discipline or dismissal, or is attending an investigation requested by the employee.

CONFIDENTIAL

UP-AVINA_002270

1.    On the regular tour of duty shall be paid wage loss, if any;

2.    Outside of the regular tour of duty shall be paid actual time consumed at straight time rate with a minimum of eight (8) hours on any calendar day.

(b)    No payment shall be made by the Company to any employee for attending a court or other tribunal as a witness or attending hearings under any labor agreement except as provided in this rule.

## RULE 50 - JURY DUTY.

When regularly assigned employees are summoned for jury duty and are required to lose time from their assignments as a result thereof, they shall be paid for actual time lost with a maximum of the basic day's pay at the straight time rate of the position held for each day lost less the amount allowed the employee for jury service for each such day, except allowances paid by the court for meals, lodging or transportation, subject to the following qualification requirements and limitations:

(1)    An employee must exercise any right to secure exemption from the summons and/or jury service under federal, state or municipal statute and shall be excused from duty when necessary without loss of pay to apply for the exemption.

(2)    An employee must furnish the Company with a statement from the court of jury allowances paid and the days on which jury duty was performed.

(3)    The number of days for which jury duty pay shall be paid is limited to a maximum of sixty (60) days in any calendar year.

(4)    No jury duty pay shall be allowed for any day as to which the employee is entitled to vacation or holiday pay.

(5)    When an employee is excused from railroad service because of jury duty, the Company shall have the option of determining whether or not the employee's regular position shall be blanked, notwithstanding the provisions of any other rules of this Agreement.

39

CONFIDENTIAL

UP-AVINA-002271

RULE 51 - OFFICE EQUIPMENT, MACHINES, ETC.

     (a)    Typewriters, other office equipment devices, and supplies shall be furnished by the Company at offices where the Company requires their use.

     (b)    The Company recognizes its responsibility in furnishing vehicles for use in transaction of Company business; therefore, the ownership of such vehicles shall not be qualifying requisite of employees in connection with their seniority rights for positions covered by this Agreement.

RULE 52 - BOND PREMIUMS AND LICENSE FEES.

     Employees shall not be required to pay premiums on bonds required by the Company in handling its business, nor shall they be required to pay examination or license fees required of employees operating vehicles or mechanical devices.

RULE 53 - NON-DISCRIMINATION.

     These rules shall be applied by the parties in compliance with State and Federal Laws and regulations and without regard to the race, religion, color, national origin, age or sex of the individuals covered by the rules.

RULE 54 - PHYSICAL EXAMINATION-DISQUALIFICATION.

     (a)    Applicants for employment shall undergo a physical examination at the expense of the Company to determine their fitness for the work required and to protect the health and safety of employees.

     (b)    In the event an employee in active service is required to report for physical examination, the following will govern:

          (1)    The Company will pay for the examination.

          (2)    If the employee passes the examination, he/she shall be returned to work immediately and paid for all time lost taking the examination.

          (3)    If the employee passes the examination and loses no time taking the examination, he/she shall be paid for actual time consumed in taking the examination, with a minimum of two (2) hours and a maximum of eight (8) hours a day at pro rata rate of last service performed.

          (4)    In the event the employee is required to travel to a point away from his/her headquarters place of employment to take an examination, he/she shall be allowed actual necessary expenses in connection therewith.

40

CONFIDENTIAL

UP-AVINA-002272

(c)    In the event an employee is required to report for physical examination after having been absent from work, the following will govern:

    (1)    The Company will pay for the examination and the employee will, upon request, be furnished a copy of the findings and diagnosis.

    (2)    The employee will be notified as promptly as possible, and in any event within five (5) working days after the examination results are made available to the Company, as to whether or not he/she passed. Any time lost in excess of the five (5) working days will be paid for by the Carrier, provided the employee passes the examination.

(d)    When there is a dispute between the Company Medical Officer and an employee personal physician, the following will govern:

    (1)    Upon request of the employee, the employee physician and a Company Medical Officer shall confer and attempt to resolve the dispute. Failing to agree, these physicians will, within fifteen (15) days, select a neutral physician who is in no way connected with the employee, any union or any railroad, and who will study the case, examine the employee, and within fifteen (15) days from his selection or examination of the employee, render a decision which will be final as to the employee being able to return to service in accordance with the Company's physical requirements. The time limits referred to herein may be extended by agreement between the parties in individual cases. If it is determined by the majority that the employee condition did not warrant being held from service, such employee will be returned to service and paid for all time lost subject to the provisions of paragraph (c)(2). The Company and the employee involved will each defray the expense of their respective physicians. The fee of the third member of the board will be borne equally by the employee involved and the Company. Other examination expenses, such as X-rays, electrocardiograms, etc., will be borne equally by the employee involved and the Company.

NOTE: The Company will establish only reasonable physical requirements for employees in the service and the Union reserves its right to contest any physical requirement under the provisions of Section 3 of the Railway Labor Act.

    (2)    Should the decision of the board of physicians be adverse to the employee and such employee considers that their physical condition has improved sufficiently to justify considering their return to service, a re-examination will be arranged upon request of the employee, or the duly accredited representative, but not earlier than ninety (90) days after such decision, nor more often thereafter than each ninety (90) days.

(e)    This rule does not apply to periodic examinations on sight, hearing or color perception, nor does it contemplate the commencement of periodic general physical examinations.

(f)    Employees who are physically disqualified for the position to which assigned may, in the exercise of their seniority, displace junior employees from positions which they are qualified to fill, pursuant to Rule 18(b).

41

## RULE 55 - SERVICE LETTER.

Employees whose applications are approved and who have been in the service sixty (60) days or longer, shall, upon request, if they leave the service of the Company, be furnished with a service letter showing length of service, capacity in which employed and cause for leaving.


## RULE 56 - EXTRA BOARDS.

Extra Board or Boards shall be maintained and rules governing the manner of working Extra Board employees shall be established in writing by agreement.


## RULE 57 - DULY ACCREDITED REPRESENTATIVE.

Where the term "duly accredited representative", General or Local/District Chairman appears in this Agreement, it shall be understood to mean the regularly constituted committees and/or the officers of the Transportation Communications Union of which such committees or officers are a part.


## RULE 58 - VACATIONS. 

Employees shall be granted vacations with pay or payment in lieu thereof in accordance with the Vacation Agreement of December 12, 1941, the interpretations thereto and as such Vacation Agreement has been supplemented and amended by subsequent National Vacations Agreements of -

> August 21, 1954
> August 19, 1960
> November 20, 1964
> December 15, 1966
> January 13, 1967
> December 28, 1967
> June 24, 1968
> February 25, 1971
> January 30, 1979
> December 11, 1981

or as further amended by National Agreements.

42

CONFIDENTIAL

UP-AVINA-002274

# RULE 59 - HEALTH AND SAFETY.

(a)     The health and safety of employees shall be protected while on duty.

(b)     Good drinking water shall be furnished, artificially cooled when climatic conditions require; drinking fountains shall be provided where practicable.

(c)     Offices, locker rooms and washrooms shall be adequately lighted and heated consistent with the source of energy available.

(d)     When situations arise where employees consider that facilities are necessary for protection of their clothing, washroom facilities are inadequate, or in the interest of health and safety, and the matter is brought to the attention of the proper officer of the Company by the Local Chairman/District, the Company shall be afforded an opportunity to participate, to determine the need and/or practicability of making requested changes.

# RULE 60 - POSTING NOTICES.

At points or in departments where employees covered by this Agreement are employed, suitable bulletin boards shall be provided for posting notices of interest to the employees.

# RULE 61 - RULINGS.

Whenever a ruling is made by an authorized general officer of the Company affecting the interpretation of any rule or part of a rule in this Agreement, the General Chairman representing the employees shall be furnished with a copy of such ruling.

# RULE 62 - GENERAL COMMUNICATIONS OFFICES.

(a)     General Communications Offices under the jurisdiction of the General Director of Telecommunications shall be:

> Omaha "U"
> Los Angeles "Z"
> Portland "P"

(b)     Managers in telegraph offices listed in this rule shall be assigned 8AM to 4PM which includes twenty (20) minutes in which to eat, except where first trick (8AM - 5PM) Wire Chiefs are employed.

(c)     Rates of pay of Managers in General Communications Offices cover all services rendered during a calendar month, subject to the provisions of Section (f-3) of Rule 1 but the incumbent shall not be regularly assigned to work in excess of eight (8) hours per day.

43

CONFIDENTIAL

UP-AVINA-002275

RULE 63 - BULLETINING, SELECTING, FILLING POSITIONS, GENERAL COMMUNICATIONS OFFICE.

(a)  Subject to the provisions of Rule 11, 20 and 66 of this Agreement and any supplemental agreements specifically applicable to General Communications Offices, all new positions and vacancies other than temporary vacancies in General Communications Offices shall be filled by the senior qualified employee making application for the bulletined position or vacancy. The seniority date of an employee as established by this Agreement shall govern in filling new positions and vacancies in General Communications Offices.

(b)  The Assistant Director of Communications shall have the right to accept and/or reject applicants, including those employees who have an exercise of seniority under the controlling rules of this Agreement for positions of Wire Chief after full evaluation of all applications, including those desiring to exercise seniority rights, by selecting the senior applicants who have demonstrated their fitness and ability to administer, supervise and direct the operational details necessary to the proper functioning of General Communications Offices.  The General Chairman, or his representative, will be consulted before an employee other than the senior applicant is assigned.

(c)  Employees selected for positions of Wire Chief and Manager by the Assistant Director of Communications pursuant to Section (b) of this rule shall be afforded, at the discretion of the Company, on-the-job and in-service training in the administrative supervisory and operational details necessary to the proper functioning of General Communications Offices, which training shall be under the supervision and direction of Managers, Manager-Wire Chiefs and/or other personnel as directed by the Assistant Director of Communications; provided further that applicants for the position of Wire Chief shall also be qualified to handle train orders.

(d)  Employees applying and those selected for positions of Wire Chiefs in General Communications Offices pursuant to Section (b) of this rule shall not be required, as heretofore, to have a thorough knowledge of electronics and the technical aspects and functioning of the complex and sophisticated communications equipment, but nothing herein shall be construed or interpreted so as to abridge the historical, traditional and customary right of employees so classified to handle or assist in handling trouble calls, prepare the necessary trouble reports, test physical wire circuits, locate source of trouble, notify and call the proper supervisory, maintenance and/or equipment personnel so as to insure prompt and proper functioning and/or restoration of all communications equipment and/or facilities.

(e)  The Company shall continue to provide training, instructional and operational manuals to each General Communications Office and provide on-the-job and in-service instruction to Wire Chiefs on the design, operational, functional and theoretical concepts of electronic and communications equipment installed in their respective offices so as to aid such employees in the proper discharge of their traditional, historical and customary administrative, supervisory and operational functions and to prepare such employees for positions of greater responsibility.

44

CONFIDENTIAL

UP-AVNA-002276

## RULE 64 - GENERAL COMMUNICATIONS OFFICES - FUNCTIONING, DEFINITIONS AND MAINTENANCE POSITIONS.

(a)     The classification of Wire Chief as used and listed in Rule 1 (SCOPE) of this Agreement shall be understood to embrace the traditions, historical and customary duties of such positions as related to the administrative, supervisory and operational details necessary to the proper functioning of General Communications Offices.

(b)     Where General Communications Offices are established and/or maintained, not less than one (1) employee on each shift, where service is required on one (1) or more shifts in such offices, shall be classified under one of the following categories:

        (a) Manager
        (b) Manager-Wire Chief, and/or
        (c) Wire Chief

NOTE:     In General Communications Offices, at least one (1) position in such office or offices shall be classified as Manager and/or Manager-Wire Chief and where only one (1) position is maintained throughout the twenty-four (24) hour period in such office or offices, the position shall, in that event, be classified as Manager-Wire Chief.


## RULE 65 - TRAVELING RELIEF WIRE CHIEF.

(a)     Positions of Traveling Relief Wire Chief may be established at General Communications Offices to be designated by the Assistant Director of Communications for the purpose of providing relief and to fill vacancies as required in General Communications Offices.

(b)     Assignment to positions of Traveling Relief Wire Chief shall be made by the Assistant Director of Communications from employees who have completed training under the program for training Wire Chiefs.

(c)     When available for duty at assigned headquarters and not filling a vacancy, employees assigned to positions of Traveling Wire Chiefs shall be compensated for eight (8) hours per day at the Assistant Wire Chief rate of pay in the General Communications Office where such classification exists and at the Wire Chief rate in other offices for each calendar day not to exceed five (5) days or forth (40) hours per workweek.

NOTE:     The term "workweek" shall mean a period of seven (7) consecutive days starting with Monday.

(d)     The senior employee on position of Traveling Relief Wire Chief shall be required to accept assignment to the first bulletined Wire Chief vacancy in that General Communications Office for which no application from qualified employees is received.

45

CONFIDENTIAL
UP-AVINA-002277

RULE 66 - MANAGERS - GENERAL COMMUNICATIONS OFFICES.

     (a)    Vacancies in positions of Manager, General Communications Offices, shall be bulletined in accordance with Rule 11 of this Agreement and, subject to the conditions hereinafter specified, the senior qualified applicant shall be placed on the position, but shall be considered on temporary assignment for a period of not to exceed ninety (90) days.

     (b)    If at any time prior to the expiration of the ninety (90) day period set forth in Section (a) of this rule, the Assistant Director of Communications considers the applicant has amply demonstrated qualifications for the position, or if the Assistant Director of Communications takes no action in ninety (90) days, the applicant shall be considered being permanently assigned to the position as the regular incumbent.  If the Assistant Director of Communications determines at any time prior to the expiration of the ninety (90) day period set forth in Section (a) that the applicant is not or cannot become qualified, the assignment shall be cancelled and the applicant shall revert to former assignment and be governed by the terms and provisions of Rule 13.

     (c)    Before an applicant is removed from the temporary assignment as Manager under Section (b) of this rule, the Assistant Director of Communications shall confer with the General Chairman and explain the reasons why applicant is not considered qualified; provided, however, the final decision as to the applicant's qualifications shall rest with the Assistant Director of Communications.


RULE 67 - EMERGENCY SERVICE.

     (a)    Employees at accidents, washouts, snow blockades, or other similar emergency service, shall be paid continuous time for time called until their return, as follows: overtime rates for overtime hours, and straight time for the recognized straight time hours; relief from duty for five (5) hours or more shall be deducted, provided the employee receives not less than eight (8) hours for each calendar day.

     (b)    <u>Work Train Service.</u>  Employees assigned to work train crews shall be paid the minimum rate in the Zone where service is performed, and shall be assigned the same hours as the work train crew to which assigned, with minimum of eight (8) hours for each day on which service is performed.  Where board and lodging are not furnished by the Company, expenses shall be allowed on basis of $22.00 per day, which amount shall cover meals and lodging while away from headquarters.


RULE 68 - COMMISSIONS.

     When commissions accruing to any position classified as Agent or Agent-Telegrapher are materially reduced, or entirely removed, and it has been recognized that the commissions received operated to influence the rate downward, prompt adjustment in rate shall be made.

46

CONFIDENTIAL

UP-AVJNA 002278

RULE 69 - EXCESSIVE WORK.

When an employee considers work is excessive or that a reduction of force is not justified, and complaint is made to the supervisor, investigation at which the General Chairman may be present, shall be held promptly at the location. If investigation develops it is necessary, relief shall be granted.

RULE 70 - STANDARD FORMS.

For the purpose of uniformity, standard forms as shown in Appendix "M" hereof shall be used for the following, with copies to be furnished to the Local/District and General Chairman, as indicated:

Form No.               Subject Matter
1    Bulletin Advertising New Position or Vacancy
2    Notice of Assignment to New Position Vacancy of Thirty Days or More
3    Notice of Change in Starting Time or Rest Days
4    Notice Covering Abolishment of Position or Reduction in Forces
5    Application for Bulletined Position
6    Notice of Temporary Position or Vacancy under Rule 12(c) of the Agreement
7    Application for Temporary Position or Vacancy under Rule 12(c) of the Agreement
8    Notice of Assignment to Temporary Position or Vacancy Under Rule 12(c) of the Agreement
9    Employee's Request to Displace
10   Notice of Address Filed under Rule 18 of the Agreement
11   Notice of Change of Election Under Rule 18 of the Agreement
12   Application for Positions in Other Seniority Zones Under Rule 15 of Agreement
13   Establishment of Seniority Notice

CONFIDENTIAL

UP-AVINA-002279

## RULE 71 - ENACTMENT AND TERMINATION.

This Agreement shall be effective July 31, 2006, and shall continue in effect until it is changed as provided herein, or under the provisions of the Railway Labor Act.

Should either of the parties to this Agreement desire to revise these rules, thirty (30) days' written advance notice containing the proposed changes shall be given and conference shall be held immediately on the expiration of said notice unless another date is mutually agreed upon.

Additional agreements and understandings not set forth in this Agreement which are in effect as of July 31, 2006, shall remain in effect until changed or cancelled, as provided therein.

It is understood that the following Agreements or understandings, including certain National Agreements which are reproduced in the Appendix, shall be continued in effect subject to termination or modification as provided therein, or as modified or incorporated in the preceding rules and by supplemental agreements.

FOR THE TRANSPORTATION
COMMUNICATIONS UNION:

FOR THE
UNION PACIFIC RAILROAD COMPANY:

_____
J. F. Lydon
General Chairman, TCU

_____
D. D. Matter
General Director, Labor Relations/Non-Ops

_____
S. Siriano
President, ASD/TCU

_____
D. K. Peitzmeier
Director, Labor Relations/Non-Ops

_____
S. Mether
Vice General Chairman, TCU

_____
D. Mitchell
Vice General Chairman, TCU

_____
B. P. Whitacre
Vice General Chairman, TCU

APPROVED:

_____
J. L. Quilty
International Vice President, TCU

48

UP-AVINA

BRAC-VAC.
Synthesis

Synthesis

Of

Nonoperating (BRAC)

National Vacation Agreements

Prepared Jointly by the
Brotherhood of Railway, Airline and Steamship Clerks,
        Freight Handlers, Express and Station Employes
and the
National Railway Labor Conference
            (Revised 1982)

49

CONFIDENTIAL

UP-AVINA 002281

NONOPERATING (BRAC) NATIONAL
VACATION AGREEMENTS

The following represents a synthesis in one document, for the convenience of the parties, of the current provisions of the December 17, 1941 National Vacation Agreement and amendments thereto provided in the National Agreements of August 21, 1954, August 19, 1960, November 20, 1964, December 15, 1966 (BRAC), January 13, 1967 (ORT), December 28, 1967 (BRAC), June 24, 1968 (T-CEU), February 25, 1971, January 30, 1979 and December 11, 1981, with appropriate source identifications.

This is intended as a guide and is not to be construed as constituting a separate agreement between the parties. If any dispute arises as to the proper interpretation or application of any provision, the terms of the appropriate vacation agreement shall govern.

– – – – – – – –

1. (a) Effective with the calendar year 1973, an annual vacation of five (5) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred twenty (120) days during the preceding calendar year.

(ART. III - VACATIONS - Section 1(a) - 2/25/71 Agreement)

(b) Effective with the calendar year 1973, an annual vacation of ten (10) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred ten (110) days during the preceding calendar year and who has two (2) or more years of continuous service and who, during such period of continuous service renders compensated service on not less than one hundred ten (110) days (133 days in the years 1950-1959 inclusive, 151 days in 1949 and 160 days in each of such years prior to 1949) in each of two (2) of such years, not necessarily consecutive.

(ART. III - VACATIONS - Section 1(b) - 2/25/71 Agreement)

(c) Effective with the calendar year 1982, an annual vacation of fifteen (15) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred (100) days during the preceding calendar year and who has eight (8) or more years of continuous service and who, during such period of continuous service renders compensated service on not less than one hundred (100) days (133 days in the years 1950-1959 inclusive, 151 days in 1949 and 160 days in each of such years prior to 1949) in each of eight (8) of such years, not necessarily consecutive.

(ART. III - VACATIONS - Section 1(c) - 12/11/81 Agreement)

(d) Effective with the calendar year 1982, an annual vacation of twenty (20) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred (100) days during the preceding calendar year and who has seventeen (17) or more years of continuous service and who, during such period of continuous service renders compensated service on not less than one hundred (100) days (133 days in the years 1950-1959 inclusive, 151 days in 1949 and 160 days in each of such years prior to 1949) in each of seventeen (17) of such years, not necessarily consecutive.

(ART. III - VACATIONS - Section 1(d) - 12/11/81 Agreement)

50

CONFIDENTIAL
UP-AVNA-002282

(e)     Effective with the calendar year 1973, an annual vacation of twenty-five (25) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred (100 days during the preceding calendar year and who has twenty-five (25) or more years of continuous service and who, during such period of continuous service renders compensated on not less than one hundred (100) days (133 days in the years 1950-1959 inclusive, 151 days in 1949 and 160 days in each of such years prior to 1949) in each of twenty-five (25) of such years, not necessarily consecutive.

(ART. III - VACATIONS - Section 1(e) - 2/25/71 Agreement)

(f)     Paragraphs (a), (b), (c), (d) and (e) hereof shall be construed to grant to weekly and monthly rated employees, whose rates contemplate more than five days of service each week, vacations of one, two, three, four or five work weeks.

(ART. III - VACATIONS - Section 1(f) - 2/25/71 Agreement)

(g)     Service rendered under agreement between a carrier and one or more of the Non-Operating Organizations parties to the General Agreement of August 21, 1954, or to the General Agreement of August 19, 1960, shall be counted in computing days of compensated service and years of continuous service for vacation qualifying purposes under this Agreement.

(ART. III - VACATIONS - Section 1(g) - 2/25/71 Agreement)

(h)     Calendar days in each current qualifying year on which an employee renders no service because of his own sickness or because of his own injury shall be included in computing days of compensated service and years of continuous service for vacation qualifying purposes on the basis of a maximum of ten (10) such days for an employee with less than three (3) years of service; a maximum of twenty (20) such days for an employee with three (3) but less than fifteen (15) years of service; and a maximum of thirty (30) such days for an employee with fifteen (15) or more years of service with the employing carrier.

(ART. III - VACATIONS- Section 1(h) - 2/25/71 Agreement)

(i)     In instances where employees who have become members of the Armed Forces of the United States return to the service of the employing carrier in accordance with the Military Selective Service Act of 1967, as amended, the time spent by such employees in the Armed Forces subsequent to their employment by the employing carrier will be credited as qualifying service in determining the length of vacations for which they may qualify upon their return to the service of the employing carrier.

(ART. III - VACATIONS - Section 1(i) - 2/25/71 Agreement)

51

CONFIDENTIAL
UP-AV/NA-002283

(j) [Effective January 1, 1973,] in instances where an employee who has become a member of the Armed Forces of the United States returns to the service of the employing carrier in accordance with the Military Selective Service Act of 1967, as amended, and in the calendar year preceding his return to railroad service had rendered compensated service on fewer days than are required to qualify for a vacation in the calendar year of his return to railroad service, but could qualify for a vacation in the year of his return to railroad service if he had combined for qualifying purposes days on which he was in railroad service in such preceding calendar year with days in such year on which he was in the Armed Forces, he will be granted, in the calendar year of his return to railroad service, a vacation of such length as he could so qualify for under paragraphs (a), (b), (c), (d) or (e) and (i) hereof.

(ART. III - VACATIONS - Section 1(j) - 2/25/71 Agreement)

(k) [Effective January 1, 1973,] in instances where an employee who has become a member of the Armed Forces of the United States returns to the service of the employing carrier in accordance with the Military Selective Service Act of 1967, as amended, and in the calendar year of his return to railroad service renders compensated service on fewer days than are required to qualify for a vacation in the following calendar year, but could qualify for a vacation in such following calendar year if he had combined for qualifying purposes days on which he was in railroad service in the year of his return with days in such year on which he was in the Armed Forces, he will be granted, in such following calendar year, a vacation of such length as he could so qualify for under paragraphs (a), (b), (c), (d) or (e) and (i) hereof.

(ART. III - VACATIONS - Section 1(k) - 2/25/71 Agreement)

(L) An employee who is laid off and has no seniority date and no rights to accumulate seniority, who renders compensated service on not less than one hundred twenty (120) days in a calendar year and who returns to service in the following year for the same carrier will be granted the vacation in the year of his return. In the event such an employee does not return to service in the following year for the same carrier he will be compensated in lieu of the vacation he has qualified for provided he files written request therefor to his employing officer, a copy of such request to be furnished to his local or general chairman.

(ART. III - VACATIONS - Section 1(L) - 2/25/71 Agreement)

2. Insofar as applicable to the employees covered by this agreement, Article 2 of the Vacation Agreement of December 17, 1941, as amended is hereby cancelled.

(ART. II - VACATIONS - Section 2 - 12/28/67 BRAC Agreement and
ART. III - VACATIONS - Section 2 - 6/24/68 T-CEU Agreement)

3. The terms of this agreement shall not be construed to deprive any employee of such additional vacation days as he may be entitled to receive under any existing rule, understanding or custom, which additional vacation days shall be accorded under and in accordance with the terms of such existing rule, understanding or custom.

(Section 3 - 12/17/41 Agreement)

52

CONFIDENTIAL
UP-AVNA-002284

An employee's vacation period will not be extended by reason of any of the eight recognized holidays (New Year's Day, Washington's Birthday, Good Friday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas) or any day which by agreement has been substituted or is observed in place of any of the eight holidays enumerated above, any holiday which by local agreement has been substituted therefor, falling within his vacation period.

(ART. III - VACATIONS - Section 3 - 2/25/71 Agreement)

Such Section 3 was amended, effective January 1, 1973, to change the reference to "eight recognized holidays" to "nine recognized holidays" and add Veterans Day to the holidays named; was again amended effective January 1, 1976 to change the reference to the designated number of "recognized holidays" to "ten recognized holidays" and add Christmas Eve (the day before Christmas is observed) to the holidays named.

Finally, Section 3 is amended effective January 1, 1983, to change the reference to the designated number of "recognized holidays" to "eleven recognized holidays" and add the day after Thanksgiving Day and substitute New Year's Eve (the day before New Year's Day is observed) for Veterans Day. The "recognized holidays" will be:  New Year's Day, Washington's Birthday, Good Friday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, the day after Thanksgiving Day, Christmas Eve (the day before Christmas is observed), Christmas and New Year's Eve (the day before New Year's Day is observed).

4.    (a)    Vacations may be taken from January 1st to December 31st and due regard consistent with requirements of service shall be given to the desires and preferences of the employees in seniority order when fixing the dates for their vacations.

The local committee of each organization signature hereto and the representatives of the Carrier will cooperate in assigning vacation dates.

(b)    The Management may upon reasonable notice (of thirty (30) days or more, if possible, but in no event less than fifteen (15) days) require all or any number of employees in any plant, operation, or facility, who are entitled to vacations to take vacations at the same time.

The local committee of each organization affected signatory hereto and the proper representative of the carrier will cooperate in the assignment of remaining forces.

(Section 4(a) and (b) - 12/17/41 Agreement)

5.    Each employee who is entitled to vacation shall take same at the time assigned, and, while it is intended that the vacation date designated will be adhered to so far as practicable, the management shall have the right to defer same provided the employee so affected is given as much advance notice as possible; not less than ten (10) days' notice shall be given except when emergency conditions prevent.  If it becomes necessary to advance the designated date, at least thirty (30) days' notice will given affected employee.

If a carrier finds that it cannot release an employee for a vacation during the calendar year because of the requirements of the service, then such employee shall be paid in lieu of the vacation the allowance hereinafter provided.

(Section 5 - 12/17/41 Agreement)

53

CONFIDENTIAL                                                             UP-AVINA-002285

Such employee shall be paid the time and one-half rate for work performed during his vacation period in addition to his regular vacation pay.

> NOTE: This provision does not supersede provisions of the individual collective agreements that require payment of double time under specified conditions.

(ART. I - VACATIONS - Section 4 - 8/21/54 Agreement)

6. The carriers will provide vacation relief workers but the vacation system shall not be used as a device to make unnecessary jobs for other workers. Where a vacation relief worker is not needed in a given instance and if failure to provide a vacation relief worker does not burden those employees remaining on the job, or burden the employee after his return from vacation, the carrier shall not be required to provide such relief worker.

(Section 6 - 12/17/41 Agreement)

7. Allowances for each day for which an employee is entitled to a vacation with pay will be calculated on the following basis:

(a) An employee having a regular assignment will be paid while on vacation the daily compensation paid by the carrier for such assignment.

(b) An employee paid a daily rate to cover all services rendered, including overtime, shall have no deduction made from his established daily rate on account of vacation allowances made pursuant to this agreement.

(c) An employee paid a weekly or monthly rate shall have no deduction made from his compensation on account of vacation allowances made pursuant to this agreement.

(d) An employee working on a piece-work or tonnage basis will be paid on the basis of the average earnings per day for the last two semi-monthly periods preceding the vacation, during which two periods such employee worked on as many as sixteen (16) different days.

(e) An employee not covered by paragraphs (a), (b), (c), or (d) of this section will be paid on the basis of the average daily straight time compensation earned in the last pay period preceding the vacation during which he performed service.

(Section 7 - 12/17/41 Agreement)

8. The vacation provided for in this Agreement shall be considered to have been earned when the employee has qualified under Article 1 hereof. If an employee's employment status is terminated for any reason whatsoever, including but not limited to retirement, resignation, discharge, non-compliance with a union-shop agreement, or failure to return after furlough he shall at the time of such termination be granted full vacation pay earned up to the time he leaves the service including pay for vacation earned in the preceding year or years and not yet granted, and the vacation for the succeeding year if the employee has qualified therefor under Article 1. If an employee thus entitled to vacation or vacation pay shall die the vacation pay earned and not received shall be paid to such beneficiary as may have been designated, or in the absence of such designation, the surviving spouse or children or his estate, in that order of preference.

(ART. IV - VACATIONS - Section 2 - 8/19/60 Agreement)

54

CONFIDENTIAL

UP-AVINA-002286

9.    Vacations shall not be accumulated or carried over from one vacation year to another.

(Section 9 - 12/17/41 Agreement)

10.    (a)    An employee designated to fill an assignment of another employee on vacation will be paid the rate of such assignment or the rate of his own assignment, whichever is the greater; provided that if the assignment is filled by a regularly assigned vacation relief employee, such employee shall receive the rate of the relief position.  If an employee receiving graded rates, based upon length of service and experience, is designated to fill an assignment of another employee in the same occupational classification receiving such graded rates who is on vacation, the rate of the relieving employee will be paid.

(b)    Where work of vacationing employees is distributed among two or more employees, such employees will be paid their own respective rates.  However, not more than the equivalent of twenty-five (25) percent of the work load of a given vacationing employee can be distributed among fellow employees without the hiring of a relief worker unless a larger distribution of the work load is agreed to by the proper local union committee or official.

(c)    No employee shall be paid less than his own normal compensation for the hours of his own assignment because of vacations to other employees.

(Section 10 - 12/17/41 Agreement)

11.    While the intention of this agreement is that the vacation period will be continuous, the vacation may, at the request of an employee, be given in installments if the management consents thereto.

(Section 11 - 12/17/41 Agreement)

12.    (a)    Except as otherwise provided in this agreement a carrier shall not be required to assume greater expense because of granting a vacation than would be incurred if an employee were not granted a vacation and was paid in lieu therefor under the provision hereof.  However, if a relief worker necessarily is put to substantial extra expense over and above that which the regular employee on vacation would incur if he had remained on the job, the relief worker shall be compensated in accordance with existing regular relief rules.

(b)    As employees exercising their vacation privileges will be compensated under this agreement during their absence on vacation, retaining their other rights as if they had remained at work, such absences from duty will not constitute "vacancies" in their positions under any agreement.  When the position of a vacationing employee is to be filled and regular relief employee is not utilized, effort will be made to observe the principle of seniority.

(c)    A person other than a regularly assigned relief employee temporarily hired solely for vacation relief purposes will not establish seniority rights unless so used more than 60 days in a calendar year.  If a person so hired under the terms hereof acquires seniority rights, such rights will date from the day of original entry into service unless otherwise provided in existing agreements.

(Section 12 - 12/17/41 Agreement)

55

CONFIDENTIAL
UP-AVINA 002287

13.     The parties hereto having in mind conditions which exist or may arise on individual carriers in making provisions for vacations with pay agree that the duly authorized representative of the employees, who are parties to one agreement, and the proper officer of the carrier may make changes in the working rules or enter into additional written understandings to implement the purposes of this agreement, provided that such changes or understanding shall not be inconsistent with this agreement.

(Section 13 - 12/17/41 Agreement)

14.     Any dispute or controversy arising out of the interpretation or application of any of the provisions of this agreement shall be referred for decision to a committee, the carrier members of which shall be the Carriers' Conference Committees signatory hereto, or their successors; and the employee members of which shall be the Chief Executives of the Fourteen Organizations, or their representatives, or their successors.  Interpretations or applications agreed upon by the carrier members and employee members of such committee shall be final and binding upon the parties to such dispute or controversy.

This section is not intended by the parties as a waiver of any of their rights provided in the Railway Labor Act, as amended, in the event committee provided in this section fails to dispose of any dispute or controversy.

(Section 14 - 12/17/41 Agreement)

15.     Except as otherwise provided herein this agreement shall be effective as of January 21, 1973, and shall be incorporated in existing agreements as a supplement thereto and shall be in full force and effect for a period of one (1) year from January 1, 1973, and continue in effect thereafter, subject to not less than seven (7) months' notice in writing (which notice may be served in 1973 or in any subsequent year) by any carrier or organization party hereto, of desire to change this agreement as of the end of the year in which the notice is served.  Such notices shall specify the changes desired and the recipient of such notice shall then have a period of thirty (30) days from the date of such receipt of such notice within which to serve notice specifying changes which it or they desire to make.  Thereupon such proposals of the respective parties shall thereafter be negotiated and progressed concurrently to a conclusion.

(ART. III - VACATIONS - Section 2 - 2/25/71 Agreement)

Except to the extent that articles of the Vacation Agreement of December 17, 1941 are changed by this Agreement, the said agreement and the interpretations thereof and of the Supplemental Agreement of February 24, 1945, as amended by the parties, dated June 10, 1942, July 20, 1942 and July 18, 1945 and by Referee Morse in his award of November 12, 1942, shall remain in full force and effect.

In Sections 1 and 2 of this Agreement certain words and phrases which appear in the Vacation Agreement of December 17, 1941, and in the Supplemental Agreement of February 23, 1945, are used.  The said interpretations which defined such words and phrases referred to above as they appear in said Agreements shall apply in construing them as they appear in Sections 1 and 2 hereof.

(ART. I - VACATIONS - Section 6 - 8/21/54 Agreement)

56

CONFIDENTIAL
UP-AVJNA-002288

BRAC-HOL.
Synthesis

Synthesis

of

Nonoperating (BRAC)

National Holiday Provisions

Prepared Jointly by the
Brotherhood of Railway, Airline and Steamship Clerks,
        Freight Handlers, Express and Station Employes
and the
National Railway Labor Conference
            (Revised 1982)

CONFIDENTIAL        UP-AVINA 002289

## NONOPERATING (BRAC) NATIONAL
## HOLIDAY PROVISIONS

The following represents a synthesis in one document, for the convenience of the parties, of the current Holiday provisions of the National Agreement of August 21, 1954 and amendments thereto provided in the National Agreements of August 19, 1960, November 20, 1964, December 28, 1967, June 24, 1968, February 25, 1971, June 16, 1976 implementing Article VIII - Holidays of the July 23, 1975 National Agreement and December 11, 1981, with appropriate source identifications.

This is intended as a guide and is not to be construed as constituting a separate agreement between the parties. If any dispute arises as to the proper interpretation or application of any provision, the terms of the appropriate agreement shall govern.

- - - - - - - -

Section 1. Subject to the qualifying requirements contained in Section 3 hereof, and to the conditions hereinafter provided, each hourly and daily rated employee shall receive eight hours' pay at the pro rata hourly rate for each of the following enumerated holidays:

| | |
|---|---|
| New Year's Day | Labor Day |
| Washington's Birthday | Veterans Day |
| Good Friday | Thanksgiving Day |
| Memorial Day | Christmas Eve (the day before Christmas is observed) |
| Fourth of July | Christmas |

(ART. II - HOLIDAYS - Section 2(a), 2/25/71 Agreement and
Section 2, 6/16/76 Implementing Agreement)

Effective January 1, 1983, Article II of the Agreement of August 21, 1954, as amended, insofar as applicable to the employees covered by this Agreement, is hereby further amended to the following respects:

(a)     Add the day after Thanksgiving Day and substitute New Year's Eve (the day before New Year's Day is observed) for Veterans Day.

(b)     The holiday pay qualifications for Christmas Eve - Christmas shall also be applicable to the Thanksgiving Day - day after Thanksgiving Day and the New Year's Eve - New Year's Day holidays.

(c)     In addition to their established monthly compensation, employees performing service on the day after Thanksgiving Day on a monthly rated position (the rate of which is predicated on an all-service performed basis) shall receive eight hours pay at the equivalent straight time rate, or payment as required by any local rule, whichever is greater.

58

(d)     A monthly rated employee occupying a 5-day assignment on a position with Friday as an assigned rest day also shall receive eight hours' pay at the equivalent straight time rate for the day after Thanksgiving Day, provided compensation paid such employee by the carrier is credited to the work days immediately preceding Thanksgiving Day and immediately following the day after Thanksgiving Day.

(e)     Except as specifically provided in paragraph (c) above, existing rules and practices thereunder governing whether an employee works on a holiday and the payment for work performed on a holiday are extended to apply to the day after Thanksgiving Day and New Year's Eve (the day before New year's Day is observed) in the same manner as to other holidays listed or referred to therein.

(ART. IV - HOLIDAYS - 12/11/81 Agreement)

(a)     Holiday pay for regularly assigned employees shall be at the pro rata rate of the position to which assigned.

(b)     For other than regularly assigned employees, if the holiday falls on a day on which he would otherwise be assigned to work, he shall, if consistent with the requirements of the service, be given the day off and receive eight hours' pay at the pro rata rate of the position which he otherwise would have worked.  If the holiday falls on a day other than a day on which he otherwise would have worked, he shall receive eight hours' pay at the pro rata hourly rate of the position on which compensation last accrued to him prior to the holiday.

(c)     Subject to the applicable qualifying requirements in Section 3 hereof, other than regularly assigned employees shall be eligible for the paid holiday or pay in lieu thereof provided for in paragraph (b) above, provided (1) compensation for service paid him by the carrier is credited to 11 or more of the 30 calendar days immediately preceding the holiday and (2) he has had a seniority date for at least 60 calendar days or has 60 calendar days of continuous active service preceding the holiday beginning with the first day of compensated service, provided employment was not terminated prior to the holiday by resignation, for cause, retirement, death, non-compliance with a union shop agreement, or disapproval of application for employment.

(d)     The provisions of this Section and Section 3 hereof applicable to other than regularly assigned employees are not intended to abrogate or supersede more favorable rules and practices existing on certain carriers under which other than regularly assigned employees are being granted paid holidays.

NOTE: This rule does not disturb agreements or practices<br>now in effect under which any other day is substituted<br>or observed in place of any of the above enumerated<br>holidays.

(ART. III - HOLIDAYS - Section 1, 12/28/67 Agreement and<br>6/24/68 Agreement)

Section 2(a).  Monthly rates, the hourly rates of which are predicated upon 169-1/3 hours, shall be adjusted by adding the equivalent of 56 pro rata hours to the annual compensation (the monthly rate multiplied by 12) and this sum shall be divided by 12 in order to establish a new monthly rate.   The hourly factor will thereafter be 74 and overtime rates will be computed accordingly.

59

CONFIDENTIAL
UP-AVJNA-002291

Weekly rates that do not include holiday compensation shall receive a corresponding adjustment.

Section 2(b). All other monthly rates of pay shall be adjusted by adding the equivalent of 28 pro rata hours to the annual compensation (the monthly rate multiplied by 12) and this sum shall be divided by 12 in order to establish a new monthly rate. The sum of presently existing hours per annum plus 28 divided by 12 will establish a new hourly factor and overtime rates will be computed accordingly.

Weekly rates not included in Section 2(a) shall receive a corresponding adjustment.

(ART. II - HOLIDAYS - Section 2(d) of 2/25/71 Agreement)

Effective January 1, 1976, after application of the cost-of-living adjustment effective that date, the monthly rates of monthly rated employees shall be adjusted by adding the equivalent of 8 pro rata hours' pay to their annual compensation (the rate multiplied by 12) and this sum shall be divided by 12 in order to establish a new monthly rate. That portion of such 8 pro rata hours' pay which derives from the cost-of-living allowance will not become part of basic rates of pay except as provided in Article II, Section 1(d) of the Agreement of July 23, 1975. The sum of presently existing hours per annum plus 8, divided by 12, will establish a new hourly factor for purposes of applying cents-per-hour adjustments in such monthly rates of pay and computing overtime rates.

A corresponding adjustment shall be made in weekly rates and hourly factors derived therefrom.

(Section 5, 6/16/76 Implementing Agreement)

The hourly factor as shown in Section 2(a) above, was as a result of the addition of the birthday holiday (later Good Friday) increased, effective January 1, 1965, to 174-2/3; as a result of the addition of Veterans Day as a holiday, effective January 1, 1973, increased to 175-1/3; and as a result of the addition of Christmas Eve (the day before Christmas is observed) as a holiday, effective January 1, 1976, increased to 176 hours.

Section 3. A regularly assigned employee shall qualify for the holiday pay provided in Section 1 hereof if compensation paid him by the carrier is credited to the workdays immediately preceding and following such holiday or if the employee is not assigned to work but is available for service on such days. If the holiday falls on the last day of a regularly assigned employee's workweek, the first workday following his rest days shall be considered the workday immediately following. If the holiday falls on the first workday of his workweek, the last workday of the preceding workweek shall be considered the workday immediately preceding the holiday.

60

CONFIDENTIAL
UP-AVINA 002292

Except as provided in the following paragraph, all others for whom holiday pay is provided in Section 1 hereof shall qualify for such holiday pay if on the day preceding and the day following the holiday they satisfy one or the other of the following conditions:

(i)      Compensation for service paid by the carrier is credited; or

(ii)     Such employee is available for service.

NOTE: "Available" as used in subsection (ii) above is interpreted by the parties to mean that an employee is available unless he lays off his own accord or does not respond to a call, pursuant to the rules of the applicable agreement, for service.

For the purposes of Section 1, other than regularly assigned employees who are relieving regularly assigned employees on the same assignment on both the work day preceding and the work day following the holiday will have the workweek of the incumbent of the assigned position and will be subject to the same qualifying requirements respecting service and availability on the work days preceding and following the holiday as apply to the employee whom he is relieving.

Compensation paid under sick-leave rules or practices will not be considered as compensation for purposes of this rule.

(ART. III - HOLIDAYS - Section 2, 12/28/67 Agreement and 6/24/68 Agreement)

An employee who meets all other qualifying requirements will qualify for holiday pay for both Christmas Eve and Christmas Day if on the "workday" or the "day," as the case may be, immediately preceding the Christmas Eve holiday he fulfills the qualifying requirements applicable to the "workday" or the "day" before the holiday and on the "workday" or the "day," as the case may be, immediately following the Christmas Day holiday he fulfills the qualifying requirements applicable to the "workday" or the "day" after the holiday.

An employee who does not qualify for holiday pay for both Christmas Eve and Christmas Day may qualify for holiday pay for either Christmas Eve and Christmas Day under the provisions applicable to holidays generally.

(Section 4, 6/16/76 Implementing Agreement)

Section 4.  Provisions in existing agreements with respect to holidays in excess of the ten holidays referred to in Section 1 hereof shall continue to be applied without change.

(Section 3(b), 6/16/76 Implementing Agreement)

Section 5(a).  Existing rules and practices thereunder governing whether an employee works on a holiday and the payment for work performed on a holiday are extended to apply to Good Friday, Veterans Day and to the Christmas Eve (the day before Christmas is observed) in the same manner as to other holidays listed or referred to therein.

(Section 3(a), 6/16/76 Implementing Agreement)

61

CONFIDENTIAL

UP-AVINA-002293

Section 5(b).  All rules, regulations or practices which provide that when a regularly assigned employee has an assigned relief day other than Sunday and one of the holidays specified therein falls on such relief day, the following assigned day will be considered his holiday, are hereby eliminated.

(ART. II - HOLIDAYS - Section 1(c) of 2/25/71 Agreement)

Section 5(c).  Under no circumstances will an employee be allowed, in addition to his holiday pay, more than one time and one-half payment for service performed by him on a holiday which is also a work day, a rest day, and/or a vacation day.

> NOTE: This provision does not supersede provisions of the
> individual collective agreements that require payment
> of double time for holidays under specified terms.

Section 5(d).  Except as provided in this Section 5, existing rules and practices thereunder governing whether an employee works on a holiday and the payment for work performed on a holiday are not changed hereby.

(ART. III - HOLIDAYS - Section 4 of 12/28/67 Agreement and
6/24/68 Agreement)

Section 6.  Article II, Section 6 of the Agreement of August 21, 1954, which was added by the Agreement of November 20, 1964, covering the birthday holiday, is eliminated.  However, the adjustment in monthly rates of monthly rated employees which was made effective January 1, 1965, pursuant to Article II of the Agreement of November 20, 1964, by adding the equivalent of 8 pro rata hours to their annual compensation (the monthly rate multiplied by 12) and dividing this sum by 12 in order to establish a new monthly rate, continues in effect.

(ART. II - HOLIDAYS - Section 1(d), 2/25/71 Agreement)

Section 7.  When any of the ten recognized holidays enumerated in Section 1 of this Article II, or any day which by agreement, or by law or proclamation of the State or Nation, has been substituted or is observed in place of any of such holidays, falls during an hourly or daily rated employee's vacation period, he shall, in addition to his vacation compensation, receive the holiday pay provided for therein provided he meets the qualification requirements specified.  The "workdays" and "days" immediately preceding and following the vacation period shall be considered the "workdays" and "days" preceding and following the holiday for such qualification purposes.

(ART. II - HOLIDAYS - Sections 1(e) and 2(c), 2/25/71 Agreement and
Section 3(b), 6/16/76 Implementing Agreement)

62

CONFIDENTIAL

UP-AVJNA-002294

## UNION SHOP AGREEMENT

This Agreement made this 7th day of March, 1953, by and between the Union Pacific Railroad Company and the employes thereof represented by the Railway Labor Organization signatory hereto, through the Employes' National Conference Committee, Seventeen Cooperating Railway Labor Organizations, witnesseth:

IT IS AGREED:

Section 1.

In accordance with and subject to the terms and conditions hereinafter set forth, all employes of this carrier now or hereafter subject to the rules and working conditions agreements between the parties hereto, except as hereinafter provided, shall, as a condition of their continued employment subject to such agreements, become members of the organization party to this agreement representing their craft or class within sixty calendar days of the date they first perform compensated service as such employes after the effective date of this agreement, and thereafter shall maintain membership in such organization; except that such membership shall not be required of any individual until he has performed compensated service on thirty days within a period of twelve consecutive calendar months. Nothing in this agreement shall alter, enlarge or otherwise change coverage of the present or future rules and working conditions agreement.

Section 2.

This agreement shall not apply to employes while occupying positions which are excepted from the bulletining and displacement rules of the individual agreements, but this provision shall not include employes who are subordinate to the report to other employes who are covered by this agreement. However, such excepted employes are free to be members of the organization at their option.

Section 3.

(a)     Employes who retain seniority under the Rules and Working Conditions Agreements governing their class or craft and who are regularly assigned or transferred to full time employment not covered by such agreements, or who, for a period of thirty days or more, are (1) furloughed on account of force reduction, or (2) on leave of absence, or (3) absent on account of sickness or disability, will not be required to maintain membership as provided in Section 1 of this agreement so long as they remain in such other employment, or furloughed or absent as herein provided, but they may do so at their option. Should such employes return to any service covered by the said Rules and Working Conditions Agreements and continue therein thirty calendar days or more, irrespective of the number of days actually worked during that period, they shall, as a condition of their continued employment subject to such agreements, be required to become and remain members of the organization representing their class or craft within thirty-five calendar days from date of their return to such service.

63

(b)     The seniority status and rights of employes furloughed to serve in the Armed Forces or granted leaves of absence to engage in studies under an educational aid program sponsored by the federal government or a state government for the benefit of ex-service men shall not be terminated by reason of any of the provisions of this agreement but such employes shall, upon resumption of employment, be considered as new employes for the purposes of applying this agreement.

(c)     Employes who retain seniority under the rules and working conditions agreements governing their class or craft and who, for reasons other than those specified in subsections (a) and (b) of this section, are not in service covered by such agreements, or leave such service, will not be required to maintain membership as provided in Section 1 of this agreement so long as they are not in service covered by such agreements, but they may do so at their option.  Should such employes return to any service covered by the said rules and working conditions agreements they shall, as a condition of their continued employment, be required, from the date of return to such service, to become and remain members in the organization representing their class or craft.

(d)     Employes who retain seniority under the rules and working conditions agreements of their class or craft, who are members of an organization signatory hereto representing that class or craft and who in accordance with the rules and working conditions agreement of that class or craft temporarily perform work in another class of service shall not be required to be members of another organization party hereto whose agreement covers the other class of service until the date the employes hold regularly assigned positions within the scope of the agreement covering such other class of service.

Section 4.

Nothing in this agreement shall require an employe to become or remain a member of the organization if such membership is not available to such employe upon the same terms and conditions as are generally applicable to any other member, or if the membership of such employe is denied or terminated for any reason other than the failure of the employe to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership.  For purposes of this agreement, dues, fees, and assessments, shall be deemed to be "uniformly required" if they are required of all employes in the same status at the same time in the same organizational unit.

Section 5.

(a)     Each employe covered by the provisions of this agreement shall be considered by a carrier to have met the requirements of the agreement unless and until such carrier is advised to the contrary in writing by the organization.  The organization will notify the carrier in writing by Registered Mail, Return Receipt Requested, or by personal delivery evidenced by receipt, of any employe who it is alleged has failed to comply with the terms of this agreement and who the organization therefore claims is not entitled to continue in employment subject to the Rules and Working Conditions Agreement.  The form of notice to be used shall be agreed upon by the individual railroad and the organizations involved and the form shall make provision for specifying the reasons for the allegation of non-compliance.  Upon receipt of such notice, the carrier will, within ten calendar days of such receipt, so notify the employe concerned in writing by Registered Mail, Return Receipt Requested, or by personal delivery evidenced by receipt.  Copy of such notice to the employe shall be given the organization.  An employe so notified who disputes the fact that he has failed to comply with the terms of this agreement, shall within a period of ten calendar days from the date of receipt of     such     notice,     request     the     carrier     in     writing     by     Registered     Mail,     Return

64

CONFIDENTIAL
UP-AVINA-002296

Receipt Requested, or by personal delivery evidenced by receipt, to accord him a hearing. Upon receipt of such request the carrier shall set a date for hearing which shall be held within ten calendar days of the date of receipt of request therefor. Notice of the date set for hearing shall be promptly given the employe in writing with copy to the organization, Registered Mail, Return Receipt requested, or by personal delivery evidenced by receipt. A representative of the organization shall attend and participate in the hearing. The receipt by the carrier of a request for a hearing shall operate to stay action on the termination of employment until the hearing is held and the decision of the carrier is rendered.

In the event the employe concerned does not request a hearing as provided herein, the carrier shall proceed to terminate his seniority and employment under the Rules and Working Conditions Agreement not later than thirty calendar days from receipt of the above described notice from the organization, unless the carrier and the organization agree otherwise in writing.

(b)     The carrier shall determine on the basis of the evidence produced at the hearing whether or not the employe has complied with the terms of this agreement and shall render a decision within twenty calendar days from the date that the hearing is closed, and the employe and the organization shall be promptly advised thereof in writing by Registered Mail, Return Receipt Requested.

If the decision is that the employe has not complied with the terms of this agreement, his seniority and employment under the Rules and Working Conditions Agreement shall be terminated within twenty calendar days of the date of said decision except as hereinafter provided or unless the carrier and the organization agree otherwise in writing.

If the decision is not satisfactory to the employe or to the organization it may be appealed in writing, by Registered Mail, Return Receipt Requested, directly to the highest officer of the carrier designated to handle appeals under this agreement. Such appeals must be received by such officer within ten calendar days of the date of the decision appealed from and shall operate to stay action on the termination of seniority and employment, until the decision on appeal is rendered. The carrier shall promptly notify the other party in writing of any such appeal, by Registered Mail, Return Receipt Requested. The decision on such appeal shall be rendered within twenty calendar days of the date the notice of appeal is received, and the employe and the organization shall be promptly advised thereof in writing by Registered Mail, Return Receipt Requested.

If the decision on such appeal is that the employe has not complied with the terms of this agreement, his seniority and employment under the Rules and Working Conditions Agreement shall be terminated within twenty calendar days of the date of said decision unless selection of a neutral is requested as provided below, or unless the carrier and the organization agree otherwise in writing. The decision on appeal shall be final and binding unless within ten calendar days from the date of the decision the organization or the employe involved requests the selection of a neutral person to decide the dispute as provided in Section 5(c) below. Any request for selection of a neutral person as provided in Section 5(c) below shall operate to stay action on the termination of seniority and employment until not more than ten calendar days from the date decision is rendered by the neutral person.

65

CONFIDENTIAL

UP-AVINA-002297

(c)     If within ten calendar days after the date of a decision on appeal by the highest officer of the carrier designated to handle appeals under this agreement the organization or the employe involved requests such highest officer in writing by Registered Mail, Return Receipt Requested, that a neutral be appointed to decide the dispute, a neutral person to act as sole arbitrator to decide the dispute shall be selected by the highest officer of the carrier designated to handle appeals under this agreement or his designated representative, the Chief Executive of the organization or his designated representative, and the employe involved or his representative.  If they are unable to agree upon the selection of a neutral person any one of them may request the Chairman of the National Mediation Board in writing to appoint such neutral.  The carrier, the organization and the employe involved shall have the right to appear and present evidence at a hearing before such neutral arbitrator.  Any decision by such neutral arbitrator shall be made within thirty calendar days from the date of receipt of the request for his appointment and shall be final and binding upon the parties.  The carrier, the employe, and the organization shall be promptly advised thereof in writing by Registered Mail, Return Receipt Requested.  If the position of the employe is sustained, the fees, salary and expenses of the neutral arbitrator shall be borne in equal shares by the carrier and the organization; if the employe's position is not sustained, such fees, salary and expenses shall be borne in equal shares by the carrier, the organization and the employe.

(d)     The time periods specified in this section may be extended in individual cases by written agreement between the carrier and the organization.

(e)     Provisions of investigation and discipline rules contained in the Rules and Working Conditions Agreement between a carrier and the organization will not apply to cases arising under this agreement.

(f)     The General Chairman of the organization shall notify the carrier in writing of the title(s) and address(es) of its representatives who are authorized to serve and receive the notices described in this agreement.  The carrier shall notify the General Chairman of the organization in writing of the titles(s) and address(es) of its representatives who are authorized to receive and serve the notices described in this agreement.

(g)     In computing the time periods specified in this agreement, the date on which a notice is received or decision rendered shall not be counted.

Section 6.

Other provisions of this agreement to the contrary notwithstanding, the Carrier shall not be required to terminate the employment of an employe until such time as a qualified replacement is available.  The carrier may not, however, retain such employe in service under the provisions of this section for a period in excess of sixty calendar days from the date of the last decision rendered under the provisions of Section 5, or ninety calendar days from date of receipt of notice from the organization in cases where the employe does not request a hearing.  The employe whose employment is extended under the provisions of this section shall not, during such extension, retain or acquire any seniority rights.  The position will be advertised as vacant under the bulletining rules of the respective agreements but the employe may remain on the position he held at the time of the last decision, or at the date of receipt of notice where no hearing is requested pending the assignment of the successful applicant, unless displaced or unless the position is abolished.  The above periods may be extended by agreement between the carrier and the organization involved.

66

CONFIDENTIAL

UP-AVINA-002298

Section 7.

An employe whose seniority and employment under the Rules and Working Conditions Agreement is terminated pursuant to the provisions of this agreement or whose employment is extended under Section 6 shall have no time or money claims by reason thereof.

If the final determination under Section 5 of this agreement is that an employe's seniority and employment in a craft or class shall be terminated, no liability against the carrier in favor of the organization or other employes based upon an alleged violation, misapplication or non-compliance with any part of this agreement shall arise or accrue during the period up to the expiration of the 60 or 90 day periods specified in Section 6, or while such determination may be stayed by a court, or while a discharged employe may be restored to service pursuant to judicial determination. During such periods, no provision of any other agreement between the parties hereto shall be used as the basis for a grievance or time or money claim by or on behalf of any employe against the carrier predicated upon any action taken by the carrier in applying or complying with this agreement or upon an alleged violation, misapplication or non-compliance with any provision of this agreement. If the final determination under Section 5 of this agreement is that an employe's employment and seniority shall not be terminated, his continuance in service shall give rise to no liability against the carrier in favor of the organization or other employes based upon an alleged violation, misapplication or non-compliance with any part of this agreement.

Section 8.

In the event that seniority and employment under the Rules and Working Conditions Agreement is terminated by the carrier under the provisions of this agreement, and such termination of seniority and employment is subsequently determined to be improper, unlawful, or unenforceable, the organization shall indemnify and save harmless the carrier against any and all liability arising as the result of such improper, unlawful, or unenforceable termination of seniority and employment; provided, however, that this section shall not apply to any case in which the carrier involved is the plaintiff or the moving party in the action in which the aforesaid determination is made or in which case such carrier acts in collusion with any employe; provided further, that the aforementioned liability shall not extend to the carrier in defending suits by employes whose seniority and employment are terminated by the carrier under the provisions of this agreement.

Section 9.

An employe whose employment is terminated as a result of non-compliance with the provisions of this agreement shall be regarded as having terminated his employe relationship for vacation purposes.

Section 10.

(a)    The Carrier party to this agreement shall periodically deduct from the wages of employes subject to this agreement periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership in such organization, and shall pay the amount so deducted to such officer of the organization as the organization shall designate; provided, however, that the requirements of this subsection (a) shall not be effective with respect to any individual employe until he shall have furnished the carrier with a written assignment to the organization of such membership dues, initiation fees and assessments, which assignment shall be revocable in writing after the expiration of one year or upon the termination of this agreement whichever occurs sooner.

67

(b)     The provisions of subsection (a) of this section shall not become effective unless and until the carrier and the organization shall, as a result of further negotiations pursuant to the recommendations of Emergency Board No. 98, agree upon the terms and conditions under which such provisions shall be applied; such agreement to include, but not be restricted to, the means of making said deductions, the amounts to be deducted, the form, procurement and filing of authorization certificates, the frequency of deductions, the priority of said deductions with other deductions now or hereafter authorized, the payment and distributions of amounts withheld and any other matters pertinent thereto.

Section 11.

This agreement shall become effective on the 31st day of March, 1953, and is in full and final settlement of notices served upon the carrier by the organizations, signatory hereto, on or about February 5, 1951.   It shall be construed as a separate agreement between the Union Pacific Railroad and those employes represented by each of the organizations signatory hereto.   This agreement shall remain in effect until modified or changed in accordance with the provisions of the Railway Labor Act, as amended.

Signed at Omaha, Nebraska, this 7th day of March, 1953.

FOR THE CARRIER:

E. J. CONNORS
Vice President

EMPLOYES' NATIONAL CONFERENCE
COMMITTEE, SEVENTEEN COOPERATING,
RAILWAY LABOR ORGANIZATIONS:

G. E. LEIGHTY
Chairman


Railway Employes' Department,
A. F. of L.

MICHAEL FOX
President
International Association of Machinists

EARL MELTON                                     F. W. BURKE
General Vice President                          General Chairman

International Brotherhood of
Boilermakers, Iron Ship Builders
& Helpers of America

68

CONFIDENTIAL
UP-AVINA 002300

CHAS J. MACGOWAN
International President

FLOYD F. RAUBER
General Chairman

International Brotherhood of Black-
smiths, Drop Forgers & Helpers

JOHN PELKOFER
General President

GEORGE F. BARNA
General Chairman

Sheet Metal Workers' International Assn.

C. D. BRUNS
General Vice President

LEO P. GRANT
General Chairman

International Brotherhood of Electrical Workers

J. J. DUFFY
International Vice President

G. O. GRANT
General Chairman

Brotherhood of Railway Carmen of America

IRVIN BARNEY
General President

H. W. HIGGS
General Chairman

International Brotherhood of Firemen,
Oilers, Helpers, Roundhouse and
Railway Shop Laborers

ANTHONY MATZ
President

JOHN CASSELMAN
General Chairman

Brotherhood of Railway & Steamship
Clerks, Freight Handlers, Express
and Station Employes

GEO. M. HARRISON
Grand President

K. J. SALYARDS
General Chairman

J. R. GRAYSON
General Chairman

Brotherhood of Maintenance of Way Employes

69

UP-AVINA

T. C. CARROLL
President

The Order of Railroad Telegraphers

G. E. LEIGHTY
President

Brotherhood of Railroad Signalmen of America

JESSE CLARK
President

Railroad Yardmasters of America

M. G. SCHOCH
President

Hotel and Restaurant Employes
International Alliance and Bartenders
International League of America

HUGO ERNST
General President

C. R. PERRY
General Chairman

G. G. GARD
General Chairman

A. S. HERRERA
General Chairman

A. W. MCLEAN
General Chairman

F. W. BAKER
General Chairman

STEVEN R. AUGUSTON
General Chairman,
D.C.E. U., No. 372

ARTHUR H. REED
General Chairman,
P.O.D.C.W., No. 465

70

CONFIDENTIAL

UP-AVINA_002302

## MEMORANDUM AGREEMENT

It is agreed that in the application of the Union Shop Agreement signed this date in Omaha, Nebraska, that any employe in service on the date of this agreement who is not a member of the union representing his craft or class and will make affidavit he was a member of a bona fide and recognized religious group, on the date of this agreement, having scruples against joining a union will, if he would otherwise be required to join a union under the Union Shop Agreement, be deemed to have met the requirements of the Union Shop Agreement if he agrees to and does pay initiation fees, periodic dues and assessments to the organization representing his craft or class.

Signed at Omaha, Nebraska, this 7th day of March, 1953.

FOR THE CARRIER:

E. J. CONNORS
Vice President

EMPLOYES' NATIONAL CONFERENCE
COMMITTEE, SEVENTEEN COOPERATING,
RAILWAY LABOR ORGANIZATIONS:

G. E. LEIGHTY
Chairman


Railway Employes' Department,
A. F. of L.

MICHAEL FOX
President

International Association of Machinists

EARL MELTON                        F. W. BURKE
General Vice President             General Chairman

International Brotherhood of
Boilermakers, Iron Ship Builders
& Helpers of America

CHAS J. MACGOWAN                   FLOYD F. RAUBER
International President            General Chairman

International Brotherhood of Black-
smiths, Drop Forgers & Helpers

71

UP-AVINA

JOHN PELKOFER
General President

GEORGE F. BARNA
General Chairman

Sheet Metal Workers' International Assn.

C. D. BRUNS
General Vice President

LEO P. GRANT
General Chairman

International Brotherhood of Electrical Workers

J. J. DUFFY
International Vice President

G. O. GRANT
General Chairman

Brotherhood of Railway Carmen of America

IRVIN BARNEY
General President

H. W. HIGGS
General Chairman

International Brotherhood of Firemen,
Oilers, Helpers, Roundhouse and
Railway Shop Laborers

ANTHONY MATZ
President

JOHN CASSELMAN
General Chairman

Brotherhood of Railway & Steamship
Clerks, Freight Handlers, Express
and Station Employes

GEO. M. HARRISON
Grand President

K. J. SALYARDS
General Chairman

J. R. GRAYSON
General Chairman

Brotherhood of Maintenance of Way Employes

T. C. CARROLL
President

C. R. PERRY
General Chairman

72

The Order of Railroad Telegraphers

G. E. LEIGHTY  
President

G. G. GARD  
General Chairman

A. S. HERRERA  
General Chairman

Brotherhood of Railroad Signalmen of America

JESSE CLARK  
President

A. W. MCLEAN  
General Chairman

Railroad Yardmasters of America

M. G. SCHOCH  
President

F. W. BAKER  
General Chairman

Hotel and Restaurant Employes  
International Alliance and Bartenders  
International League of America

HUGO ERNST  
General President

STEVEN R. AUGUSTON  
General Chairman,  
D.C.E. U., No. 372

ARTHUR H. REED  
General Chairman,  
P.O.D.C.W., No. 465

73

CONFIDENTIAL

UP-AVINA-002305





**A G R E E M E N T**
between the
**UNION PACIFIC RAILROAD COMPANY**
and the
**BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS,**
**FREIGHT HANDLERS, EXPRESS AND STATION HELPERS**

DUES DEDUCTION AGREEMENT

In accordance with the provision of Section 10(b) of the Agreement signed by the parties hereto at Omaha, Nebraska on March 7, 1953 and pursuant to Article II (Cost-Free Union Dues Deduction Agreement) of the National Collective Bargaining Agreement, dated April 27, 1973, the following Agreement by and between Union Pacific Railroad Company, hereinafter referred to as the "Carrier" and the employes thereof represented by the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes, hereinafter referred to as the "Organization", is entered into by the parties and shall be made effective October 1, 1973.

IT IS AGREED:

SECTION 1.

(a) Subject to the terms and conditions hereinafter set forth, the Carrier will deduct from the wages of employes, membership dues, initiation fees, and assessments (excluding fines and penalties) as may be uniformly required as a condition of the employes acquiring and/or retaining membership in the Brotherhood upon their written authorization in the form (Individual Authorization Form) agreed upon by the parties hereto, copy of which is attached, designated "Attachment A" and made a part hereof.

(b) The authorization shall, in accordance with its terms, be revocable in writing after the expiration of one year upon thirty (30) calendar days advance notice to the Organization and the Carrier by registered mail or upon termination of this Agreement or upon the termination of the rules and Working Conditions Agreement between the parties hereto, whichever occurs sooner

Note: Currently effective assignment forms need not be re-executed and will continue in effect subject to their terms and conditions.

(c) Revocation of authorization shall be on the form specified in Exhibit B attached hereto and made a part hereof, and both the authorization and revocation of authorization forms shall be reproduced and furnished as necessary by the Organization without cost to the Carrier.

(d) The Organization shall assume the full responsibility for the procurement and proper execution of said forms by employes, and for delivery of said forms to the Carrier. Revocation of authorization forms shall be delivered to the designated carrier officer not later than the 10th day of the month in which the termination of deductions is to become effective.

74

CONFIDENTIAL UP-AVJNA-002306
Case 4:19-cv-00480-RK   Document 70-3   Filed 03/15/21   Page 82 of 196

(e)     The Officer of the Organization designated by the International President shall promptly notify in writing the Officer or Officers designated by the Carrier of any special assessment of changes in amounts of fees or dues; however, the deduction amounts may not be changed more often than once every three months.

<u>SECTION 2</u>.

(a)     Individual authorizations to be effective for a particular month must be in the possession of the designated carrier officer not later than the fifth day of the month in which such deductions are to be made.

(b)     The designated officer of the Organization shall furnish to the Carrier, with copies to appropriate units of the Organization, an initial statement (Attachment C), by lodges, in alphabetical order, certified by him, showing deductions to be made from each such member, such statement to be furnished together with individual authorization forms to cover, not later than the fifth day of the month in which the deductions become effective.  Subsequent monthly deductions will be based on the initial statement, plus a monthly statement (Attachment D) showing additions and/or deletions, furnished in the same manner as the initial statement required hereby. If no changes are reported by the 5th day of the month, the last previous list on file with the designated carrier officer shall be used for the purpose of this Section.

NOTE: Currently effective lists and assignment forms need not be resubmitted.

<u>SECTION 3</u>.

(a)     Deductions will be made from the wages earned in the first period of the month, which will be dues of the member for the following month, in which the aforementioned certified statement is furnished to the designated Carrier officer. The following payroll deductions will have priority over deductions in favor of the Organization as covered by this Agreement.

(i)     Federal, State and Municipal taxes and other deductions required by law, including garnishment and attachments and any other prior liens which the Carrier must respect.
(ii)    Amounts due the Carrier.
(iii)   Union Pacific Railroad Employes Hospital Association; and premiums on group insurance plans.

If the earnings of the employe are insufficient, after all priority deductions have been made, to remit the full amount of deductions authorized by an employe hereunder, no deduction for dues on behalf of the Organization shall be made by the Carrier and the Carrier shall not be responsible for such collection.

(b)     Deductions made hereunder shall be made on the regular payroll or from time vouchers and shall be remitted to the International Secretary-Treasurer or other officer of the Organization as may be designated by the International President not later than the fifth day of the month next following the month in which deduction is made; together with a machine-produced list (Attachment E), prepared in triplicate for each lodge, alphabetically listing the names, social security account numbers or payroll identification numbers, amount of deductions, and the total amount of deductions for the lodge. (If no deduction is made for a particular individual on the list, the Carrier will show the reason therefor. The Carrier will also furnish a summary statement for all lodges, itemizing the number of employes and amount deducted.)

75

CONFIDENTIAL

UP-AVJNA-002307

SECTION 4.

Responsibility of the carrier under this Agreement shall be limited to remitting to the Organization amounts actually deducted from the wages of employes pursuant to this Agreement, and the Carrier shall not be responsible financially or otherwise for failure to make deductions or for making improper or inaccurate deductions. Nothing contained herein shall be construed as obligating the Carrier to collect dues from employes who leave its service or whose wages shall be involved in any claim or litigation of any nature whatsoever.

SECTION 5.

No part of this Agreement shall be used in any manner whatsoever either directly or indirectly as a basis for a grievance or time claim by or in behalf of an employe; and no part of this or any other Agreement between the Carrier and the Organization shall be used as the basis for a grievance or time claim by or in behalf of any employe predicated upon any alleged violation of, or misapplication or noncompliance with any part of this Agreement.

SECTION 6.

(a)    The requirements of this Agreement shall not be effective with respect to any individual employe until the Carrier has been furnished with written authorization as assignment of wages of such monthly membership dues, initiation fees, and assessments.

(b)    Any question arising as to the correctness of the amount deducted shall be handled between the employe involved and the Organization, and any complaints against the Carrier in connection therewith shall be handled by the Organization on behalf of the employe concerned.

SECTION 7.

Except for remitting to the Organization monies deducted from the wages of employes, the Organization shall indemnify, defend and save harmless the Carrier from and against any and all claims, demands, liability, losses or damages resulting from the entering into this Agreement or arising or growing out of any dispute or litigation resulting from any deductions made by the Carrier from the wages of its employes for or on behalf of the Organization.

SECTION 8.

In the event of a change in representation of employes now represented by the Organization, this Agreement shall automatically terminate and be of no further force or effect as of the date official notification is received from the National Mediation Board of such change in representation.

SECTION 9.

To assist in the application of the Agreement, the Carrier will furnish a list to the designated officer of the Organization and the General Chairman at the close of each month, to be received not later than the fifth day of the following month, which list shall show the data and information as set forth in Attachment "F" and in the form as there prescribed.

CONFIDENTIAL    Case 4:19-cv-00480-RK    Document 70-3    Filed 03/15/21    Page 84 of 196    UP-AVINA-002308

SECTION 10.

This Agreement is subject to the express Agreement of the parties hereto to observe and comply with the provisions of the applicable federal and state laws now in existence or enacted during the term hereof, it being the intention of either party hereto to relieve the other party hereto from complying with any provision of this Agreement which may be in conflict with or violate any applicable state or federal law now in existence or enacted during the term hereof.

SECTION 11.

This Agreement shall be effective October 1, 1973 and shall remain in effect until altered, changed or cancelled in accordance with the Railway Labor Act, as amended, or as otherwise provided in Section 8 of this Agreement.

Signed at Omaha, Nebraska this 20th day of September, 1973.

FOR THE BROTHERHOOD OF RAIL-
WAY, AIRLINE AND STEAMSHIP
CLERKS, FREIGHT HANDLERS,          UNION PACIFIC RAILROAD
EXPRESS AND STATION EMPLOYES          COMPANY

General Chairman, E. D.          Vice President-Labor Relations

General Chairman, W. D.          Director Labor Relations-System



77

## WAGE ASSIGNMENT AUTHORIZATION

_____
(Employing Officer)

Union Pacific Railroad Company,

_____
(Location)

Name _____    _____
(Last          First          Middle Initial)          (Soc. Sec. No.)

Home Address _____
(Street and Number)      (City and State)      (Zip Code)

_____
(Occupation - Title)      (Pos. No.)      (Work Location)      (Seniority District)

_____    _____    _____
(Lodge No.)      (Union Card No.)    (Carrier Audit No.)

  I hereby assign to the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes that part of my wages necessary to pay my monthly membership dues (not including fines and penalties) in the Organization as such dues and premiums are reported to the Union Pacific Railroad Company by the designated officer of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes, in monthly statements, certified by him, as provided under the Check-Off Agreement entered into by and between the Organization and the Union Pacific Railroad Company on September 20, 1973, and I hereby authorize the Union Pacific Railroad Company to deduct from my wages all such sums and pay them over to the designated officer of the Organization (BRAC) in accordance with the said Check-Off agreement. This authorization may be revoked in writing by the undersigned after the expiration of one (1) year, upon thirty (30) days written advance notice or upon the termination of the aforesaid Check-Off agreement or upon the termination of the union agreement between the Company and the Organization, whichever occurs sooner.

_____ 20_____    _____    _____
(Date)                              (Signature)              (LodgeNo.)

78

CONFIDENTIAL      Case 4:19-cv-00480-RK   Document 70-3   Filed 03/15/21   Page 86 of 196      UP-AVINA-002310

IBM Code ____ _____

_____
(Employing Officer)

Union Pacific Railroad Company,

_____
(Location)

Name _____     _____
   (Last          First          Middle Initial)          (Soc. Sec. No.)

Home Address _____ _____ _____
            (Street and Number)    (City and State)    (Zip Code)

_____
(Occupation - Title)   (Pos. No.)   (Work Location)   (Seniority District)

   _____   _____   _____
   (Lodge No.)   (Union Card No.)   (Carrier Audit No.)

   Effective _____ ____ 20___ # I hereby revoke the Wage Assignment Authorization now in effect assigning to the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes that part of my wages necessary to pay my monthly dues in the Organization now being withheld pursuant to the Check-Off Agreement between the Organization and the Union Pacific Railroad Company, and I hereby cancel the Authorization now in effect authorizing the Union Pacific Railroad Company to deduct such monthly dues from my wages.

_____, 20____   _____   _____
      (Date)                        (Signature)              (LodgeNo.)

# NOTE: Thirty (30) days written advance notice must be given to effectuate this revocation.

79

CONFIDENTIAL
UP-AVINA 002311

INITIAL LIST

Date _____

_____
(Employer Officer)

_____
(Employer)

_____
(Street)

_____
(City and State)

Pursuant to the Check-Off Agreement between the Brotherhood and _____, the following is a list of names of employes for (Employer) whom deductions shall be made effective the first pay period of _____, 20 _____.

Wage Deduction Authorization Forms for these employes are enclosed.

| LAST NAME | FIRST NAME | MIDDLE INITIAL | SOC. SEC. ACCT. NO. | LODGE NUMBER | AMOUNT |
|-----------|-----------|----------------|---------------------|--------------|--------|
|           |           |                |                     |              |        |

80

ADDITIONS OR DELETIONS

_____
(Employer Officer)

_____
(Employer)

_____
(Street)

_____
(City and State)

Pursuant to the Check-Off Agreement between the Brotherhood and
_____, effective with the first pay period of
(employer)
_____, 20 ___, the following additions or deletions are to be made for the employes
whose names are listed below:

| LAST NAME | FIRST NAME | MIDDLE INITIAL | SOC. SEC. NO. | PAYROLL NUMBER | LODGE NUMBER | AMOUNT |
|-----------|-----------|----------------|---------------|----------------|--------------|--------|
| | | ADDITIONS | | | | |
| | | | | | | |
| | | DELETIONS | | | | |
| | | | | | | |

Wage Deduction Authorization Forms for the employes to be added to the initial list are
enclosed.

CERTIFIED CORRECT

_____
General Chairman

81

CONFIDENTIAL UP-AVINA 002313

MONTHLY LIST OF DEDUCTIONS

Date _____

_____
(Brotherhood Officer)

_____
(Street)

_____
(City and State)

Pursuant to the Check-Off Agreement between the Brotherhood and Union Pacific Railroad Company, enclosed is a machine-produced list for Lodge _____ for the month of _____, 20 _____, issued pursuant to Section 3(b) of the Agreement dated September 20, 1973, containing the following:

| Name<br>Last  First | Middle<br>Initial | SS Acct. No.<br>or PR ID No. | Deduction Account<br>Monthly Initiation<br>Dues Assessment | No Deduction<br>(Reason) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

Total Deduction _____

_____
Carrier Officer

Dues deducted from first pay period of _____ for _____ dues.
(Month)

82

Case 4:19-cv-00480-RK   Document 70-3   Filed 03/15/21   Page 90 of 196

RECORD OF CHANGE IN STATUS OF EMPLOYES

Seniority Zone No. _____

Division Officer of

_____          _____          Department _____
   (Month)                     (Year)

| FIRST INITIAL | MIDDLE INITIAL | LAST NAME | REASON FOR CHANGE* | FIRST INITIAL | MIDDLE INITIAL | LAST NAME | REASON FOR CHANGE* |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

*Insert appropriate explanatory letter symbol as shown below along with dates.

A - Resigned; died; dismissed; retired
B - Transferred to excepted position or position outside scope of the Clerk's Agreement
C - Returned from excepted position or position outside scope of the Clerk's Agreement
D - Entered military service
E - Returned from military service
F - Leave of absence
G - Returned from leave of absence
H - Absent account sickness or disability
I - Returned from leave of absence account sickness or disability
J - Furloughed
K - Returned from furlough or recalled to service per Rule 18
L - New employe - Name, SSA No., & date hired

83

CONFIDENTIAL

UP-AVINA-002315

 

### UP/TCU JOB STABILIZATION AGREEMENT

This Agreement by and between the Parties shall amend the Job Protection Agreement of February 7, 1965, National Mediation Board Case No. A-7128, as amended, and the interpretations thereof.

### ARTICLE I - PROTECTED EMPLOYEES

#### Section 1

(a)     Employees assigned to a regular position or to a Guaranteed Reserve/Extra Board on May 16, 1980, having three (3) or more years of continuous employment relationship in the clerical craft as of May 16, 1980, will become protected employees on May 16, 1980.

(b)     Employees assigned to a regular position or to a Guaranteed Reserve/Extra Board on May 16, 1980, having less than three (3) years of continuous employment relationship in the clerical craft on May 16, 1980, will become protected employees on the first of the month immediately following the month in which they acquire three (3) years continuous employment relationship in the clerical craft, unless they are not so assigned on the date they are eligible to become protected employees, in which event they will become protected employees on the first of the month immediately following the month when recalled to service and assigned to a regular position or to a Guaranteed Reserve/Extra Board in accordance with existing rules of the UP/TCU Agreement.

(c)     Employees not regularly assigned or not on a Guaranteed Reserve/Extra Board as of May 16, 1980, having three (3) or more years of continuous employment relationship in the clerical craft as of May 16, 1980, will become protected employees on the first of the month immediately following the month when recalled to service and assigned to a regular position or to a Guaranteed Reserve/Extra Board in accordance with existing rules of the UP/TCU Agreement.

(d)     Employees not regularly assigned or not on a Guaranteed Reserve/Extra Board as of May 16, 1980, having less than three (3) years of continuous employment relationship in the clerical craft as of May 16, 1980, will become protected employees on the first of the month immediately following the month in which they acquire three (3) years of continuous employment relationship in the clerical craft, unless they are not regularly assigned or not on a Guaranteed Reserve/Extra Board on the date they are eligible to become protected employees, in which event they will become protected employees on the first of the month immediately following the month when recalled to service and assigned to a regular position or to a Guaranteed Reserve/Extra Board in accordance with existing rules of the UP/TCU Agreement.

(e)     Employees hired on or after May 16, 1980 and prior to April 15, 1986, who acquire four (4) years' continuous employment in the clerical craft will become protected employees on the first of the month immediately following the month in which they acquire four (4) years' continuous employment relationship in the clerical craft, unless they are not regularly assigned or not on a Guaranteed Reserve/Extra Board on the date they are eligible to become protected employees, in which event they will become protected employees on the first of the month immediately following the month when recalled to service and assigned to a regular position or to a Guaranteed Reserve/Extra Board in accordance with existing rules of the UP/TCU Agreement.

84

CONFIDENTIAL

(f)     Employees hired on or after April 15, 1986, who acquire six (6) years' continuous employment in the clerical craft will become protected employees on the first of the month immediately following the month in which they acquire six (6) years' continuous employment relationship in the clerical craft, unless they are not regularly assigned or not on a Guaranteed Reserve/Extra Board on the date they are eligible to become protected employees, in which event they will become protected employees on the first of the month immediately following the month when recalled to service and assigned to a regular position or to a Guaranteed Reserve/Extra Board in accordance with existing rules of the UP/TCU Agreement.

Section 2

In the event of a decline in a Carrier's business in excess of 5% in the average percentage of both gross operating revenue and net revenue ton miles in any 30-day period compared with the average of the same period for the years 1963 and 1964, a reduction in forces in the crafts here represented by the Organization signatory hereto may be made at any time during the said 30-day period below the number of employees entitled to preservation of employment under this Agreement to the extent of one percent for each one percent the said decline exceeds 5%. The average percentage of decline shall be the total of the percent of decline in gross operating revenue and percent of decline in net revenue ton miles divided by 2. Advance notice of any such force reduction shall be given as required by the current Schedule Agreement of the organization signatory hereto. Upon restoration of the Carrier's business following any such force reduction, employees entitled to preservation of employment must be recalled in accordance with the same formula within 15 calendar days.

Section 3

Seasonal employees, including furloughed employees who otherwise meet the service requirements as set forth in Section 1 of this Article who are assigned to non-guaranteed extra boards, who had compensated service during each of the years 1977, 1978, and 1979, will be guaranteed employment in future years at least equivalent to what they performed in 1979 unless or until retired, discharged for cause or otherwise removed by natural attrition.

Section 4

Notwithstanding other provisions of this Agreement, the Carrier shall have the right to make force reductions under emergency conditions such as flood, snowstorm, hurricane, earthquake, fire or strike, provided that operations are suspended in whole or in part and provided further that because of such emergencies the work which would be performed by the incumbents of the positions to be abolished or the work which would be performed by the employees involved in the force reductions no longer exists or cannot be performed. When forces have been so reduced and thereafter operations are restored employees entitled to preservation of employment must be recalled upon the termination of the emergency. In the event the Carrier is required to make force reductions because of the aforesaid emergency conditions, it is agreed that any decline in net revenue ton miles resulting therefrom shall not be included in any computation of a decline in the Company's business pursuant to the provisions of Section 2 of this Article I.

85

CONFIDENTIAL
UP-AVJNA-002317

ARTICLE II - USE AND ASSIGNMENT OF EMPLOYEES AND LOSS OF PROTECTION

Section 1

An employee shall cease to be a protected employee in case of resignation, death, retirement or dismissal for cause in accordance with existing agreements. The protected status of an employee who fails to obtain or retain a position available in the exercise of seniority rights and which does not require a change in residence or fails to accept employment as provided in this Agreement which does not require a change of residence, or fails to respond to extra work when called, will be suspended until such time as the employee obtains a regular position. Effective with the date the employee occupies such a regular position, the employee will be restored to the status of a protected employee and protected at the rate of the regular position occupied on the date protected status is restored. If an employee dismissed for cause is reinstated to service, the employee will be restored to the status of a protected employee as of the date of reinstatement.

Section 2

When a furloughed protected employee is entitled to compensation under this Agreement, such employee may be used in accordance with existing seniority rules for vacation relief, or sick relief, or for any other temporary assignment within a 30-mile radius of headquarters point, provided such assignment does not require the crossing of craft lines except as specifically provided for in this Agreement.

Section 3

Furloughed protected employees who are entitled to protective benefits under this Agreement may be offered, in reverse order of seniority, reasonably comparable employment in another seniority Zone, another craft or class or with a Carrier or car line fully or partially owned by the Company, when such employment does not require a change in residence, and for which the employee is physically qualified, if such employment does not infringe upon the employment or transfer rights of the employees in such other seniority Zone or craft or class, and the filling of the vacancy in the other seniority Zone or craft or class would require the Company to hire a new employee.

Employees working in another craft or class shall continue to receive compensation due protected employees under Article IV and will be allowed Holiday Pay, Sick Leave, Jury Duty, Personal Leave, Vacation, and Health and Welfare and Dental benefits due under the UP/TCU Agreement when such benefits are superior to those provided employees in the other craft or class.

Section 4

The Company may also train furloughed protected employees for other reasonably comparable employment or for employment in another craft or class for which the employee is physically qualified. In such cases, the employee may be assigned to an on-the-job or classroom training program, during hours designated by the Company, not to exceed eight (8) hours per day (exclusive of meal period, if assigned) five days per week. Employees being trained will be compensated at their protected rate or the training rate, whichever is higher, except no compensation will be allowed for days the employee is voluntarily absent. After completion of training, the employee must accept employment, which will not require a change in residence, in the craft or class or other craft or class for which the employee has sufficient fitness and ability.

86

CONFIDENTIAL

UP-AVINA-002318

<u>Section 5</u>

The protection status of a furloughed protected employee who refuses to accept employment in another class or craft or other employment as outlined above which does not require a change in residence or who refuses or fails to exert a reasonable effort to complete the training program, will be suspended until recalled to service and assigned to a regular position in accordance with existing rules of the UP/TCU Agreement at which time the employee will be restored to the status of a protected employee and protected at the rate of the position occupied on the date the employee protected status is restored.

> NOTE: A "change in residence" as used in this Agreement shall only be considered "required" if the reporting point of the affected employee would be more than thirty (30) normal route miles from the employee point of employment at the time affected.

<u>ARTICLE III - IMPLEMENTING AGREEMENTS</u>

<u>Section 1</u>

The Organization recognizes the right of the Company to make technological, operational and organizational changes, and in consideration of the protective benefits provided by this Agreement the Company shall have the right to transfer work and/or employees throughout the system which does not require the crossing of craft lines except as otherwise provided in this Agreement. The Organization signatory hereto shall enter into such implementing agreements with the Company as may be necessary to provide for the transfer and use of employees and the allocation or rearrangement of forces made necessary by the contemplated change. One of the purposes of such implementing agreements shall be to provide a force adequate to meet the Company's requirements.

<u>Section 2</u>

Except as provided in Section 3 hereof, the Company shall give at least 60 days' (90 days in cases that will require a change of an employee residence) written notice to the Organization involved of any intended change or changes referred to in Section 1 of this Article whenever such intended change or changes are of such a nature as to require an implementing agreement as provided in said Section 1. Such notice shall contain a full and adequate statement of the proposed change or changes, including an estimate of the number of employees that will be affected by the intended change or changes. Any change covered by such notice which is not made within a reasonable time following the serving of a notice, when all of the relevant circumstances are considered, shall not be made by the Company except after again complying with the requirements of this Section 2.

<u>Section 3</u>

The Company shall give at least 30 days' notice where it proposes to transfer no more than 5 employees between seniority zones and the transfer of such employees will not require a change in the place of residence of such employee or employees, such notice otherwise to comply with Section 2 hereof.

87

CONFIDENTIAL
UP-AVJNA-002319

<u>Section 4</u>

In the event the representatives of the Company and Organization fail to make an implementing agreement within 60 days after notice is given to the General Chairman representing the employees to be affected by the contemplated change, or within 30 days after notice where a 30-day notice is required pursuant to Section 3 hereof, the matter may be referred by either party for final and binding resolution as provided in Article VIII. The issues submitted for determination shall not include any question as to the right of the Company to make the change but shall be confined to the manner of implementing the contemplated change with respect to the transfer and use of employees, and the allocation or rearrangement of forces made necessary by the contemplated change.

<u>Section 5</u>

The provisions of implementing agreements negotiated as hereinabove provided for with respect to the transfer and use of employees and allocation or reassignment of forces shall enable the Company to transfer such protected employees and rearrange forces, and such movements, allocations and rearrangements of forces shall not constitute an infringement of rights of unprotected employees who may be affected thereby.

<u>Section 6</u>

Protected employees required to change their places of residence as a result of transfers covered by an implementing agreement shall have 20 days from the date notified to elect one of the options set forth below:

<u>PROTECTED EMPLOYEES WITH 3 BUT LESS THAN 5 YEARS OF SERVICE</u> may:

(i)     Transfer and receive the moving expenses and transfer allowances provided in Article VI;

(ii)    Not transfer and voluntarily suspend the monetary protection provided in Article IV until such time the employee is again assigned to a permanent position;

(iii)   Elect to take a separation allowance in the amount of $13,282.00 (as of July 1, 1991, subject to general wage adjustments, including COLA), except as noted below.

88

PROTECTED EMPLOYEES WITH 5 OR MORE YEARS OF SERVICE may:

(i)    Transfer and receive the moving expenses and transfer allowances provided in Article VI;

(ii)    Not transfer and voluntarily suspend the monetary protection provided by Article IV until such time as again assigned to a permanent position;

(iii)    Elect to take a separation allowance in the amount of $26,137.00 (as of July 1, 1991, subject to general wage adjustments, including COLA), except as noted below.

    NOTE: Separation will be computed in accordance with Section 9 of the Washington Job Protection Agreement of May 9, 1936, for the following employees:

(i)    Former Western Pacific employee with ten (10) or more years of service as of August 1, 1983.

(ii)    Former Missouri Pacific and Missouri-Kansas-Texas Railroad employees with fifteen (15) or more years of service as of July 1, 1992.

PROTECTED EMPLOYEES WITH 6 OR MORE YEARS OF SERVICE may:

(i)    Transfer and receive the moving expenses and transfer allowances provided in Article VI;

(ii)    Not transfer and voluntarily suspend the monetary protection provided in Article IV until such time as the employee is again assigned to a permanent position;

(iii)    Elect to take separation allowance in the amount of $65,000.00 (as of January 1, 1997). The employee must authorize a one-time deduction of 31 months union dues and assessments.

ARTICLE IV - COMPENSATION DUE PROTECTED EMPLOYEES

Section 1

Subject to the provisions of Section 3 of this Article IV, protected employees entitled to preservation of employment who hold regularly assigned positions, including employees on Guaranteed Reserve/Extra Board, on January 1, 1980, shall not be placed in a worse position with respect to compensation than the normal rate of compensation for said regularly assigned position on January 1, 1980, or their current protected rate of pay established under the provisions of Mediation Agreement Case No. A-7128 dated February 7, 1965, whichever is higher; provided, however that in addition thereto such compensation shall be adjusted to include subsequent general wage and C.O.L.A. adjustments.

89

CONFIDENTIAL

UP-AVINA-002321

<u>Section 2</u>

Subject to the provisions of Section 3 of this Article IV, those employees who become protected employees in accordance with the provisions of Sections 1(b), 1(c), 1(d), 1(e) and 1(f) of Article I and entitled to preservation of employment shall not be placed in a worse position with respect to compensation than the normal rate of compensation of the regular position (adjusted to include subsequent general wage and C.O.L.A. adjustments) to which they are assigned on the date they become protected employees.

<u>Section 3</u>

Any protected employee who in the normal exercise of seniority makes application for a position or is displaced as a result of such an employee exercising seniority in the normal way by reason of a voluntary action, will not be entitled to have compensation preserved as provided in Sections 1 and 2 hereof, but will be compensated at the rate of pay and conditions of the job to which the employee is assigned; provided, however, if the employee is required to make a move or apply for a position under the terms of an implementing agreement made pursuant to Article III hereof, the employee will continue to be paid in accordance with Sections 1 and 2 of this Article IV.

<u>Section 4</u>

If a protected employee fails to exercise seniority rights to secure another available position, which does not require a change in residence, to which the employee is entitled under the working agreement and which carries a rate of pay and compensation exceeding those of the position the employee elects to retain, the employee shall thereafter be treated for the purposes of this Article as occupying the position which the employee elects to decline.

<u>Section 5</u>

A protected employee shall not be entitled to the benefits of this Article during any period in which the employee fails to work due to disability, discipline, leave of absence, military service, or other absence from the Company's service, or during any period in which the employee occupies a position not subject to the working agreement (except as provided for in Article II) or protected status is suspended; nor shall a protected employee be entitled to the benefits of this Article IV during any period when furloughed because of a reduction in force resulting from seasonal requirements (including lay-offs during Miners' Holiday and the Christmas Season) or because of reductions in forces pursuant to Article I, Section 3 and 4, provided, however, that employees furloughed due to seasonal requirements shall not be furloughed in any 12-month period for a greater period than they were furloughed during the 12 months preceding the date of this agreement.

<u>Section 6</u>

Any protective allowances or benefits due a furloughed protected employee shall be reduced by the full amount of unemployment benefits received, or to which entitled under any unemployment insurance law and/or governmental agency and compensation received from all other employment.

90

CONFIDENTIAL

UP-AVINA-002322

## Section 7

The Carrier will furnish an appropriate form to enable protected employees to file claim for protective benefits. The form must be filed within sixty (60) days from the close of the month for which protective benefits are claimed and, if the employee is entitled to the protective benefits claimed, such claim will be allowed.

## Section 8

(a)    In connection with the reduction which the Company may make in furlough allowances due protected employees provided in Article IV, it is the intent of the parties that compensation received by such employee from outside employment and/or self-employment will not be considered unless the compensation received from said outside employment and/or self-employment exceeds such compensation received by the employee at the time of furlough, in which event the excess will be considered when determining the amount of the furlough allowance due.

(b)    It is also the intent of the parties that the terms "any other employment and/or self-employment" mean bona-fide employment.

## ARTICLE V - EXERCISE OF SENIORITY - CHANGE IN RESIDENCE

### Section 1

(a)    A furloughed protected employee shall not be required to transfer to a location requiring a "change in residence" unless the Company has a bona fide need for the employee services on a permanent basis at such location. Such bona fide need for services contemplates that the transfer be to a position within the craft or class which has not and cannot be filled by employees who are not required to make a change in residence and which would otherwise require the hiring of a new employee.

(b)    The provisions of this Section requiring furloughed protected employees to transfer will be under the following order of recall:

(i)    recall furloughed protected employees in reverse seniority order within the Zone followed by -

(ii)    Recall furloughed protected employees in reverse seniority order within the Master Roster.

### Section 2

Furloughed protected employees requested to change their residences shall not be again required to change their residence for a period of 3 years.

### Section 3

Transfers requiring a change in residence will be offered in the order specified in Section 1(b) of this Article V until the position is filled and each such employee shall have twenty (20) days to elect one of the options set forth below.

91

CONFIDENTIAL

UP-AVINA 002323

<u>PROTECTED EMPLOYEES WITH 10 OR MORE YEARS OF SERVICE</u> may:

(i) Transfer and receive the moving expenses and transfer allowances provided in Article VI;

(ii) Not transfer and voluntarily suspend the monetary protection provided in Article IV until such time as the employee is again assigned to a permanent position:

(iii) Elect to take a separation allowance equivalent to 360 days pay at the rate of the employee last position or protected rate, whichever is greater.

<u>PROTECTED EMPLOYEES WITH 5 YEARS OF SERVICE BUT LESS THAN 10 YEARS OF SERVICE</u> may:

(i) Transfer and receive the moving expenses and transfer allowances provided in Article VI;

(ii) Not transfer and voluntarily suspend the monetary protection provided by Article IV until such time as the employee is again assigned to permanent position;

(iii) Accept separation pay, if offered by the Company, in the amount of $26,137.00 (as of July 1, 1991, subject to general wage adjustments, including COLA).

<u>PROTECTED EMPLOYEES WITH 6 OR MORE YEARS OF SERVICE</u> may:

(i) Transfer and receive the moving expenses and transfer allowances provided in Article VI;

(ii) Not transfer and voluntarily suspend the monetary protection provided by Article IV until such time as the employee is again assigned to a permanent position.

(iii) Accept separation pay, if offered by the Company, in the amount of $65,000. The employee must authorize a one-time deduction of 31 months union dues and assessments.

<u>ARTICLE VI - MOVING EXPENSES</u>

<u>Section 1</u>

Protected employees required to transfer to a new point of employment requiring a change of residence shall be subject to the benefits contained in Sections 10 and 11 of the Washington Job Protection Agreement notwithstanding anything to the contrary contained in said provisions and in addition to such benefits shall receive a transfer allowance of one thousand dollars ($1,000.00) and five (5) working days instead of the "two working days" provided by Section 10(a) of said Agreement.

92

CONFIDENTIAL

UP-AVINA-002324

Section 2

(a)    Protected employees may elect, in lieu of the benefits provided in Section 1, one of the following lump sum transfer allowances which must be exercised within fifteen (15) days from date of transfer:

(i)    on the date of recall, an employee who owns or is under contract to purchase their own home which is presently occupied as their place of residence, a lump sum transfer allowance of $20,000, as of January 1, 1997, and subject to the same adjustments as applied to wages arising from general Wage & COLA adjustments.

(ii)    on the date of recall, an employee who is not a homeowner, a lump sum transfer allowance of $10,000, as of January 1, 1997, and subject to the same adjustments as applied to wages arising from general Wage & COLA adjustments.

NOTE: If an employee holds an unexpired lease of a dwelling occupied as a home, the Carrier shall protect such employee from all loss and cost in securing the cancellation of said lease as provided in Sections 10 and 11 of the Washington Job Protection Agreement in addition to the lump sum benefits provided under this Option.

(b)    The lump sum transfer allowances provided in this Section may be adjusted by agreement between the parties.

(c)    A protected employee who elects a lump sum transfer allowance under provisions of this Section will not be permitted to voluntarily exercise seniority on a position which requires a change in residence outside of the new headquarters point for a period of twelve (12) months from date of acceptance of the lump sum payment.   (See Interpretation dated 8/15/97.)


ARTICLE VII - APPLICATION TO MERGERS, CONSOLIDATIONS AND OTHER
                AGREEMENTS

Section 1

Any merger agreement now in effect applicable to merger of two or more Carriers, or any job protection or employment security agreement which by its terms is of general system-wide and continuing application but which by its terms would apply in the future, may be preserved by the employee representatives so notifying the Carrier within sixty days from the date of this Agreement, and in that event this Agreement shall not apply on that Carrier to employees represented by such representatives.

Section 2

In the event of merger or consolidation of two or more Carriers, the parties to this Agreement on which this Agreement is applicable, or parts thereof, into a single system subsequent to the date of this Agreement, the merged, surviving or consolidated Carrier will constitute a single system for purposes of this Agreement, and the provisions hereof shall apply accordingly, and the protections and benefits granted to employees under this Agreement shall continue in effect.

93

CONFIDENTIAL

UP-AVINA-002325

Section 3

Without in any way modifying or diminishing the protection, benefits or other provisions of this Agreement, it is understood that in the event of a coordination between two or more Carriers as the term "coordination" is defined in the Washington Job Protection Agreement, such Washington Agreement will be applicable to such coordination, except that Section 13 of the Washington Job Protection Agreement is abrogated and the disputes provisions and procedures of this Agreement are substituted therefor.

Section 4

Where prior to the date of this Agreement the Washington Job Protection Agreement (or other agreements of similar type whether applying inter-carrier or intra-carrier) has been applied to a transaction, coordination allowances and displacement allowances (or their equivalents or counterparts, if other descriptive terms are applicable on a particular railroad) shall be unaffected by this Agreement either as to amount or duration, and allowances payable under the said Washington Agreement or similar agreement shall be not considered compensation for purposes of determining the compensation due a protected employee under this Agreement.

ARTICLE VIII - DISPUTES PROCEDURE

Any dispute involving the interpretation or application of any of the terms of this Agreement and not settled on the property may be appealed to the Disputes Committee established pursuant to Article VII of the February 7, 1965 Job Protection Agreement, NMB Case No.A-7128.

FOR THE TRANSPORTATION
COMMUNICATIONS UNION:

FOR THE
UNION PACIFIC RAILROAD COMPANY:

_____
J. F. Lydon
General Chairman, TCU

_____
D. D. Matter
General Director, Labor Relations/Non-Ops

_____
S. Siriano
President, ASD/TCU

_____
D. K. Peitzmeier
Director, Labor Relations/Non-Ops

_____
S. Mether
Vice General Chairman, TCU

_____
D. Mitchell
Vice General Chairman, TCU

_____
B. P. Whitacre
Vice General Chairman, TCU

APPROVED:

_____
J. L. Quilty
International Vice President, TCU

94

CONFIDENTIAL
UP-AVINA 002326

April 17, 1980

Mr. Phillip A. Jordan
Vice President-Labor Relations
Union Pacific Railroad Company
1416 Dodge Street
Omaha, Nebraska 68179

Dear Sir:

In connection with the reduction which the Carrier may make in furlough allowance due Protected Employes, provided in Article IV, Section 6, of the Agreement signed April 17, 1980, it is the intent of the parties that compensation received by such employe from outside employment and/or self-employment will not be considered unless the compensation received from said outside employment and/or self-employment exceeds such compensation received by the employe at the time he is furloughed in which event the excess will be considered when determining the amount of the furlough allowance due.

It is also the intent of the parties that the terms "any other employment and/or self-employment" mean bona-fide employment.

Yours truly,

/s/ FRED J. KROLL<br>International President, BRAC

ACCEPTED:

/S/ PHILLIP A. JORDAN
Vice President-Labor Relations
Union Pacific Railroad Company

95

Mr. J. L. Quilty                                          August 15, 1997
General Chairman, TCU                                     297-74
2820 South 87th Avenue
Omaha, NE  68124

Dear Sir:

    This has reference to our recent discussion concerning Section 2 of Article VI, Moving Expenses, of the February 7, 1965 Job Stabilization Agreement, as amended.

    During our discussions, a question arose as to when the twelve (12) month period during which an individual could not exercise seniority after relocation as provided in Paragraph (c) of Section 2 would begin.  The parties agreed that Section (a) required an employee to make an election concerning the moving allowance fifteen (15) days from date of transfer.  Of course, an employee who is transferring can make an election any time prior to the fifteen (15) day deadline. Once an employee has made that election, the twelve (12) month period during which the employee cannot exercise seniority begins.  As noted in Paragraph (c) of Section 2, "a protected employee who elects a lump sum transfer allowance...".  In other words, the date the employee makes the election is the date that the twelve (12) month restriction on bidding begins.  Moreover, the employee may make an election concerning moving allowance anytime after being notified of assignment to the relocated position.  This interpretation would permit the employee to start the twelve (12) month period in which no change of residence can take place immediately following notification of being assigned to the position regardless of the date when that employee is released to assume the new position.

    If this interpretation accurately reflects our understanding concerning this issue, please sign in the space indicated below, retaining one copy of this letter and returning the other copy for my files.

                                         Yours truly,

                                         /s/ D. D. Matter

                                         D. D. MATTER
                                         Sr. Director Labor Relations/Non-Ops

AGREED:

/s/ J. L. Quilty          8/18/97

96

UP-AVINA-002328

Section 10.  (a)          Any employee who is retained in the service of any carrier involved in a particular coordination (or who is later restored to service from the group of employees entitled to receive a coordination allowance) who is required to change the point of his employment as a result of such coordination and is therefore required to move his place of residence, shall be reimbursed for all expenses of moving his household and other personal effects and for the traveling expenses of himself and members of his family and his own actual wage loss during the time necessary for such transfer, and for a reasonable time thereafter, (not to exceed two working days), used in securing a place of residence in his new location.  The exact extent of the responsibility of the carrier under this provision and the ways and means of transportation shall be agreed upon in advance between the carrier responsible and the organization of the employee affected.  No claim for expenses under this Section shall be allowed unless they are incurred within three years from the date of coordination and the claim must be submitted within ninety (90) days after the expenses are incurred.

(b)          If any such employee is furloughed within three years after changing his point of employment as a result of coordination and elects to move his place of residence back to his original point of employment, the carrier shall assume the expense of moving his household and other personal effects under the conditions imposed in paragraph (a) of this section.

(c)          Except to the extent provided in paragraph (b) changes in place of residence subsequent to the initial changes caused by coordination and which grow out of the normal exercise of seniority in accordance with working agreements are not comprehended within the provisions of this section.

Section 11.  The following provisions shall apply, to the extent they are applicable in each instance, to any employee who is retained in the service of any of the carriers involved in a particular coordination (or who is later restored to such service from the group of employees entitled to receive a coordination allowance) who is required to change the point of his employment as a result of such coordination and is therefore required to move his place of residence:

1.      If the employee owns his own home in the locality from which he is required to move, he shall at his option be reimbursed by his employing carrier for any loss suffered in the sale of his home or less than its fair value.  In each case the fair value of the home in question shall be determined as of a date sufficiently prior to the coordination to be unaffected thereby.  The employing carrier shall in each instance be afforded an opportunity to purchase the home at such fair value before it is sold by the employee to any other party.

2.      If the employee is under a contract to purchase his home, the employing carrier shall protect him against loss to the extent of the fair value of any equity he may have in the home and addition shall relieve him from any further obligations under his contract.

3.      If the employee holds an unexpired lease of a dwelling occupied by him as his home, the employing carrier shall protect him from all loss and cost in securing the cancellation of his said lease.

(b)          Changes in place of residence subsequent to the initial change caused by coordination and which grow out of the normal exercise of seniority in accordance with working agreements are not comprehended within the provisions of this Section.

97

CONFIDENTIAL                                                  UP-AVINA-002329

(c)    No claim for loss shall be paid under the provisions of this section which is not presented within three years after the effective date of the coordination.

(d)    Should a controversy arise in respect to the value of the home, the loss sustained in its sale, the loss under a contract for purchase, loss and cost in securing termination of lease, or any other question in connection with these matters, it shall be decided through joint conference between the representatives of the employees and the carrier on whose line the controversy arises and in the event they are unable to agree, the dispute may be referred by either party to a board of three competent real estate appraisers, selected in the following manner:  One to be selected by the representatives of the employees and the carrier, respectively; these two shall endeavor by agreement within ten days after their appointment to select the third appraiser, or to select some person authorized to name the third appraiser, and in the event of failure to agree then the Chairman of the Interstate Commerce Commission shall be required to appoint the third appraiser. A decision of a majority of the appraisers shall be required and said decision shall be final and conclusive.  The salary and expenses of the appraisal board, shall be borne equally by the parties to the proceedings.  All other expenses shall be paid by the party incurring them, including the salary of the appraiser selected by the party.



98

CONFIDENTIAL
UP-AVINA_002330

Award of Arbitration
Board No. 298

ARBITRATION BOARD NO. 298

| | |
|---|---|
| IN THE MATTER OF AN ARBITRATION | ) |
| | ) |
| between | ) |
| | ) |
| CARRIERS REPRESENTED BY THE | ) |
| NATIONAL RAILWAY LABOR CONFERENCE | ) |
| AND THE SOUTHEASTERN, EASTERN AND | ) |
| WESTERN CARRIERS' CONFERENCE | ) |
| COMMITTEES | ) |
| | ) |
| and | )     AWARD |
| EMPLOYES' NATIONAL CONFERENCE | ) |
| COMMITTEE FIVE COOPERATING RAILWAY | ) |
| LABOR ORGANIZATIONS | ) |
| | ) |
| (NATIONAL MEDIATION BOARD | ) |
| CASE NO. A-7948 | ) |

The Board of Arbitration provided for in the Arbitration Agreement of July 19, 1967, having been named and constituted in accordance with said Arbitration Agreement and in accordance with the provisions of the Railway Labor Act after hearing the parties of their representatives and considering the testimony, exhibits and arguments presented, does hereby make its Award as follows:

I.  The railroad company shall provide for employees who are employed in a type of service the nature of which regularly requires them throughout their work week to live away from home in camp cars, camps, highway trailers, hotels or motels as follows:

    1.  If lodging is furnished by the railroad company, the camp cars or other lodging furnished shall include bed, mattress, pillow, bed linen, blanket towels, soap, washing and toilet facilities.

    2.  Lodging facilities furnished by the railroad company shall be adequate for the purpose and maintained in a clean, healthful and sanitary conditions.

    3.  If lodging is not furnished by the railroad company the employee shall be reimbursed for the actual reasonable expense thereof not in excess of $4.00 per day.

B.  Meals

    1.  If the railroad company provides cooking and eating facilities and pays the salary or salaries of necessary cooks, each employee shall be paid a meal allowance of $1.00 per day.

CONFIDENTIAL
Case 4:19-cv-00480-RK   Document 70-3   Filed 03/15/22   Page 107 of 196
UP-AVINA-002331

2. If the railroad company provides cooking and eating facilities but does not furnish and pay the salary or salaries of necessary cooks, each employee shall be paid a meal allowance of $2.00 per day.

3. If the employees are required to obtain their meals in restaurants or commissaries, each employee shall be paid a meal allowance of $3.00 per day.

4. The foregoing per diem meal allowance shall be paid for each day of the calendar week, including rest days and holidays, except that it shall not be payable for work days on which the employee is voluntarily absent from service, and it shall not be payable for rest days or holidays if the employee is voluntarily absent from service when work was available to him on the work day preceding or the work day following said rest days or holiday.

C. Travel from one work point to another

1. Time spent in traveling from one work point to another outside of regularly assigned hours or on a rest day or holiday shall be paid for at the straight time rate.

2. An employee who is not furnished means of transportation by the railroad company from one work point to another and who uses other forms of transportation for this purpose shall be reimbursed for the cost of such other transportation. If he uses his personal automobile for this purpose in the absence of transportation furnished by the railroad company he shall be reimbursed for such use of his automobile at the rate of nine cents a mile. If an employee's work point is changed during his absence from the work point on a rest day or holiday this paragraph shall apply to any mileage he is required to travel to the new work point in excess of that required to return to the former work point.

II. Employes (other than the referred to in Section I above and other than dining car employees) who are required in the course of their employment to be away from their headquarters point as designated by the carrier, including employes filling relief assignments or performing extra or temporary service, shall be compensated as follows:

A. The Carrier shall designate a headquarters point for each regular position and each regular assigned relief position. For employees, other than those serving in regular positions or in regular assigned relief positions, the carrier shall designate a headquarters point for each employee. No designated headquarters point may be changed more frequently than once each 60 days and only after at least 15 days' written notice to the employee affected.

B. When employees are unable to return to their headquarters point on any day they shall be reimbursed for the actual reasonable cost of meals and lodging away from their headquarters point not in excess of $7.00 per day.

100

CONFIDENTIAL
UP-AVINA-002332

C. An employee in such service shall be furnished with free transportation by the railroad company in traveling from his headquarters point to another point and return, or from one point to another. If such transportation is not furnished, he will be reimbursed for the cost of rail fare if he travels on other rail lines, or the cost of other public transportation used in making the trip; or if he has an automobile which he is willing to use and the carrier authorizes him to use said automobile, he will be paid an allowance of nine cents for each mile in traveling from his headquarters point to the work point, and return, or from one work point to another.

D. If the time consumed in actual travel, including waiting time enroute, from the headquarters point to the work location, together with necessary time spent waiting for the employee's shift to start, exceeds one hour, or if on completion of his shift necessary time spent waiting for transportation plus the time of travel, including waiting time enroute, necessary to return to his headquarters point or to the next work location exceeds one hour, then the excess over one hour in each case shall be paid for as working time at the straight time rate of the job to which traveled. When employees are traveling by private automobile time shall be computed at the rate of two minutes per mile traveled.

III. The railroad company shall provide for dining car employees as follows:

A. When dining car employees are required to lay over at other than home terminals overnight, lodging shall be furnished by the railroad company.

B. Dining car employees required to lay over at other than home terminals for a period of eight hours or more shall receive a meal allowance of $1.50 except that no allowance shall be paid to employees released after 7:00 PM and scheduled to report before 7:00 AM the following day. A second meal allowance of $1.50 will be provided if the employee's period of layover extends beyond 24 hours from the time of release at the away from home terminal.

IV. Except as benefits have been awarded in Sections I, II and III and subparagraphs thereof, all other requests contained in Article IV of the employee's Section 6 Notice of May 10, 1966, are denied.

V. Insofar as there are presently agreements in effect between any of the carrier and organizations party to this arbitration which agreements include provisions dealing with the types of employee benefits provided for in Sections I, II and III, and the subparagraphs thereof in this award, the organizations party to such existing agreements shall have the option of accepting any or all of the benefits provided in this award or of continuing in effect any or all of the provisions of the existing agreement in lieu thereof. Such election must be exercised on or before December 31, 1967. There shall be no duplication of benefits.

CONFIDENTIAL

UP-AVINA-002333

Executed this 30th day of September, 1967, in the city of Washington, D.C.

Arbitration Board No. 298

/S/ PAUL D. HANLON
Neutral Member, Chairman

/S/ DAVID H. STOWE
Neutral Member

/S/ G. E. LEIGHTY
Employee Member

/S/ H. C. CROTTY
Employee Member

/S/ A. E. EGBERS
Carrier Member

/S/ R. L. HARVEY
Carrier Member

102



## OFF-TRACK VEHICLE ACCIDENT BENEFITS

The following represents a synthesis in one document, for the convenience of the parties, of the current provisions covering Off-Track Vehicle Accident Benefits which were emanated from the National Agreements identified below:

Brotherhood of Railroad Trainmen - July 17, 1968 Agreement -Article XI; Switchmen's Union of North America - July 29, 1968 Agreement - Article IX; Brotherhood of Locomotive Firemen and Enginemen - September 14, 1968 Agreement - Article IX; United Transportation Union (C) - March 19, 1969 Agreement - Article V; United Transportation Union (E) - April 15, 1969 Agreement - Article V; Railroad Yardmasters of America - September 20, 1968 Agreement - Article IV; Brotherhood of Locomotive Engineers - March 10, 1969 agreement - Article IV; Brotherhood of Railroad Signalmen - April 21, 1969 Agreement - Article IV; Brotherhood of Maintenance of Way Employes - February 10, 1971 Agreement - Article V; Hotel and Restaurant Employees and Bartenders International Union - February 10, 1971 Agreement - Article V; Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees - February 25, 1971 Agreement - Article V; United Transportation Service Employees - March 24, 1971 Agreement - Article IV; American Train Dispatchers Association - April 20, 1971 Agreement - Article IV; International Association of Machinists and Aerospace Workers; International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers; International Brotherhood of Electrical Workers; Brotherhood Railway Carmen of the United States and Canada - October 7, 1971 Agreement - Article IV; International Brotherhood of Firemen and Oilers - February 11, 1972, Agreement - Article IV; Sheet Metal Workers' International Association - May 12, 1972 Agreement - Article IV.

This is intended as a guide and is not to be construed as constituting a separate agreement between the parties. If any dispute arises as to the proper interpretation or application of any provision, the terms of the appropriate agreement shall govern.

- - - - -

## ARTICLE - PAYMENTS TO EMPLOYEES INJURED UNDER CERTAIN CIRCUMSTANCES

Where employees sustain personal injuries or death under the conditions set forth in paragraph (a) below, the carrier will provide and pay such employees, or their personal representative, the applicable amounts set forth in paragraph (b) below, subject to the provisions of other paragraphs in this Article.

103

(a)     <u>Covered Conditions</u> -

This Article is intended to cover accidents involving employees covered by this agreement while such employees are riding in, boarding, or alighting from off-track vehicles authorized by the carrier and are

    (1)     deadheading under orders or

    (2)     being transported at carrier expense.

(b)     <u>Payments to be Made</u> -

In the event that any one of the losses enumerated in subparagraphs (1), (2) and (3) below results from an injury sustained directly from an accident covered in paragraph (a) and independently of all other causes and such loss occurs or commences within the time limits set forth in subparagraphs (1), (2) and (3) below, the carrier will provide, subject to the terms and conditions herein contained, and less any amounts payable under Group Policy Contract GA-23000 of The Travelers Insurance Company or any other medical or insurance policy or plan paid for in its entirety by the carrier, the following benefits:

    (1)     <u>Accidental Death or Dismemberment</u>

The carrier will provide for loss of life or dismemberment occurring within 120 days after date of an accident covered in paragraph (a):

| | |
|---|---|
| Loss of Life | $300,000 |
| Loss of Both Hands | $300,000 |
| Loss of Both Feet | $300,000 |
| Loss of Sight of Both Eyes | $300,000 |
| Loss of One Hand and One Foot | $300,000 |
| Loss of One Hand and Sight of One Eye | $300,000 |
| Loss of One Foot and Sight of One Eye | $300,000 |
| Loss of One Hand or One Foot or Sight of One Eye | $150,000 |

"Loss" shall mean, with regard to hands and feet, dismemberment by severance through or above wrist or ankle joints; with regard to eyes, entire and irrecoverable loss of sight;

No more than $300,000 will be paid under this paragraph to any one employee or his personal representative as a result of any one accident.

104

(2)     Medical and Hospital Care

        The carrier will provide payment for the actual expense of medical and hospital care commencing within 120 days after an accident covered under paragraph (a) of injuries incurred as a result of such accident, subject to limitation of $3,000 for any employee for any one accident, less any amounts payable under Group Policy Contract GA-23000 of the Travelers Insurance Company or under any other medical or insurance policy or plan paid for in its entirety by the carrier.

(3)     Time Loss

        The carrier will provide an employee who is injured as a result of an accident covered under paragraph (a) commencing with 30 days after such accident 80% of the employee's basic full-time weekly compensation from the carrier for time actually lost, subject to a maximum payment of $1,000.00 per week for time lost during a period of 156 continuous weeks following such accident provided, however, that such weekly payment shall be reduced by such amounts as to the employee is entitled to receive as sickness benefits under provisions of the Railroad Unemployment Insurance Act.

(4)     Aggregate Limit

        The aggregate amount of payments to be made hereunder is limited to $10,000,000 for any one accident and the carrier shall not be liable for any amount in excess of $10,000,000 for any one accident irrespective of the number of injuries or deaths which occur in or as a result of such accident. If the aggregate amount of payments otherwise payable hereunder exceeds the aggregate limit herein provided, the carrier shall not be required to pay as respects each separate employee a greater proportion of such payments than the aggregate limit set forth herein bears to the aggregate amount of all such payments.

[Amended paragraph (b) from Agreements dated July 26, 1978 (BLE); July 27, 1978 (BRS); August 25, 1978 (UTU); October 30, 1978 (BMW); October 31, 1978 (RYA); December 2, 1978 (IAM); December 4, 1978 (SMW); December 6, 1978 (RED); and January 23, 2003 (TCU)]

                         -     -     -     -     -

(c)     Payment in Case of Accidental Death:

        Payment of the applicable amount for accidental death shall be made to the employee's personal representative for the benefit of persons designated in, and according to the apportionment required by the Federal Employers Liability Act (45 U.S.C. 51 et seq., as amended), or if no such person survives the employee, for the benefit of his estate.

CONFIDENTIAL     UP-AVINA-002337

(d)    Exclusions:

Benefits provided under paragraph (b) shall not be payable for or under any of the following conditions:

(1)    Intentionally self-inflicted injuries, suicide or any attempt thereat, while sane or insane;

(2)    Declared or undeclared war or any act thereof;

(3)    Illness, disease, or any bacterial infection other than bacterial infection occurring in consequence of an accidental cut or wound;

(4)    Accident occurring which the employee driver is under the influence of alcohol or drugs, or if an employee passenger who is under the influence of alcohol or drugs in any way contributes to the cause of the accident;

(5)    While the employee is a driver or an occupant of any conveyance engaged in any race or speed test;

(6)    While an employee is commuting to and/or from his residence or place of business.

(e)    Offset:

It is intended that this Article is to provide a guaranteed recovery by an employee or his personal representative under the circumstances described, and that receipt of payment thereunder shall not bar the employee or his personal representative from pursuing any remedy under the Federal Employers Liability Act or any other law; provided, however, that any amount received by such employee or his personal representative under this Article may be applied as an offset by the railroad against any recovery so obtained.

(f)    Subrogation:

The carrier shall be subrogated to any right of recovery an employee or his personal representative may have against any party for loss to the extent that the carrier has made payments pursuant to this Article.

The payments provided for above will be made, as above provided, for covered accidents on or after _____ .

106

UP-AVINA_002338

It is understood that no benefits or payments will be due or payable to any employee or his personal representative unless such employee, or his personal representative, as the case may be, stipulates as follows:

"In consideration of the payment of any of the benefits, provided in Article ____ of the Agreement of ____ ,

_____
(employee or personal representative)

agrees to be governed by all of the conditions and provisions said and set forth by Article ____ ."

Savings Clause

This Article ____ supersedes as of ____ , any agreement providing benefits of a type specified in paragraph (b) hereof under the conditions specified in paragraph (a) hereof, provided, however, any individual railroad party hereto, or any individual committee representing employees party hereto, may be advising the other party in writing by ____ , elect to preserve in its entirety an existing agreement providing accident benefits of the type provided in this Article ____ in lieu of this Article ____ .

- - - - -

MEMORANDUM OF UNDERSTANDING dated May 18, 1972, signed by Mr. William H. Dempsey, Chairman, National Railway Labor Conference and the Chiefs of all of the organizations concerned:

In connection with the provisions of the several national agreements to which the organizations signatory hereto are party, relating to payments to employees injured in off-track vehicle accidents under certain circumstances:

It is agreed that existing time-limit-on-claims rules in national agreements or in local schedule agreements do not apply to claims filed under such off-track vehicle accident provisions. Accordingly, the rights of neither the employees nor the railroads will be prejudiced by a failure to comply with a provision of such rules.

Railroads parties to such off-track vehicle accident provisions will each designate an officer with whom any claims arising under such provisions are to be handled, and will notify General Chairmen of the officer designated.

107

CONFIDENTIAL

UP-AVINA-002339

A G R E E M E N T
between
UNION PACIFIC RAILROAD COMPANY
(South-Central - Northwestern Districts)
and
TRANSPORTATION COMMUNICATION EMPLOYEES UNION
TRAINING PROGRAM - CHIEF OPERATOR

1.      This supersedes and cancels agreement dated at Salt Lake City, Utah, November 4, 1953, between the Union Pacific Railroad Company, South-Central and Northwestern Districts, and the Transportation Communication Employees Union.

2.      In order to afford employes the opportunity to qualify for position of Chief Operator in General Offices the following Training Program is adopted under which employes may secure the requisite training for those positions. Bulletins will be posted on the South-Central and Northwestern Districts for applications from employes holding positions included in the scope of the Telegraphers' Agreement who desire to avail themselves of the opportunity to qualify for positions of Chief Operator Printer Mechanician in General Telegraph Offices. Applicants will be required to undergo written and oral examination to demonstrate their qualifications.

3.      Superintendent Communications will select from the applicants, employes for training. However, when none of the applications received in response to the bulletins are acceptable to the Superintendent Communications, the assignments to the bulletined vacancies will be made by the Superintendent Communications by the employment of other personnel. Accepted personnel will be assigned eight hours per day, five days per week exclusive of Saturday, Sunday and holidays and compensated at the rate of $2.8078 per hour.

4.      An employe selected for this training shall be considered on leave of absence from his assignment.

5.      Employes who are not considered qualified to continue in the training program, will revert to their assigned positions.

6.      Employes who have completed the training program must accept assignment of Traveling Relief Chief Operator Printer Mechanician when such positions are available. If no position is available, employe will return to former assignment, or if no former assignment, to the extra board. However, when a position as Traveling Relief Chief Operator-Printer Mechanician becomes available, the employe will be required to accept assignment to such position.

7.      Employes assigned to training program may bid for positions bulletined while in training but, if successful, will not be placed on the position unless released by the Superintendent Communications.

108

CONFIDENTIAL
UP-AVINA 002340

This agreement shall be effective March 11, 1966, and shall continue in effect thereafter subject to change or termination upon thirty days written notice served by either party upon the other.

Dated at Omaha, Nebraska, this 11th day of March, 1966.

FOR THE EMPLOYES:

A. S. HERRERA
General Chairman


APPROVED:


S. Z. PLACKSIN
Vice President

FOR THE CARRIER:

F. C. WOOD
Asst. to Vice President-
South-Central District

N. B. BECKLEY
Asst. to Vice President-
Northwestern District

C. O. JETT
Superintendent Communications



109

CONFIDENTIAL

A G R E E M E N T
between
UNION PACIFIC RAILROAD COMPANY
(Eastern District)
and
TRANSPORTATION-COMMUNICATION EMPLOYEES UNION

1.     This supersedes and cancels Agreements dated October 28, 1954, and June 1, 1954, between the Union Pacific Railroad Company, Eastern District and the Transportation-Communication Employees Union.

2.     In order to afford employes the opportunity to qualify for position of Chief Operator Printer Mechanician in General Telegraph Offices, the following Training Program is adopted under which employes may secure the requisite training for these positions.  Bulletins will be posted on the Eastern District for applications from employes holding positions included in the scope of the Telegraphers' Agreement who desire to avail themselves of the opportunity to qualify for positions of Chief Operator Printer Mechanician in General Telegraph Offices.  Applicants will be required to undergo written and oral examination to demonstrate their qualifications.

3.     Superintendent Communications will select from the applicants, employes for training.  However, when none of the applications received in response to the bulletins are acceptable to the Superintendent Communications, the assignments to the bulletined vacancies will be made by the Superintendent Communications by the employment of other personnel.  Accepted personnel will be assigned 8 hours per day, 5 days per week exclusive of Saturday, Sunday and holidays and compensated at the rate of $2.8078 per hour.

4.     An employe selected for this training shall be considered on leave of absence from his assignment.

5.     Employes who are not considered qualified to continue in the training program, will revert to their assigned positions.

6.     Employes who have completed the training program must accept assignment of Traveling Relief Chief Operator Printer Mechanician when such positions are available.  If no position is available, employe will return to former assignment, or if no former assignment, to the extra board.  However, when a position as Traveling Relief Chief Operator Printer Mechanician becomes available, the employe will be required to accept assignment to such position.

7.     Employes assigned to training program may bid for positions bulletined while in training but, if successful, will not be placed on the position unless released by the Superintendent Communications.

110

CONFIDENTIAL                                            UP-AVINA-002342

This agreement shall be effective March 11, 1966, and shall continue in effect thereafter subject to change or termination upon thirty days written notice served by either party upon the other.

Dated at Omaha, Nebraska, this 11th day of March, 1966.

FOR THE EMPLOYES:                         FOR THE CARRIER:

F. V. GOLDSMITH                           N. T. DELONG
General Chairman                          Asst. to Vice President-
                                          South-Central District

APPROVED:

S. Z. PLACKSIN                            C. O. JETT
Vice President                            Superintendent Communications



111

CONFIDENTIAL                                    UP-AVINA 002343

# A G R E E M E N T

between

## UNION PACIFIC RAILROAD COMPANY

(Eastern, South-Central and
Northwestern Districts)

and

## TRANSPORTATION-COMMUNICATION EMPLOYEES UNION

<u>TRAVELING RELIEF CHIEF OPERATOR PRINTER MECHANICIAN</u>

    1.    It is agreed that positions of Traveling Relief Chief Operator Printer Mechanician will be established at General Telegraph offices to be designated by the Superintendent Communications to provide relief and fill vacancies in General Telegraph Offices as required.

    2.    The assignment to the position of Traveling Relief Chief Operator Printer Mechanician will be made by the Superintendent Communications from employes who have satisfactorily completed training under the program for training Chief Operator Printer Mechanicians.

    3.    When available for duty at assigned headquarters and not filling a vacancy, the incumbent of the Traveling Relief Chief Operator Printer Mechanician will be compensated for 8 hours per day at the Assistant Chief Operator Printer Mechanician rate in General Telegraph Offices where classification exists, and at the Chief Operator Printer Mechanician rate at other offices for each calendar day not to exceed 40 hours per work week. Work week shall mean a period of seven consecutive days starting with Monday.

    4.    The senior incumbent of the Traveling Relief Chief Operator Printer Mechanician position will be required to accept assignment to the first bulletined vacancy in that general telegraph office for which no application from qualified employe is received.

    5.    Employes assigned under the preceding paragraph to bulletined positions in General Telegraph Offices on seniority districts other than the district on which they hold seniority will be considered on leave of absence from their own seniority district and will accumulate seniority on that district to which assigned; provided employes so assigned shall have the right to bid for positions in General Telegraph Offices on their home seniority district until they secure a position; provided further that any employe who fails to bid on a vacancy in a General Telegraph Office on his home seniority district will have his seniority on such district terminated. Should an employe be a successful bidder on his home seniority district, his seniority on other than his home seniority district will thereafter be terminated.

112

6. Fifteen calendar days notice will be required to affect change in headquarters.

This agreement shall be effective March 11, 1966, and shall continue in effect thereafter subject to change or termination upon thirty days written notice served by either party upon the other.

Dated at Omaha, Nebraska, March 11, 1966.

FOR THE EMPLOYES:                    FOR THE CARRIER:

F. V. GOLDSMITH                      N. T. DELONG
General Chairman                     Asst. to Vice President-ED

A. S. HERRERA                        F. C. WOOD
General Chairman                     Asst. to Vice President-SCD

                                     N. B. BECKLEY
                                     Asst. to Vice President-
                                     Northwestern District

APPROVED:

S. Z. PLACKSIN                       C. O. JETT
Vice President                       Superintendent Communications

(Revised effective 5-16-80)

113

CONFIDENTIAL

UP-AVINA_002345

A G R E E M E N T

between

UNION PACIFIC RAILROAD COMPANY

(Eastern, South-Central and
Northwestern Districts)

and

TRANSPORTATION-COMMUNICATION EMPLOYEES UNION

<u>MANAGERS, GENERAL TELEGRAPH OFFICES</u>

1.    Vacancies in position of Manager, General Telegraph Office, will be bulletined on office bulletin and the senior qualified applicant will be placed on the position, but will be considered on temporary assignment for a period not exceeding 90 days.

2.    If at any time prior to the expiration of the 90-day period set forth in Paragraph 1, Superintendent Communications considers the applicant has amply demonstrated that he is qualified for the position, or if the Superintendent Communications takes no action in 90 days, the assignment will become permanent.  If the Superintendent Communications determines at any time prior to the expiration of the 90-day period set forth in Paragraph 1 that the applicant is not or cannot become qualified, the assignment will be annulled and the applicant will revert to his former assignment.

3.    Before an applicant is removed from such temporary assignment, the Superintendent Communications will confer with the General Chairman and review the reasons why applicant is not considered qualified.  However, the final decision as to the applicant's qualification will be made by the Superintendent Communications.

4.    This agreement shall be effective March 11, 1966, and shall continue in effect thereafter subject to change or termination upon thirty days written notice served by either party upon the other.

Dated at Omaha, Nebraska, March 11, 1966.

FOR THE EMPLOYES:                         FOR THE CARRIER:

F. V. GOLDSMITH                           N. T. DELONG
General Chairman                          Asst. to Vice President-ED

114

CONFIDENTIAL                                                    UP-AVINA 002346

A. S. HERRERA
General Chairman

F. C. WOOD
Asst. to Vice President-SCD

N. B. BECKLEY
Asst. to Vice President-
Northwestern District

APPROVED:

S. Z. PLACKSIN
Vice President

C. O. JETT
Superintendent Communications

115

CONFIDENTIAL
UP-AVINA_002347

# A G R E E M E N T

between the

## UNION PACIFIC RAILROAD COMPANY

and the

## BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION HELPERS

### UNIFORMS

It is agreed as follows:

Section 1. "Uniforms" where used in this agreement shall be understood to mean a uniform cap, coat or jacket, vest and trousers or any one or more of such articles of wearing apparel, as determined by the specifications prescribed by the Company in any given occupation, but the term "uniform" shall not include any article of wearing apparel used by the employes of the Company, subject to this agreement, other than the articles hereinbefore specified.

Section 2. So long as the Company requires certain employes included within the scope of the agreement with the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes to wear a uniform while on duty of specifications prescribed by the Company, the Company will, from and after the effective date hereof, when it becomes necessary for such employes to secure a new uniform, bear the entire cost of the cap at 50% of the cost of the balance of such uniform, as the same is herein defined, not to exceed one per year.

Section 3. All uniforms purchased in which the Company participates in the cost shall be in conformity with specifications prescribed by the Company. Prior to the purchases of any uniforms hereunder, in which the Company bears 50% of the cost as herein provided, the employe involved will sign an order authorizing the Company to deduct from his or her wages in not to exceed two months following the date on which the uniform is secured, the said employe's 50% of the cost of said uniform. The Company will pay the clothier direct the entire cost.

Section 4. When new uniforms are purchased for employes who are required to wear uniform trousers, two pair may be obtained if desired on each such occasion. For seasons of extreme hot weather, a coat of light material conforming with specifications may be purchased separately by employes where the specifications of the Company require the wearing of a coat.

Section 5. Employes subject to this agreement who are required to wear a uniform, as that term is herein defined, will assume and pay the entire cost of shirts, neckties and shoes of a type specified by the Company, to be worn while on duty.

116

Section 6.  It is understood that uniforms will be worn only while on duty and they are not to be used for other occasions when it can be avoided.

Section 7.  In the event it becomes necessary for an employe subject to this agreement to buy more than one uniform per year in order to maintain a presentable appearance in the service in which engaged, the entire expense of such additional uniforms in any one year shall be borne by the employe purchasing more than one uniform in any one year; provided, however, that in case a uniform becomes worn or damaged in service through no fault of the employe, the superintendent may authorize the purchase of a replacement uniform on the same conditions as hereinbefore specified.

Section 8.  The Company will supply, free of charge, badges as the Company by its specifications may require to be work while on duty.

Section 9.  The Company will bear the cost of cleaning and pressing uniforms, reasonably required to keep said uniforms in a neat and clean condition.

Section 10.  The Company reserves the right to prescribe the type of uniform to be worn by employes subject to the aforesaid agreement, at all times while on duty or to discontinue the use by such employes, or any of them, of uniforms while on duty.

Section 11.  In the event the Company elects to discontinue its requirement that uniforms be worn by any of the classes of employes covered by the aforesaid agreement, thereafter the employes so affected will furnish, at their expense, appropriate clothing to be worn in the performance of their duties and such discontinuance of requirement shall not be used as a basis by the employes for a request for an increase in their compensation.

Section 12.  This Agreement shall take effect on the 1st day of January, 1949, and shall continue in effect until terminated by written notice given by either party hereto to the other party on any date in such notice stated, not less, however, than thirty days subsequent to the date of such notice.

Dated at Omaha, Nebraska, this 30th day of December, 1948.

UNION PACIFIC RAILROAD COMPANY:

By      A. J. VANDERCREEK
        Assistant Vice President-Personnel

Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes:

By      K. J. SALYARDS
        General Chairman, Eastern District

By      J. R. GRAYSON
        General Chairman, Western District

117

CONFIDENTIAL

UP-AVINA-002349

STANDARD FORMS TO BE USED

PURSUANT TO RULE 70

FOR ADMINISTERING THE

TCU AGREEMENT



118

**BULLETIN**

(Advertising New Position or Vacancy)

Place _____ _____ _____
Date _____ _____ File___ _____
Bulletin No. _____ _____ _____
Seniority Zone No. ___ _____

TO EMPLOYEES CONCERNED:

The following position is hereby advertised for applications or bids in accordance with Rule 11 of this Agreement. Applications or bids must be submitted in duplicate to the official whose name is signed to this bulletin no later than noon of the tenth day from date bulletin is posted. A copy of the application must be furnished by the employee to the Local Chairman.

Location........................................................................................................................
Title Of Position............................................................................................................
Rate of Pay...................................................................................................................
Wage Grade..................................................................................................................
Hours of Assignment.....................................................................................................
Days of Assignment ......................................................................................................
Days of Rest.................................................................................................................
Meal Period Assignment ...............................................................................................
New Position or Vacancy ..............................................................................................
Vacated by ...................................................................................................................
Permanent or Temporary..............................................................................................
Duration Temporary Period...........................................................................................

Description of Duties.....................................................................................................
.......................................................................................................................................
.......................................................................................................................................

(Signed)_____ _____ _____
                                        Name of Official

                        _____
                                                        Title

cc:    To Local Chairman
cc:    General Chairman

119

CONFIDENTIAL    Case 4:19-cv-00480-RK    Document 70-3    Filed 03/15/21    Page 127 of 196    UP-AVINA-002351

NOTICE

(Assignment of New Position or Vacancy of
        Thirty Days or More)

Place _____
Date _____ File_____
Bulletin No. _____
Seniority Zone No. _____

TO EMPLOYEES CONCERNED:

        The following position, which was advertised under my

Bulletin No. ...............................................................................................................................

Dated...........................................................................................................................................

Location......................................................................................................................................

Title of Position........................................................................................................................

has been awarded to ...........................................................................whose

former position was...............................................................................................................

(Signed) _____
                                    Name of Official

                        _____
                                            Title

cc:     To Local Chairman
cc:     General Chairman

120

CONFIDENTIAL
UP-AVINA 002352

SAMPLE

## NOTICE

(Change in Starting Time or Rest Days)

Place _____ _____
Date _____ File_____
Bulletin No. _____
Seniority Zone No. ___ _____ ____

TO EMPLOYEES CONCERNED:

        Position occupied by .......................................................................................Title of

.........................................................................................present assigned starting  time

.................................................................with rest days. . . . . . . . . . . . . . . . . is hereby changed
        AM   or   PM

effective . . . . . . . . . . . . . . . . . . . .to start at . . . . . . . . . . . . . . . . . . . ........................... and/or

rest days changed to.............................................................................................................

                                (Signed) _____

                                                    Name of Official

                                                    _____

                                                                        Title

cc:     To Local Chairman
cc:     General Chairman

121

Case 4:19-cv-00480-RK   Document 70-3   Filed 03/15/21   Page 129 of 196
UP-AVINA-002353

NOTICE

(Abolishing Positions or Reducing Forces)

Place _____
Date _____ File_____
Bulletin No. _____
Seniority Zone No. _____

TO EMPLOYEES CONCERNED:

    Position occupied by ...................................................................................Title of

.................................................. Rate . . . . . . . . . . . . . . . . . . Wage Grade. . . . . . . . . .

Located ......................................................................................... is abolished account

...................................................................................................................................

effective with termination of assignment on ....................................................................

Date _____

(Signed) _____
                    Name of Official

_____
                    Title

cc:    To Local Chairman
cc:    General Chairman

122

CONFIDENTIAL                                                    UP-AVINA_002354
Case 4:19-cv-00480-RK   Document 70-3   Filed 03/15/21   Page 130 of 196

### UNION PACIFIC RAILROAD COMPANY

Application for Bulletined Position

_____, 20_____
Location                Date

Mr. _____

I hereby make application for the following position:

Position Bulletin No.........................................Date. . . . . . . . . . . . . . . . . . . . . . . . . . . , 20. . . . .

Position.....................................................................................................................................

Location...............................................................................Rate. . . . . . . . . . . . . . . .

My qualifications for this position are as follows:.......................................................................

...............................................................................................................................................

...............................................................................................................................................

_____
Signature of Applicant

Seniority Date _____

cc:    To Local Chairman

123

CONFIDENTIAL                                                                    UP-AVINA_002355

NOTICE OF
TEMPORARY POSITION OR VACANCY

Rule 12(c) - TCU Agreement

12(c) Notice No. . . . . . . . . . .
or Job No.. . . . . . . . . . .

Title of Position.................................................................................................................................

Hours of Assignment.........................................................................................................................

Rest Days.........................................................................................................................................

Rate of Pay.......................................................................Wage Grade. . . . . . . . . . . . . . . . . . . .

First day position to be filled .............................................................................................................

Duration...........................................................................................................................................

_____
Name of Official

_____
Title

Posted _____M _____, 20____

cc:    To Local Chairman

124

UNION PACIFIC RAILROAD COMPANY
APPLICATION FOR
TEMPORARY 12(c) POSITION OR VACANCY
TCU AGREEMENT

_____, 20_____
Location              Date

_____
(TIME)                    (AM OR PM)

Mr. _____

    I hereby make application for the following position:

12(c) Notice No .........................................................................Date. . . . . . . . . . . . . . . . . , 20 . . . .

Position.................................................................................................................................................

Location.......................................................Rate. . . . . . . . . . . . . . Wage Grade . . . . . . . . . . .

My qualifications for this position are as follows:

.............................................................................................................................................................

.............................................................................................................................................................

.............................................................................................................................................................

_____
Signature of Applicant

Seniority Date _____

cc:    To Local Chairman

125

CONFIDENTIAL    UP-AVINA-002357

ASSIGNMENT
TEMPORARY POSITION OR VACANCY

RULE 12(c) - TCU AGREEMENT

Place _____
Date _____ File_____
Bulletin No. _____
Seniority Zone No. _____

TO EMPLOYEES CONCERNED:

The following temporary position, which was advertised under Rule 12(c)

No. .............................................................................................................................................

Dated..........................................................................................................................................

Location.......................................................................................................................................

Title of position ..........................................................................................................................

has been awarded to  ..............................................................................whose

former position was.....................................................................................................................

(Signed) _____
Name of Official

_____
Title

cc:     To Local Chairman

126

CONFIDENTIAL     Case 4:19-cv-00480-RK    Document 70-3    Filed 03/15/21    Page 134 of 196     UP-AVINA_002358

SAMPLE                                                          FORM 9

## EMPLOYEE'S REQUEST TO DISPLACE

_____, 20____
Location              Date

_____
(Supervisor)

On account........................................................................................................................

.........................................................................................................................................

desire to exercise my seniority rights by displacing ........................................................

.........................................................................................................................................

on Job No...........................................................................................................................

at .......................................................................................................................................

_____
(Signed)

Seniority Date _____

APPROVED:

_____

cc:    Local Chairman
cc:    Employee affected

127

CONFIDENTIAL    Case 4:19-cv-00480-RK    Document 70-3    Filed 03/15/21    Page 135 of 196    UP-AVINA 002359

FORM 10

FILING ADDRESS

Rule 18 TCU Agreement

_____, 20____
(Location)                    Date

_____ (2 copies)
(Bulletining Officer)

Check all applicable boxes

Account displaced close of shift ................................................................. 20. . . . . .

I am filing my address in accordance with Rule 18.

☐     I elect to be recalled for bulletined position in the Seniority Zone.

☐     I elect to be recalled for bulletined position only at ...................................................
                                                                              (Location)

☐     I desire to return to service on positions or vacancies of less than 30 days duration.

☐     Furloughed in accordance with the provisions of Job Protection Agreement as amended
        effective July 31, 2006.

_____
(Signature of Employee)

_____
(Address)                  Phone)

cc:     To Local Chairman (2 copies)

128

CONFIDENTIAL
UP-AVINA-002360

CHANGE OF ELECTION

Rule 18 TCU Agreement

_____, 20 _____
Location                   Date

_____ (2 copies)
        (Bulletining Officer)

Cancel my election of .........................................................................................for recall:
(Date)


I now desire to be recalled only to Bulletined Positions in Zone No. ................................................

I am (am not) available for temporary vacancies of less than 30 days at ......................................


_____
(Signature of Employee)

_____
(Address                    Phone)

_____
Social Security No.

cc:   To Local Chairman (2 copies)

129

CONFIDENTIAL   Case 4:18-cv-00480-RK   Document 70-3   Filed 03/15/22   Page 137 of 196   UP-AVINA-002361

FORM 12

Form to be used by Employee Requesting
Bulletins in other Seniority Zones

Applications must be made to officer designated to administer bulletin process in another Zone, with copy to the Bulletining Officer and Supervising Officer in the Zone in which currently employed, and the applicable Local and General Chairman.

_____
(Date)

_____
(Name, Position and Location of Bulletining Officer)

I desire to receive copies of bulletins as provided by Rule 15 of Agreement with the Transportation Communications Union for the position in Zone No. ................................................

I am now employed on the position of ................................................................................

.................................................................................. at. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(Location)

Zone No. . . . . . . . . ., and hold seniority date.................................................................... I have

held the following positions:   (insert clerical, stenographic, typist, comptometer operator, or other positions held).

_____
(Signature of Applicant)

_____
(Social Security No.)

_____
(Home Address)

_____
(Home Phone)

_____
(Company Phone)

cc:    Supervising Officer
cc:    Bulletining Officer in Zone where employed
cc:    To Local Chairman
cc:    To General Chairman

130

CONFIDENTIAL    Case 4:19-cv-00480-RK    Document 70-3    Filed 03/15/21    Page 138 of 196    UP-AVINA_002362

## ESTABLISHMENT OF SENIORITY

_____, 20____
<br>Location                     Date

Mr. _____
<br>(General Chairman)

Dear Sir:

In accordance with the provisions of Rule 5 (Seniority Rosters), this is to advise

that since the first of ........................................ , 20. . . ., new employees were hired on

Seniority Zone ............................................    (. . . . . . . . . . . . . . . . . .),      together with the other
<br>Name of Department

data required by Rule 5 as shown below:

1.    Name
2.    Home Address
3.    Location of Employment
4.    Date first service performed
5.    Seniority Zone Roster Employed

(Signed) _____
<br>Name of Official

_____
<br>Title

131

UP-AVINA

CONFIDENTIAL          Case 4:19-cv-00480-RK    Document 70-3    Filed 03/15/22    Page 139 of 196          UP-AVINA-002363

April 30, 1980

E-013-297-1-S

Mr. D. D. Willey
General Chairman, BRAC
216 Barker Building
Omaha, Nebraska  68120

Mr. P. J. Meier
General Chairman, BRAC
2087 Belaire Drive
Salt Lake City, Utah  84109

Gentlemen:

    This has reference to our discussion in conference today concerning the updating of the schedule agreement and with particular reference to the application of Rule 40 when the incumbents of a number of identically titled positions with identical duties are worked on a holiday.

    It is understood in such cases the senior employes on each shift shall have preference in filling such positions.

                Yours truly,

                /S/ P. A. JORDAN
                Vice President
                Labor Relations and Personnel

/S/ D. D. WILLEY
General Chairman

/S/ P. J. MEIER
General Chairman

APPROVED:

/S/ F. J. KROLL
International President

132

CONFIDENTIAL      UP-AVINA 002364

April 30, 1980

E-013-297-1-S

Mr. D. D. Willey
General Chairman, BRAC
216 Barker Building
Omaha, Nebraska 68120

Mr. P. J. Meier
General Chairman, BRAC
2087 Belaire Drive
Salt Lake City, Utah 84109

Gentlemen:

This has reference to our discussion in conference today concerning the updating of the Schedule Agreement and with particular reference to the provisions of Section 3 of Rule 40 which sets forth the qualifying requirements for holiday pay.

This will confirm our advice to you and our understanding that since the changes made in November 1975 to eliminate holidays in determining the hourly and daily rates of monthly-rated positions, the qualifying requirements as set forth in Section 3 of Rule 40 are not applicable to such employes and such provisions will remain inapplicable so long as this method is used in determining the hourly and daily rates of monthly-rated positions.

Yours truly,

/S/ P. A. JORDAN
Vice President
Labor Relations and Personnel

/S/ D. D. WILLEY
General Chairman

/S/ P. J. MEIER
General Chairman

APPROVED:

/S/ F. J. KROLL
International President

133

CONFIDENTIAL
UP-AVINA_002365

May 1, 1980

E-013-297-1-S

Mr. D. D. Willey
General Chairman, BRAC
216 Barker Building
Omaha, Nebraska 68120

Mr. P. J. Meier
General Chairman, BRAC
2087 Belaire Drive
Salt Lake City, Utah 84109

Gentlemen:

This has reference to our discussion in conference March 25, 1980, relating to formal training programs, similar to the training established for General Clerk procedures in yard offices.

With respect to the training of employees who exercise seniority rights to positions subject to a formal training program, it is agreed:

1. An employee with the fundamental knowledge of job-related technical skills who makes application for or exercises seniority to a position requiring such skills may be given a test to determine the employee's level of skills. An employee having sufficient fitness and ability as defined by Rule 8 will be given training for a maximum of thirty (30) working days.

2. An employee who demonstrates reasonable progress will be placed in a formal training program for a reasonable period of time up to eight (8) weeks, or longer at the discretion of the immediate supervisor.

3. In the event an employee fails to demonstrate reasonable progress, or when it is obvious an employee will be unable to qualify, such employee may be disqualified pursuant to the provisions of Rule 20(b).

4. After successful completion of the formal training program, the employee will be assigned to the position subject to the provisions of Rules 8 and 20.

134

5. It is the Company's intent to apply the term "qualifications" as broadly as possible in order to enable an employee who is reasonably qualified, after completion of the training program an opportunity to demonstrate ability to perform and assume the duties and responsibilities of the position.

Yours truly,

/S/ P. A. JORDAN
Vice President
Labor Relations and Personnel

/S/ D. D. WILLEY
General Chairman

/S/ P. J. MEIER
General Chairman

APPROVED:

/S/ F. J. KROLL
International President



135

APPENDIX "Q"

October 12, 1993
297-1

Mr. J. L. Quilty
General Chairman, TCU
2820 South 87th Avenue
Omaha, NE 68124

Dear Sir:

This has reference to the agreement dated May 17, 1980 in disposition of the Scope Rule Notice.

The Carrier will advise the Organization of any position listed in Attachment 2 which, upon conversion, will be designated as All Services Rendered (ASR). Other than this, however, the establishment of additional ASR positions will require an agreement between the parties.

It is understood that all future wage adjustments for ASR positions will be made in accordance with the formula set forth in the National Salary Plan. Rate of pay adjustments on such positions will be subject to the provisions of Rule 26 of the Agreement.

Yours truly,

D. D. MATTER
Senior Director, LR/Non-Ops

AGREED:

_____
J. L. Quilty
General Chairman

APPROVED:

_____
J. L. Gobel
International Vice President, TCU

136

October 12,1993
297-1

Mr. J. L. Quilty
General Chairman, TCU
2820 South 87th Avenue
Omaha, NE  68124

Dear Sir:

This has reference to the agreement dated May 17, 1980 in disposition of the Scope Rule Notice.

This will confirm our understanding today that the method of adjusting the rate of pay for 1-A (ASR positions) will be in accordance with the formula set forth in the National Salary Plan.

Yours truly,

D. D. MATTER
Senior Director, LR/Non-Ops

AGREED:

_____
J. L. Quilty
General Chairman

APPROVED:

_____
J. L. Gobel
International Vice President, TCU

137

CONFIDENTIAL

UP-AVINA_002369

May 12, 1980
E-013-297-1-S

Mr. D. D. Willey
General Chairman, BRAC
216 Barker Building
Omaha, Nebraska  68120

Mr. P. J. Meier
General Chairman, BRAC
2087 Belaire Drive
Salt Lake City, Utah  84109

Gentlemen:

     This has reference to the Agreement dated April 17, 1980 in disposition of your Scope Rule Notice.

     The Carrier will notify the Organization when a position listed for conversion is abolished when vacated.  The notification will include date of abolishment, a description of the position by title and location, and disposition of the work formerly assigned to the abolished position.

                              Yours truly,

                              /S/ P. A. JORDAN
                              Vice President
                              Labor Relations and Personnel

/S/ D. D. WILLEY
General Chairman

/S/ P. J. MEIER
General Chairman

APPROVED:

/S/ F. J. KROLL
International President

138

CONFIDENTIAL
UP-AVINA 002370

October 12, 1993
297-1

Mr. J. L. Quilty
General Chairman, TCU
2820 South 87th Avenue
Omaha, NE 68124

Dear Sir:

This has reference to the Agreement dated April 17, 1980 in disposition of the Scope Rule Notice.

This will confirm our understanding that the titles of those D-2 positions marked for reclassification will be subject to change upon reclassification.

Yours truly,


D. D. MATTER
Senior Director, LR/Non-Ops

AGREED:

_____

J. L. Quilty
General Chairman

APPROVED:

_____

J. L. Gobel
International Vice President, TCU


139

CONFIDENTIAL
UP-AVINA_002371

April 29, 1981

Mr. D. D. Willey
General Chairman, BRAC
216 Barker Building
Omaha, Nebraska  68120

Mr. P. J. Meier
General Chairman, BRAC
2087 Belaire Drive
Salt Lake City, Utah  84109

Gentlemen:

This has reference to the provisions of Rule 12 of Agreement as amended May 16, 1981, and with particular reference to Rule 12 relating to the filling of short vacancies.

As a matter of clarification, it is not intended to change existing practices in posting and/or filling short vacancies described in Rule 12.  Existing practices, however, may be changed by local understandings to accommodate changing conditions.

Yours truly,

/S/ R. D. ROSENBOHM
Director Labor Relations/Non-Ops

/S/ D. D. WILLEY
General Chairman, BRAC

/S/ P. J. MEIER
General Chairman, BRAC

140



ADDENDUM TO DUES DEDUCTION AGREEMENT

between

UNION PACIFIC RAILROAD COMPANY

and

BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS
FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYES

In accordance with the provisions of Article X of the National Agreement signed January 13, 1979, between Carriers represented by the National Railway Labor Conference and the employes of said Carriers represented by the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes, the parties hereby amend the Dues Deduction Agreement of September 20, 1973, to the extent necessary to provide for the deduction of employes' voluntary political contributions on the following terms and bases:

1(a)    Subject to the terms and conditions hereinafter set forth, and in accordance with the September 20, 1973 Dues Deduction Agreement, the Carrier will deduct from the wages of employes voluntary political contributions upon their written authorization in the form (individual authorization form) agreed upon by the parties hereto, copy of which is attached, designated "Attachment A" and made a part hereof.

(b)    Voluntary political contributions will be made monthly from the compensation of employes who have executed a written authorization providing for such deductions. The first such deduction will be made in the month following the month in which the authorization is received. Such authorization will remain in effect for a minimum of twelve (12) months and thereafter until cancelled by thirty (30) days advance written notice from the employe to the Brotherhood and the Carrier by Registered Mail. Changes in the amount to be deducted must be on the same basis as provided in the September 20, 1973 Dues Deduction Agreement and will be limited to no more often than once every three months.

2.    The General Chairman or his designated representative shall furnish the Carrier an initial statement (Attachment B) by lodges, in alphabetical order and certified by him, showing the amounts of deductions to be made from each member, such statement to be furnished together with individual authorization forms to cover, and payroll deductions of such amounts will commence in the month immediately following. Subsequent monthly deductions will be based on the initial statement plus a monthly statement (Attachment C) showing additions and/or deletions furnished in the same manner as the initial statement required hereinabove. If no changes are reported, the most recent list on file with the Carrier shall be used for the purpose of this section.

141

CONFIDENTIAL                                                        UP-AVINA 002373

3. Monthly voluntary political contribution deductions will be made from wages at the same time (accidentally deleted - need to fill in this sentence) paycheck. The following payroll deductions will have priority over deductions covered by this agreement:

(a) Federal, state and municipal taxes, and other deductions required by law, including garnishments and attachments and any other prior liens which the Carrier must respect.

(b) Amounts due the Carrier.

(c) Union Pacific Railroad Employes Hospital Association; and premiums on group insurance plans.

(d) BRAC membership dues.

4. Concurrent with making remittance to the Organization of monthly membership dues, the Carrier will make separate remittance of voluntary political contributions to the Secretary-Treasurer of the Railway Clerks Political League, together with a list prepared in triplicate for each General Chairman and the Secretary-Treasurer of the Railway Clerks Political League and containing an alphabetical listing of the names, social security account numbers, or payroll identification numbers, amount of deductions and the total amount of deductions made by each General Chairman's constituents.

5. The requirements of this agreement shall not be effective with respect to any individual employe until the employer has been furnished with a written authorization of assignment of wages of such monthly voluntary political contribution.

Signed at Omaha, Nebraska this 23rd day of April, 1979:

FOR:                                              FOR:
BROTHERHOOD OF RAILWAY, AIRLINE                   UNION PACIFIC
AND STEAMSHIP CLERKS, FREIGHT                     RAILROAD COMPANY
HANDLERS, EXPRESS AND STATION EMPLOYES

General Chairman,                                 Vice President-Labor
Eastern District                                  Relations

General Chairman,                                 Director Labor
Western District                                  Relations-System

142

CONFIDENTIAL
UP-AVINA-002374

<u>VOLUNTARY PAYROLL DEDUCTIONS</u>

<u>RAILWAY CLERKS POLITICAL LEAGUE</u>

TO: _____

_____

SPACE FOR LABEL SHOWING NAME, ADDRESS,
SYSTEM BOARD AND LOCAL LODGE NUMBER.

_____          _____
            Department                                                Work Location

       I hereby authorize and direct my employes ................................................................,
to deduct from my pay the sum of $. . . . . . . . . . . . for each month in which compensation is due
me, and to forward that amount to the Railway Clerks Political League.  This authorization is
voluntarily made on the specific understanding that the signing of this authorization and the making
of payments to the Railway Clerks Political League are not conditions of membership in the Union or
of employment with the Carrier' that the Railway Clerks Political League will use the money it
receives to make political contributions and expenditures in connection with Federal, State and
Local elections.

       It is understood that this authorization will remain in effect for a minimum of 12 months; and,
thereafter, I may revoke this authorization at any time by giving the Carrier and the Brotherhood 30
days advance written notice of my desire to do so.

Signed at _____

This _____ day of _____, 20___.

_____
(personal signature)

_____
(Social Security No.)

143

CONFIDENTIAL                                                      UP-AVINA-002375

Rule 48

TRAIN ORDERS
(Not Applicable on The Texas and Pacific Railway Company)

(a)      No other employee except train dispatcher, and those covered by this Agreement, will be permitted to handle train orders, except that in an emergency the conductor may copy a train order from the train dispatcher and if there be a telegrapher employed at the point where the conductor copied the order, he (the telegrapher) will be paid a call (three hours at the pro rata hourly rate).

(b)      Emergency as herein specified shall include casualties or accidents, engine or equipment failures, wrecks, obstruction of tracks, washouts, tornadoes, storms, slides, high water or unusual delays due to hot boxes or breaks-in-two that could not have been anticipated by the dispatcher before train departed from last open train order office which would result in serious delay to traffic.

(c)      It is recognized that radio facilities constitute another media of communication similar to the telephone, and that this agreement applies regardless of the method of communication used.

(d)      When train orders, or communications which serve the purpose of train orders, are handled by persons other than covered by this agreement and train dispatchers at locations where no employee covered by this agreement is employed, other than under the exceptions set forth in paragraph (b) above, a telegrapher designated by the division chairman will be allowed a call - three hours at the minimum telegrapher pro rata rate applicable on the seniority district.

144

RULE 48-A
TRAIN ORDERS
(Applicable on The Texas and Pacific Railway Company only)

(1)     No employee other than covered by this Agreement and train dispatchers will be permitted to handle train orders at telegraph or telephone offices where an operator is employed and is available or can be promptly located, except in an emergency, in which case the telegrapher will be paid for the call.  The employee entitled to call will be notified.

(2)     A telegrapher will be called to handle train orders and instructions pertaining to the operation of a work train typing up or leaving from a station where a telegrapher is employed, but not on duty.  The telegrapher will be paid in accordance with the call rule.

(3)     Should non-telegraph agents be used to handle train orders on any day, they will be paid for eight (8) hours' service for that day at the minimum Agent Telegrapher's rate on the Division.

(4)     If instructed by Train Dispatcher or other authority to clear train or trains before going off duty, leaving clearance card and/or orders in some specified place for those to whom addressed, the employee shall be paid as provided in the call rule.

(5)     If train orders are handled by persons other than those specified in Paragraph (1) of this rule in other than emergencies as defined in Paragraph (6) of this rule at a location where an employee under this Agreement is not employed, a telegrapher to be designated by the District Chairman will be allowed four hours' pay at the minimum Telegraphers' rate applicable on the division.  Four hours pay shall be applicable to each location in any consecutive four hour period regardless of the number of orders handled.  The Carrier will notify the District Chairman of each such train order handled with a copy to the General Chairman.

(6)     Emergencies, as referred to in Paragraph (5) of this Article, shall include only casualties or accidents, storms, engine failure, wrecks, obstruction to tracks, washouts, tornadoes, slides, or unusual delays which could not have been anticipated by the Dispatcher when the train was at the last previous open telegraph office, and which would result in serious delay to traffic.

145

CONFIDENTIAL

ATTACHMENT 1

EXCEPTED POSITIONS COVERED BY THE PROVISIONS OF RULE 1(d-1)

Accounting Department

| POSITION | LOCATION |
|---|---|
| Sec. to the Assistant Controller | Omaha |
| Supervising JF Auditor | Omaha |
| Semi-Sr. JF Auditor (6) | Omaha |
| Semi-Sr. JF Auditor | Spring |

Engineering Department

| POSITION | LOCATION |
|---|---|
| Secretary to Chief Engineer | Omaha |

Information Technologies

| POSITION | LOCATION |
|---|---|
| Project Director (39) | Omaha |
| Project Development Dev. Adm. | Omaha |
| Supv. COIN Systems (5) | Omaha |
| Sched. & Cont. Supervisor Supv. | Omaha |
| EDPO Supv. (4) | Omaha |
| Supv. Data Rec. (5) | Omaha |
| Supv. Word Proc. | Omaha |

Labor Relations/Personnel Department

| POSITION | LOCATION |
|---|---|
| Secretary to E.A.P. | Omaha |

Marketing & Sales

| POSITION | LOCATION |
|---|---|
| Administrator Regional Sales | Chicago |
| Administrator Regional Sales | San Francisco |
| Administrator Regional Sales | Los Angeles |

146

CONFIDENTIAL

| | |
|---|---|
| Administrator Regional Sales | Portland |
| Administrator Regional Sales | Seattle |
| Administrator Regional Sales | Omaha |
| Administrator Regional Sales | Kansas City |
| Administrator Regional Sales | Salt Lake City |
| Administrator Regional Sales | Boise |
| Administrator Regional Sales | Denver |
| Asst. to GDS (E-W) (2) | Omaha |
| Asst. Mgr. District Sales | Southfield |
| Asst. Mgr. District Sales | Portland |
| Asst. Mgr. District Sales | Chicago |
| Asst. Mgr. District Sales | Los Angeles |
| Asst. Mgr. District Sales | Seattle |
| Asst. to Reg. Sales Mgr. | Boise |
| Asst. to Reg. Sales Mgr. | Chicago |
| Asst. to Reg. Sales Mgr. | Dallas |
| Asst. to Reg. Sales Mgr. | Denver |
| Asst. to Reg. Sales Mgr. | Detroit |
| Asst. to Reg. Sales Mgr. | Houston |
| Asst. to Reg. Sales Mgr. | Kansas City |
| Asst. to Reg. Sales Mgr. | Little Rock |
| Asst. to Reg. Sales Mgr. | Los Angeles |
| Asst. to Reg. Sales Mgr. | Omaha |
| Asst. to Reg. Sales Mgr. | Salt Lake City |
| Asst. to Reg. Sales Mgr. | San Francisco |
| Asst. to Reg. Sales Mgr. | Seattle |
| Office Manager | Spring |
| Office Manager I | Chicago |
| Office Manager I | Cincinnati |
| Office Manager I | Cleveland |
| Office Manager I | Dallas |
| Office Manager I | Denver |
| Office Manager I | Detroit |
| Office Manager I | Houston |
| Office Manager I | Los Angeles |
| Office Manager I | Milwaukee |
| Office Manager I | Minneapolis |
| Office Manager I | New Orleans |
| Office Manager I | Omaha (Agency) |
| Office Manager I | Philadelphia |
| Office Manager I | Pittsburgh |
| Office Manager I | Portland |
| Office Manager I | St. Louis |
| Office Manager I | Salt Lake City |
| Office Manager I | Seattle |

147

| | |
|---|---|
| Office Manager - Ind. Dev. | Omaha |
| Office Manager - Intermodal | Chicago |
| Office Manager - Intermodal | San Francisco |
| Office Manager - Intermodal Sales | Omaha |
| Office Manager Sales | Minneapolis |
| Office Manager Sales | Boston |
| Office Manager Sales | Pittsburgh |
| Office Manager Sales | St. Louis |
| Office Manager Sales | Cincinnati |
| Office Manager Sales | Cleveland |
| Office Manager Sales | Philadelphia |
| Office Manager Sales | Milwaukee |
| Office Mgr. Intermodal Sales | San Francisco |
| Office Mgr. Intermodal Sales | Chicago |
| Office Mgr. Intermodal Sales | Los Angeles |
| Administrative Assistant | Omaha |
| Adm. Asst. Ind. Dev.&Staff Svcs. (2) | Omaha |
| Adm. Asst. Pr. Mktg.&Comp.Res. | Omaha |
| Adm. Asst. - M.D.&E.S.&C. Sys. | Omaha |
| Asst. to Asst. Mgr. - Commerce | Omaha |
| Asst. to AFTM | Portland |
| Asst. to ATM | Los Angeles |
| Asst. to FPM-Com. | Omaha |
| Asst. to FPM-Div. | Omaha |
| Asst. to FPM-TCFB | Omaha |
| Asst. to Genl. Sales Mgr. (4) | Omaha |
| Asst. to Mgr. Div. & Rtg. | Omaha |
| Asst. to Mgr. Rate Bureaus | Omaha |
| Asst. Pr. Mgr.- Dereg. Perish. | Pocatello |
| Hd. Libr. Mktg. Svc. | Omaha |
| Secretary to Sr. AVP Marketing | Omaha |
| Secretary to Sr. AVP Sales | Omaha |
| Secretary to AVP Sales | Omaha |
| Sec. to Gen. Dir. Sales (E-W) (2) | Omaha |
| Sec. to Gen. Sales Mgr. (P&A) | Omaha |
| Sec. to Gen. Sales Mgr. (2) | Omaha |
| Sec. to Sr.AVP Ind. Dev. & Staff Sv. | Omaha |
| Supv. Wrd. Proc. | Omaha |
| Supv. Rate Quo. Bur. | Omaha |
| Tariff Pub. Agt. | Omaha |
| Tech. Serv. Libr. | Omaha |

148

CONFIDENTIAL
UP-AVINA-002380

## Operating Department

| POSITION | LOCATION |
|---|---|
| Chief Clerk (4) | Omaha |
| Chief Clerk | North Platte |
| Secretary to CMO | Omaha |
| Sr. Spec. Agency Operations | Omaha |
| Supv. Cont. Jt. Facs. & Pol. | Omaha |
| Data Field Coordinator | Omaha |

## Planning and Analysis

Secretary to Dir. BP&A    Omaha

## Public Relations & Advertising

Office Manager    Omaha

## Supply Department

| POSITION | LOCATION |
|---|---|
| Material Manager (2) | Omaha |
| Material Manager | Cheyenne |
| Material Manager | Kansas City |
| Material Manager | Salt Lake City |
| Material Manager | North Platte |
| Material Manager | Pocatello |
| Office Manager | Omaha |
| Secretary to VP P&M | Omaha |

149

UP-AVINA

## EXCEPTED POSITIONS COVERED BY THE PROVISIONS OF RULE 1(d-2)

### Accounting Department

| POSITION | LOCATION |
|----------|----------|
| Supvr. Accounts Receivable/1 | Omaha |
| Sr. Res. Spec. Supvr. AAS Rates | Omaha |
| Supvr. Rates | Omaha |
| Supvr. Accounts Rec. | Omaha |
| Sr. Res. Spec. | Omaha |
| Sr. Res. Spec. | Omaha |
| Sr. Res. Spec. | Omaha |
| Specialist | Omaha |
| Sr. Specialist | Omaha |
| Supvr. Const. Accounting | Omaha |
| Sr. Specialist | Omaha |
| Secretary | Omaha |

### Engineering Department

| POSITION | LOCATION |
|----------|----------|
| Asst. MW Oper. Coord. (6) | Omaha |
| Cost Control Supervisor (2) | Pocatello |
| Cost Control Supervisor (2) | Los Angeles |
| Cost Control Supervisor | Omaha |
| Sys. & Meth. Engineer (2) | Omaha |
| Stat. Supvr. | Omaha |

### Marketing & Sales

| POSITION | LOCATION |
|----------|----------|
| Asst. to FPM - WTL | Omaha |
| Asst. to FPM - WE | Omaha |
| Asst. to AFPM - Chem. | Omaha |
| Chief Clerk | Kansas City |
| Asst. to AFPM | Omaha |
| Asst. to AFPM - TOFC | Omaha |
| Asst. to AFPM | Omaha |
| Asst. to GFA - RT | Salt Lake |
| Asst. to AFPM | Omaha |

150

UP-AVINA

| Position | Location |
|---|---|
| Asst. to AFPM | Omaha |
| Asst. to AFPM | Omaha |
| Adm. Asst. S&S | Omaha |
| Sec. to Dir. Mkt. - Dev. | Omaha |
| Sec. to GM-Pricing | Omaha |
| Sr. Pricing Specialist (3) | Omaha |
| Sec. to Group Mktg. Mgr. (9) | Omaha |
| Asst. to Asst. Mgr. | Omaha |
| Asst. to Asst. Mgr. | Houston |
| Asst. to Genl. Frt. Agent Rates* | San Francisco |
| Asst. to Genl. Frt. Agent Rates* | Omaha |
| Sec. to Gen. Dir. Pricing Svcs. | Omaha |
| Asst. to FPM (Mt. Pac.) | Omaha |
| Sec. to Gen.Dir.Mktg&Sales Staff Sv. | Omaha |
| Special Repr. (Rate Bureau) | Omaha |
| Sec. to Gen. Mgr. Intermodal | Omaha |

### Operating Department

| POSITION | LOCATION |
|---|---|
| Chief Clerk (2) | Omaha |
| Analyst Stats. & Rep. (2) | Omaha |
| Supvr. Bldg. Maintenance | Omaha |
| Staff Assistant Terml. P&D | Omaha |
| Asst. Mgr. NWD Jt. Fac. (2) | Portland |
| Secretary (2) | Omaha |
| Sec. to Dir. Safety | Omaha |
| File Clerk VPO (3) | Omaha |
| Supv. Trans. Services (8) | Omaha |

### Risk Management Department

| POSITION | LOCATION |
|---|---|
| Medical Secretary (3) | Omaha |

### Supply Department

| POSITION | LOCATION |
|---|---|
| Asst. Matl. Distribution Mgr. | Omaha |
| Asst. Matl. Distribution Mgr. | Cheyenne |
| Asst. Matl. Distribution Mgr. | Pocatello |

*To be reclassified as Rule 1(e) when vacated.

151

CONFIDENTIAL

UP-AVINA_002383

# UNION PACIFIC RAILROAD COMPANY

D. D. MATTER
GENERAL DIRECTOR LABOR RELATIONS

1400 DOUGLAS STREET
OMAHA, NEBRASKA 68179



Mr. J. F. Lydon
General Chairman, TCU
2820 South 87th Avenue
Omaha, NE 68124

October 20, 2004
297-74

Dear Sir:

This has reference to our recent discussions concerning the Carrier's decision to temporarily waive, for certain jobs, the protected rate requirements as set forth in Article IV, Sections 3 and 4 of the UP/TCU Job Stabilization Agreement, as well as the applicable provisions of the National Salary Plan, amended between the parties effective August 1, 1993, for all clerical employees making displacements in the Omaha/Council Bluffs area.

In the application of this waiver, any clerical employee who acquires a "displacement right" in the normal exercise of seniority, will not be required to exercise their seniority into the National Customer Service Center, in order to retain their current EMR under the National Salary Plan or their February 7 protected rate established under the UP Job Stabilization Agreement, as amended. This waiver, however, will not serve to negate any other agreement provisions or understandings currently in effect within the Omaha/Council Bluffs area, regarding clerical displacements. Moreover, this waiver does not relieve clerical employees of any requirement to bid to the highest rated position available to them.

As discussed, this waiver will remain in effect until otherwise advised by this office and may be rescinded at any time. This waiver addresses a unique situation and is being made without prejudice to the position of either party. It is further understood that this waiver will not be cited for any reason in the future.

Yours truly,

D. D. Matter
General Director Labor Relations/Non-Ops

cc: Rick Turner – Stop 1480
Randy Johnson – PNG06

CONFIDENTIAL

UP-AVINA-002384

# UNION PACIFIC RAILROAD COMPANY

D. D. MATTER
SENIOR DIRECTOR–
LABOR RELATIONS-NON-OPS

1416 DODGE STREET
OMAHA, NEBRASKA 68179



July 25, 1994

297-ACCT
297-HDC
297-11
297-15

Mr. J. L. Quilty
General Chairman, TCU
2820 South 87th Avenue
Omaha, NE  68124

Dear Sir:

This refers to our discussions concerning the recent notice of abolishment of five (5) Omaha Accounting Department positions and the current staffing needs in CMS at the Harriman Dispatching Center.

On August 1, 1994, five (5) CMS training positions will be bulletined pursuant to Rule 11 and, in view of the foregoing, the Carrier will waive the Rule 15 application for transfer requirement for all employees located in the Omaha/ Council Bluffs Zones. With the exception of the above, Rule 11 and Rule 15 will remain fully operable.

If you are agreeable to the foregoing understanding, please indicate your acceptance by signing below.

Yours truly,

*D. D. Matter*

AGREED:

*J. L. Quilty*          8/1/94
J. L. QUILTY            (DATE)

H:\AGT\JLQ97

CONFIDENTIAL

**UNION PACIFIC RAILROAD COMPANY**



D. D. MATTER
    General Director
    Labor Relations-NON-OPS

1416 Dodge Street
Omaha, Nebraska 68179

February 3, 2004
297- 42

Mr. J. F. Lydon
General Chairman, TCU
2820 South 87th Avenue
Omaha, NE  68124

Dear Sir:

This has reference to our discussions concerning the "buy-back" provisions of Rule 42 (l) of the UP/ TCU Agreement as those provisions relate to individuals electing to take a separation allowance when their positions are moved from St. Louis to Omaha pursuant to Implementing Agreement Nos. 388, 389 and 390.

This will confirm our understanding that the Carrier will "buy-back" the unused sick leave of any individual receiving a separation allowance pursuant to any above cited implementing agreements regardless of age, years of service or retirement status.

It was agreed that this understanding was being made to address a unique situation and will not serve as precedent nor will it be cited in the future.

Yours truly,

*D. D. Matter*

AGREED:

*John T Lydon*                    **2-3-04**
General Chairman                      Date

7 ya x006ᒣ
B 07-93



## UNION PACIFIC RAILROAD COMPANY



1416 DODGE STREET
OMAHA, NEBRASKA 68179

D. MATTER
SENIOR DIRECTOR-
LABOR RELATIONS-NON-OPS

January 27, 1993

297-58

Mr. J. L. Quilty
General Chairman, TCU
2820 South 87th Avenue
Omaha, NE  68124

Dear Sir:

This has reference to our recent discussion concerning Carrier employees who are physically unable to continue working in the craft, class or capacity in which they were originally hired for physical or medical reasons.  Although these individuals cannot work in their original craft, class or capacity, quite often they are capable of performing the duties of certain clerical positions, particularly in an office environment.  When these individuals do transfer to unfilled TCU-covered vacancies and become productive clerical employees, no Agreement provision permits them to count their service time with the Company toward their vacation entitlement.

In line with our discussions, it is agreed that a Union Pacific Railroad employee who transfers to the clerical craft and class for a documented medical or physical reason may count all continuous service with the Carrier as qualifying service for purposes of determining the amount of vacation such employee is eligible to receive.  All such service must meet the criteria of a qualifying year as established in the National Vacation Agreement except that such service need not be on a position covered by the Agreement between the parties.

Except for the fact that the previous service of the transferring employees need not be covered by the Agreement between the parties, all other qualifying requirements of the Non-Operating National Vacation Agreement will apply.  This understanding will not affect the agreement practice of using an employee's <u>clerical</u> seniority date in fixing the vacation dates.

If you agree with the above understanding please sign in the space indicated, retaining one (1) copy of this letter and returning the other copy for my files.

Yours truly,

*[signature: W. D. Matter]*

AGREED:

*[signature: J. L. Quilty]*
_____
J. L. Quilty          (DATE)
General Chairman, TCU

JLQ40.AGT

UP-AVINA-002387



January 17, 2005

(297 – Accounting)

MR JOHN F LYDON
GENERAL CHAIRMAN - TCU
2820 S 87TH AVE
OMAHA NE 68124

Dear Sir:

This has reference to the Memorandum of Agreement signed January 18, 2005, which provides, among other things, paid training for clerical employees seeking an Account Specialist position.

During our discussions concerning this agreement, the Carrier advised the Organization that it would eliminate all General Clerk positions in the Car Accounting area of Accounting Operations. Concurrent with the abolishment of the four occupied General Clerk positions, the Carrier would establish four new Account Specialist positions. In an effort to recognize the experience of the General Clerks in Car Accounting, it was agreed that incumbents of the abolished General Clerk positions would not be required to pass the Account Specialist test in order to be eligible to bid or displace to an Account Specialist position.

Because of the difference in rates of pay between a General Clerk position and an Account Specialist position, the parties further agreed that the General Clerks in the Car Accounting area of Accounting Operations will not be required to bid or displace to an Account Specialist position when the General Clerk positions are abolished or the new Account Specialist positions are initially bulletined in order to avoid being *"treated"* as if they had bid or displaced to the higher rated Account Specialist position. In other words, the requirement to bid or displace to the higher rated Account Specialist position in order to preserve an Employee Maintenance Rate or a February 7, 1965 Job Stabilization Agreement rate is waived for the initial establishment of the Account Specialist positions and for the abolishment of the General Clerk positions.

It is understood that this waiver is being offered to address a unique situation and will not serve as a precedent. If you agree with waiving the requirements of the National Salary Plan and the February 7, 1965 Job Stabilization Agreement, as amended, outlined above, please sign in the space indicated, retaining one copy of this letter and returning the other copy for my files.

Sincerely,

*D. D. Matter*

GENERAL CHAIRMAN - TCU

_____      _1-18-05_
John F. Lydon                    (date)

**D. D. Matter**
General Director
UNION PACIFIC RAILROAD
1400 Douglas St., Stop 0710, Omaha, NE 68179-0710

CONFIDENTIAL          UP-AVINA-002388

Case 4:19-cv-00480-RK   Document 70-3   Filed 03/15/21   Page 164 of 196

J011405.DDM - (1)



April 15, 2005

(297-43)

MR JOHN F LYDON
GENERAL CHAIRMAN - TCU
2820 S 87TH AVENUE
OMAHA NE 68124

Dear Sir:

This has reference to our discussions concerning clerical employees transferring to other crafts on the Union Pacific Railroad.

During our discussions, the parties agreed a clerical employee in furloughed status, pursuant to Rule 18 of the TCU Agreement, could work in another craft for the railroad without relinquishing seniority as a clerk. However, if recalled to a clerical position, a furloughed clerical employee who had established seniority in another craft would be required to respond to the recall to a clerical position within the time frame provided by the TCU Agreement or forfeit all clerical seniority. If the furloughed employee working in another craft had not yet established seniority in that other craft at the time of recall to a clerical position, the employee would be considered on leave of absence until such time as he/she established seniority in the other crafts at which time the employee would be required to either (a) immediately respond to recall to the clerical position; or (b) forfeit all clerical seniority.

With regard to those clerical employees who are actively working as clerks and who have been selected for a position in another craft on the Union Pacific Railroad, excluding the crafts listed in the letter agreement amending Rule 10 dated January 6, 2000, those employees will be considered as being on leave of absence until such time as they establish seniority in the other craft. Once seniority is established in the other craft, the transferring employee will immediately forfeit all seniority rights as a clerical employee.

If the above properly reflects our agreement concerning this issue, please sign in the space indicated, retaining one copy of this letter and returning the other copy for my files.

Sincerely,

_D. D. Matter_

_John Lydon_
General Chairman – TCU

**4·27·05**
Date

**D. D. Matter**
General Director

Union Pacific Railroad
1400 Douglas St., Stop 0710, Omaha, NE 68179-0710

CONFIDENTIAL
UP/AVINA-002389

p041505.DDM – (1)

# UNION PACIFIC RAILROAD COMPANY

L. A. LAMBERT
SENIOR DIRECTOR-
LABOR RELATIONS-NON-OPS



1416 DODGE STREET
OMAHA, NEBRASKA 68179

May 24, 1990

297-74

MAY 30 1990
VICE PRESIDENT.
LABOR RELATIONS

NIF

Mr. G. L. McCall
General Chairman, TCU
2820 South 87th Avenue
Omaha, Nebraska 68124

Dear Sir:

This refers to letter of May 1, 1990, in which clerical employe L. K. Bowman was advised that her protective benefits under the UP/TCU Job Stabilization Agreement were suspended.

As your Organization is aware, this Carrier expends a tremendous amount of money for clerical training, far and beyond what many other Carriers provide and what is required under the Collective Bargaining Agreement. As such, when clerical employes do not exert a reasonable effort in training programs, Carrier has an extremely hard time in accepting future employment for such employes. In my opinion, this was the exact case of Clerk Bowman.

In our meeting of May 22, 1990, her situation was discussed in length and it was finally concluded that Carrier would again place her in a compensation status under the following conditions:

1.  Ms. Bowman will be granted the opportunity to again take the CMS Policy Test. This will be available within a week and if she successfully completes the test, she will be placed into the Training Program with compensation at the CMS Dispatcher Trainee rate.

2.  Ms. Bowman will continue to receive compensation as long as she maintains passing scores in the Training Program. However, in the event that she does not successfully complete the entire CMS Training Program, she will again be placed into a furloughed status, with a suspension of protective benefits.

CONFIDENTIAL

UP-AVINA-002390

As I have stated earlier and reiterated in conference, Carrier will not tolerate or condone any case where a clerical employe fails to exert a reasonable effort in our training programs. Ms. Bowman should be mindful of this position and realize that this second opportunity the Carrier is now providing is based upon the unique and unusual circumstance that was discussed in our meetings. Ms. Bowman, as well as your Organization, must also realize that this second opportunity is completely without prejudice to Carrier's position on this serious issue and will not be cited as a precedent in any other future situations.

If the above conditions are acceptable, please signify in the space provided below, returning the original to my office no later than May 30, 1990.

Very truly yours,

AGREED:

_A. McCall_           _5/29/90_
G. L. McCall                Date

_L K Bowman_         _5/29/90_
L. K. Bowman               Date

GLM 67/AGMT8

CONFIDENTIAL    Case 4:19-cv-00480-RK   Document 70-3   Filed 03/15/21   Page 167 of 196    UP-AVINA-002391

REC'D
AUG 0 2 2005
Labor Relations

# UNION PACIFIC RAILROAD COMPANY

D. D. Matter
Gen. Director
Labor Relations Dept.

Stop 0710
1400 Douglas Street
Omaha NE 68179-0710
(402) 544-4947



July 7, 2005

(297 - CMS)

MR JOHN F LYDON
GENERAL CHAIRMAN - TCU
2820 S 87TH AVE
OMAHA NE 68124

Dear Sir:

This has reference to our several discussions concerning various proposals affecting the Crew Services area of the Crew Management System (CMS). As you know, the Internal Services Section (ISS) of CMS will eventually be eliminated. The Crew Services area will absorb the residual ISS work and assume additional administrative duties associated with the CMS function. This transition, coupled with the fact that new systems are being implemented and the work force has a large number of inexperienced new hires, has resulted in the need to make certain modifications to the CMS organization.

The Carrier believes that adding "*right of selection*" Peer Trainers would benefit the entire CMS Organization and its customers. The current allocation and use of Rule 1 (e) positions does not allow for additional Rule 1 (e) authority under the limits defined by the Agreement. Therefore, we are requesting four (4) Rule 1 (e-2) All Services Rendered (ASR) positions above and beyond the current allocation to be used specifically as Peer Trainers with the Crew Management Services Organization. These positions will not be included in the calculations for purposes of determining the maximum allowable Rule 1 (e) positions as provided by Rule 1 (e-4).

The position title will be "CMS Peer Trainer" and will be assigned to the Crew Services area. The CMS Peer Trainers will only perform work outlined in the attached bulletin and duties directly incidental thereto. In the event a CMS Peer Trainer position is abolished and not re-established within thirty (30) days from the effective date of the abolishment, the authority for that CMS Peer Trainer position as a Rule 1 (e-2) ASR shall be relinquished and may not be re-established except by agreement between the General Chairman and the General Director of Labor Relations.

In addition to Peer Trainers, the parties discussed the need to address the ebb and flow of workload volumes throughout the day. In an effort to make the operation more fluid

CONFIDENTIAL
UP-AVINA-002392

\\UP_CLUSTER_C775POOL_SERVER\C775VOL1\GROUPDIR\LABRELNS\Labor\OPS\Wpcnonops\v297-CMS.ddm.doc (1)

the Carrier requested to amend Rule 7 of the UP/TCU Agreement so as to allow no more than six positions in the Crew Services area to start or end between midnight and 6 a.m. based on call volumes and the needs of the service.

Finally, in recognition of the above, the Carrier agreed to place all fully covered Crew Services Representatives under the provisions of Article III - CMS Crew Dispatcher Productive Allowance Program, of the memorandum of agreement signed June 6, 1989, as it relates to regular positions. The Productive Allowance Program will be applied in the Crew Services area retroactively to January 1, 2005. Because the Crew Services area does not have a Reserve Board arrangement, that portion of Article III will not apply. Moreover, Article III will not apply to clerical employees assigned to Rule 1 (e) positions in the Crew Services area.

If you agree, please sign in the space indicated, retaining one (1) copy of this letter and returning the other for our files.

Sincerely,

*Dean D. Matter*

Agreed:

John Lydon

Date **7-11-05**

CONFIDENTIAL
Case 4:18-cv-00480-RK   Document 70-3   Filed 03/15/21   Page 169 of 196
UP-AVINA-002393
\\UP_CLUSTER_C775POOL_SERVER\C775VOL1\GROUPDIR\LABRELNS\Labor\OPS\Wpcnonops\v297-CMS.ddm.doc (2)

## PERMANENT NEW POSITION

Location:        Omaha, Zone 201

Title:           CMS Peer Trainer 1 (e-2)

Rate of Pay:     $4,541.28/mo.

Wage Grade:      N/A

Hours:           ASR

Rest Days:       ASR

Period Period:   ASR

Duties:

Conduct on-the-job training with Crew Dispatchers and Crew Services Representatives as instructed by CMS Management Team. Assist in the design of structured training classes and process documentation including study guides, handouts, manuals, presentations, job aides, etc. Conduct structured training classes with Crew Dispatchers and Crew Services Representatives. Evaluate and measure the effectiveness of CMS training programs, and use the information to improve all aspects of the continuous training program. Implement systems and processes which support CMS services and operations as well as assist in the associated personnel training. Assist in monitoring and maintaining qualifications for Crew Dispatchers and Crew Services Representatives. Must be CMS qualified.

CONFIDENTIAL
Case 4:10-cv-00480-RK   Document 70-3   Filed 03/15/22   Page 170 of 196
UP-AVINA-002394
\\UP_CLUSTER_C775POOL_SERVER\C775VOL1\GROUPDIR\LABRELNS\Labor\OPS\Wpcnonops\vTCUPeerTrainers.ddm.doc (1)

# UNION PACIFIC RAILROAD COMPANY



1416 DODGE STREET
OMAHA, NEBRASKA 68179

February 5, 2001

L/R File
297-10

MR J F LYDON
GEN CHMN TCU
2820 S 87TH AVE
OMAHA NE 68124

Dear Sir:

This has reference to our recent discussion concerning Rule 10(b-5) of the UP/TCU Agreement effective October 16, 1993.

Rule 10(b-4) addresses employees promoted to permanent Train Dispatcher positions. Prior to being assigned to a permanent Train Dispatcher position, however, employees must complete a training program which lasts approximately six months. Train Dispatcher Trainee positions are temporary positions. Accordingly, Rule 10(b-5), the rule applicable to employees filling temporary Train Dispatcher vacancies and/or positions, would be applicable to Train Dispatcher Trainee positions. Because the training is six months, however, the Carrier is seeking your concurrence to extend the time limit of 90 days' duration found in Rule 10(b-5) to six months' duration. It is understood employees assigned to Train Dispatcher Trainee positions will have their clerical positions bulletined as temporary vacancies pursuant to Rule 11 of the Agreement.

If you agree that Rule 10(b-5) will apply to Train Dispatcher Trainee positions and that the time limit of 90 days will be extended to six months to accommodate the length of training necessary to become a Train Dispatcher, please sign in the space indicated retaining one copy of this letter and returning the other copy for my files.

Yours truly,

D. D. MATTER
General Director-Labor Relations

AGREED:

J. F. Lydon-General Chairman TCU

2-6-01
(Date)

CONFIDENTIAL

# UNION PACIFIC RAILWAY COMPANY



August 15, 2001

(297-10)

1416 DODGE STREET
OMAHA, NEBRASKA 68179

REC'D
AUG 2 0 2001
Labor Relations

MR J F LYDON
GENERAL CHAIRMAN TCU
2820 S 87TH AVENUE
OMAHA NE 68124

Dear Sir:

    I have been advised that effective August 1, 2001, the Union Pacific Corporation will add a new company to its list of wholly-owned subsidiaries. The new company will be called Insight Network Logistics, LLC. Because Insight Network Logistics will be a wholly-owned subsidiary of the Union Pacific Corporation, the Carrier is seeking your concurrence to add this company to the listing of companies found in Rule 10 (c) of the Agreement effective October 16, 1993. This will permit employees with the Union Pacific Railroad holding clerical seniority to continue to retain and accumulate seniority provided such employees maintain membership in good standing with TCU.

    If you agree with this modification to Rule 10C, please sign in the space indicated below retaining one (1) copy of this letter and returning the other copy for my files.

Yours truly,

D. D. Matter
General Director Labor Relations

I Agree:

J. F. Lydon – General Chairman TCU

Date    8·16·01

CC: Michelle M. Gerhardt
Director – Compensation
Room 320 – HDQ

CONFIDENTIAL

A G R E E M E N T
between the
UNION PACIFIC RAILROAD COMPANY
and the
BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS,
FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYES

--------

DUES DEDUCTION AGREEMENT

--------

In accordance with the provision of Section 10)b)
of the Agreement signed by the parties hereto at Omaha,
Nebraska on March 7, 1953 and pursuant to Article II (Cost-
Free Union Dues Deduction Agreement) of the National Collec-
tive Bargaining Agreement, dated April 27, 1973, the follow-
ing Agreement by and between Union Pacific Railroad Company,
hereinafter referred to as the "Carrier" and the employes
thereof represented by the Brotherhood of Railway, Airline
and Steamship Clerks, Freight Handlers, Express and Station
Employes, hereinafter referred to as the "Organization," is
entered into by the parties and shall be made effective
October 1, 1973.

IT IS AGREED:

Section 1. (a) Subject to the terms and conditions
hereinafter set forth, the Carrier will deduct from the wages
of employes, membership dues, initiation fees, and assessments
(excluding fines and penalties) as may be uniformly required
as a condition of the employes acquiring and/or retaining mem-
bership in the Brotherhood upon their written authorization in
the form (Individual Authorization Form) agreed upon by the
parties hereto, copy of which is attached, designated "At-
tachment A" and made a part hereof.

(b) The authorization shall, in accordance with
its terms, be revocable in writing after the expiration of
one year upon thirty (30) calendar days advance notice to
the Organization and the Carrier by registered mail or upon
termination of this Agreement or upon the termination of the
rules and Working Conditions Agreement between the parties
hereto, whichever occurs sooner.

CONFIDENTIAL

2

NOTE: Currently effective assignment forms need not be re-executed and will continue in effect subject to their terms and conditions.

(c)  Revocation of authorization shall be on the form specified in Exhibit B attached hereto and made a part hereof, and both the authorization and revocation of authorization forms shall be reproduced and furnished as necessary by the Organization without cost to the Carrier.

(d)  The Organization shall assume the full responsibility for the procurement and proper execution of said forms by employes, and for delivery of said forms to the Carrier. Revocation of authorization forms shall be delivered to the designated carrier Officer not later than the 10th day of the month in which the termination of deductions is to become effective.

(e)  The Officer of the Organization designated by the International President shall promptly notify in writing the Officer or Officers designated by the Carrier of any special assessment or changes in amounts of fees or dues; however, the deduction amounts may not be changed more often than once every three months.

Section 2.  (a)  Individual authorizations to be effective for a particular month must be in the possession of the designated carrier Officer not later than the fifth day of the month in which such deductions are to be made.

(b)  The designated Officer of the Organization shall furnish to the Carrier, with copies to appropriate units of the Organization, an initial statement (Attachment C), by lodges, in alphabetical order, certified by him, showing deductions to be made from each such member, such statement to be furnished together with individual authorization forms to cover, not later than the fifth day of the month in which the deductions become effective.  Subsequent monthly deductions will be based on the initial statement, plus a monthly statement (Attachment D) showing additions and/or deletions, furnished in the same manner as the initial statement required hereby.  If no changes are reported by the 5th day of the month, the last previous list on file with the designated carrier Officer shall be used for the purposes of this Section.

NOTE: Currently effective lists and assignment forms need not be resubmitted.

Section 3.  (a)  Deductions will be made from the wages earned in the first period of the month, which will be dues of the member for the following month, in which the afore-

mentioned certified statement is furnished to the designated Carrier officer. The following payroll deductions will have priority over deductions in favor of the Organization as covered by this Agreement.

  (i)     Federal, State and Municipal taxes and other deductions required by law, including garnishment and attachments and any other prior liens which the Carrier must respect.

  (ii)    Amounts due the Carrier.

  (iii)   Union Pacific Railroad Employes Hospital Association; and premiums on group insurance plans.

If the earnings of the employe are insufficient, after all priority deductions have been made, to remit the full amount of deductions authorized by an employe hereunder, no deduction for dues on behalf of the Organization shall be made by the Carrier and the Carrier shall not be responsible for such collection.

    (b)   Deductions made hereunder shall be made on the regular payroll or from time vouchers and shall be remitted to the International Secretary-Treasurer or other officer of the Organization as may be designated by the International President not later than the fifth day of the month next following the month in which deduction is made; together with a machine-produced list (Attachment E), prepared in triplicate for each lodge, alphabetically listing the names, social security account numbers or payroll identification numbers, amount of deductions, and the total amount of deductions for the lodge. (If no deduction is made for a particular individual on the list, the Carrier will show the reason therefor. The Carrier will also furnish a summary statement for all lodges, itemizing the number of employes and amount deducted.)

    Section 4.  Responsibility of the carrier under this Agreement shall be limited to remitting to the Organization amounts actually deducted from the wages of employes pursuant to this Agreement, and the Carrier shall not be responsible financially or otherwise for failure to make deductions or for making improper or inaccurate deductions. Nothing contained herein shall be construed as obligating the Carrier to collect dues from employes who leave its service or whose wages shall be involved in any claim or litigation of any nature whatsoever.

Section 5.   No part of this Agreement shall be used in any manner whatsoever either directly or indirectly as a basis for a grievance or time claim by or in behalf of an employe; and no part of this or any other Agreement between the Carrier and the Organization shall be used as the basis for a grievance or time claim by or in behalf of any employe predicated upon any alleged violation of, or misapplication or noncompliance with any part of this Agreement.

Section 6.   (a)   The requirements of this Agreement shall not be effective with respect to any individual employe until the Carrier has been furnished with written authorization of assignment of wages of such monthly membership dues, initiation fees, and assessments.

(b)   Any question arising as to the correctness of the amount deducted shall be handled between the employe involved and the Organization, and any complaints against the Carrier in connection therewith shall be handled by the Organization on behalf of the employe concerned.

Section 7.   Except for remitting to the Organization monies deducted from the wages of employes, the Organization shall indemnify, defend and save harmless the Carrier from and against any and all claims, demands, liability, losses or damages resulting from the entering into this Agreement or arising or growing out of any dispute or litigation resulting from any deductions made by the Carrier from the wages of its employes for or on behalf of the Organization.

Section 8.   In the event of a change in representation of employes now represented by the Organization, this Agreement shall automatically terminate and be of no further force or effect as of the date official notification is received from the National Mediation Board of such change in representation.

Section 9.   To assist in the application of the Agreement, the Carrier will furnish a list to the designated officer of the Organization and the General Chairman at the close of each month, to be received not later than the fifth day of the following month, which list shall show the data and information as set forth in Attachment "F" and in the form as there prescribed.

Section 10.   This Agreement is subject to the express Agreement of the parties hereto to observe and comply with the provisions of the applicable federal and state laws now in

CONFIDENTIAL

5

existence or enacted during the term hereof, it being the intention of either party hereto to relieve the other party hereto from complying with any provision of this Agreement which may be in conflict with or violate any applicable state or federal law now in existence or enacted during the term hereof.

Section 11. This Agreement shall be effective October 1, 1973 and shall remain in effect until altered, changed or cancelled in accordance with the Railway Labor Act, as amended, or as otherwise provided in Section 8 of this Agreement.

Signed at Omaha, Nebraska this 20th day of September, 1973.

FOR THE BROTHERHOOD OF RAIL-
WAY, AIRLINE AND STEAMSHIP
CLERKS, FREIGHT HANDLERS,
EXPRESS AND STATION EMPLOYES

UNION PACIFIC RAILROAD COMPANY

_____
General Chairman, E. C.

_____
Vice President-Labor Relations

_____
General Chairman, W. D.

_____
Director Labor Relations-System

CONFIDENTIAL

UP-AVINA-002401

## WAGE ASSIGNMENT AUTHORIZATION

_____
(Employing Officer)

Union Pacific Railroad Company,

_____
(Location)

Name _____
(Last)            First)              (Middle Initial)     (Soc.Sec. No.)

Home Address _____
(Street and Number)      (City and State)        (Zip Code)

_____
(Occupation-Title)    (Pos.No.)   (Work Location)   (Department)   (Sen.Dist.)

_____
(Lodge No.)          (Union Card No.)        (Carrier Audit No.)

       I hereby assign to the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes that part of my wages necessary to pay my monthly membership dues (not including fines and penalties) in the Organization as such dues and premiums are reported to the Union Pacific Railroad Company by the designated officer of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes, in monthly statements, certified by him, as provided under the Check-Off agreement entered into by and between the Organization and the Union Pacific Railroad Company on September 20, 1973, and I hereby authorize the Union Pacific Railroad Company to deduct from my wages all such sums and pay them over to the designated officer of the Organization (BRAC) in accordance with the said Check-Off agreement. This authorization may be revoked in writing by the undersigned after the expiration of one (1) year, upon thirty (30) days written advance notice or upon the termination of the aforesaid Check-Off agreement or upon the termination of the union agreement between the Company and the Organization, whichever occurs sooner.

_____, 19__    _____    _____
(Date)                           (Signature)            (Lodge No.)

CONFIDENTIAL

UP-AVINA-002402

9-20-73

ATTACHMENT B

IBM Code _____

_____
    (Employing Officer)

Union Pacific Railroad Company,

_____
    (Location)

Name _____
    (Last)      (First)    (Middle Initial)   (Soc. Sec. No.)

Home Address _____
    (Street and Number)   (City and State)   (Zip Code)

_____
(Occupation-Title)  (Pos.No.) (Work Location)  (Department) (Sen.Dist.)

_____
  (Lodge No.)     (Union Card No.)    (Carrier Audit No.)

Effective _____ __, 19__,# I hereby
revoke the Wage Assignment Authorization now in effect assigning to
the Brotherhood of Railway, Airline and Steamship Clerks, Freight
Handlers, Express and Station Employes that part of my wages neces-
sary to pay my monthly dues in that Organization now being withheld
pursuant to the Check-Off agreement between the Organization and the
Union Pacific Railroad Company, and I hereby cancel the Authorization
now in effect authorizing the Union Pacific Railroad Company to deduct
such monthly dues from my wages.

_____ __, 19__ _____ _____
  (Date)               (Signature)      (Lodge No.)

# Note:  Thirty (30) days written advance notice must be given to
effect such revocation.

CONFIDENTIAL

Case 4:18-cv-00483-RK Document 70-3 Filed 03/15/21 Page 179 of 196

UP-AVINA-002403

ATTACHMENT C

## INITIAL LIST

Date _____

Mr. _____
     (Employer Officer)

_____
     (Employer)

_____
     (Street)

_____
     (City and State)

        Pursuant to the Check-Off Agreement between the

Brotherhood and _____, the following
             (Employer)

is a list of names of employes for whom deductions shall be made effec-

tive the first pay period of _____, 19 ___.

        Wage Deduction Authorization Forms for these employes

are enclosed.

| Last | Name First | Mid.Initial | Soc.Sec.Acct.No. | Lodge #. | Amount |
|------|------------|-------------|------------------|----------|--------|
|      |            |             |                  |          |        |
|      |            |             |                  |          |        |
|      |            |             |                  |          |        |
|      |            |             |                  |          |        |

_____
     General Chairman

CONFIDENTIAL

UP-AVINA 002404

## ADDITIONS OR DELETIONS

Date _____

Mr. _____
      (Employer Officer)

_____
      (Employer)

_____
      (Street)

_____
      (City and State)

Pursuant to the Check-Off Agreement between the Brotherhood and _____, effective with the first
      (Employer)

pay period of _____, 19___, the following additions or deletions are to be made for the employes whose names are listed below:

Wage Deduction Authorization Forms for the employes to be added to the initial list are enclosed.

| Last | Name First | Mid.Initial | Soc.Sec.Acct.No. | PR No | Lodge No. | Amt |
|------|-----------|-------------|------------------|-------|-----------|-----|
| ADDITIONS | | | | | | |
| | | | | | | |
| | | | | | | |
| DELETIONS | | | | | | |
| | | | | | | |
| | | | | | | |

Certified Correct

CONFIDENTIAL    UP-AVINA 002405

Case 4:19-cv-00480-RK   Document 70-3   Filed 03/15/21   Page 181 of 196

_____
General Chairman

ATTACHMENT E

MONTHLY LIST OF DEDUCTIONS

Date _____

Mr. _____
    (Brotherhood Officer)

    _____
    (Street)

    _____
    (City and State)

        Pursuant to the Check-Off Agreement between the Brotherhood
and Union Pacific Railroad Company, enclosed is a machine-produced
list for Lodge _____ for the month of _____, 19__, issued
pursuant to Section 3(b) of the Agreement dated September 20, 1973,
containing the following:

| Name | | | Soc.Sec.Acct.No. | Deduction Account | | No |
|------|--|--|-------------------|-------------------|--|-----|
| Last | First | Mid.Initial | or Payroll ID No. | Monthly Dues | Initiation Assessment | or Deduction (Reason) |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

                    Total Deduction _____


                              _____
                              Carrier Officer

Dues deducted from first pay period of _____ for _____
dues.                                      (month)              (month)

CONFIDENTIAL    Case 4:19-cv-00480-RK    Document 70-3    Filed 03/15/21    Page 182 of 196    UP-AVINA-002406

ATTACHMENT F

RECORD OF CHANGE IN STATUS OF EMPLOYES

Seniority District Roster No. _____

Division Officer or
Department _____

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| (Month) | | (Year) | | | | | |

| Name | | | | Name | | | |
|---|---|---|---|---|---|---|---|
| First Initial | Middle Initial | Last Name | Reason for Change * | First Initial | Middle Initial | Last Name | Reason for Change * |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

* Insert appropriate explanatory letter symbol as shown below:

A - Resigned; died; dismissed; retired
B - Transferred to excepted position or position outside scope of
        the Clerks' Agreement
C - Returned from excepted position or position outside scope of
        the Clerks' Agreement
D - Entered military service
E - Returned from military service
F - Leave of absence
G - Returned from leave of absence
H - Absent account sickness or disability
I - Returned from leave of absence account sickness or disability
J - Furloughed
K - Returned from furlough or recalled to service per Rule 18
L - New employe. Name, SSA No. & date hired

CONFIDENTIAL

ADDENDUM TO DUES DEDUCTION AGREEMENT

between

UNION PACIFIC RAILROAD COMPANY

and

BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS,
FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYES

In accordance with the provisions of Article X of
the National Agreement signed January 13, 1979, between
Carriers represented by the National Railway Labor Conference
and the employes of said Carriers represented by the Brother-
hood of Railway, Airline and Steamship Clerks, Freight
Handlers, Express and Station Employes, the parties hereby
amend the Dues Deduction Agreement of September 20, 1973,
to the extent necessary to provide for the deduction of
employes' voluntary political contributions on the following
terms and bases:

1(a)  Subject to the terms and conditions hereinafter
set forth, and in accordance with the September 20, 1973 Dues
Deduction Agreement, the Carrier will deduct from the wages of
employes voluntary political contributions upon their written
authorization in the form (individual authorization form)
agreed upon by the parties hereto, copy of which is attached,
designated "Attachment A" and made a part hereof.

(b)  Voluntary political contributions will be made
monthly from the compensation of employes who have executed a
written authorization providing for such deductions.  The first
such deduction will be made in the month following the month
in which the authorization is received.  Such authorization
will remain in effect for a minimum of twelve (12) months
and thereafter until cancelled by thirty (30) days advance

CONFIDENTIAL
UP-AVINA 002408

written notice from the employe to the Brotherhood and the Carrier by Registered Mail.  Changes in the amount to be deducted must be on the same basis as provided in the September 20, 1973 Dues Deduction Agreement and will be limited to no more often than once every three months.

2    The General Chairman or his designated representative shall furnish the Carrier an initial statement (Attachment B) by lodges, in alphabetical order and certified by him, showing the amounts of deductions to be made from each member, such statement to be furnished together with individual authoriztion forms to cover, and payroll deductions of such amounts will commence in the month immediately following.  Subsequent monthly deductions will be based on the initial statement plus a monthly statement (Attachment C) showing additions and/or deletions furnished in the same manner as the initial statement required hereinabove.  If no changes are reported, the most recent list on file with the Carrier shall be used for the purposes of this section.

3    Monthly voluntary political contribution deductions will be made from wages at the same time that membership dues are deducted from the employe's paycheck.

The following payroll deductions will have priority over deductions covered by this agreement:

(a)    Federal, state and municipal taxes, and other deductions required by law, including garnishments and attachments and any other prior liens which the Carrier must respect.

(b)    Amounts due the Carrier.

CONFIDENTIAL

      (c)    Union Pacific Railroad Employes Hospital Association; and premiums on group insurance plans.

      (d)    BRAC membership dues.

    4    Concurrent with making remittance to the Organization of monthly membership dues, the Carrier will make separate remittance of voluntary political contributions to the Secretary-Treasurer of the Railway Clerks Political League, together with a list prepared in triplicate for each General Chairman and the Secretary-Treasurer of the Railway Clerks Political League and containing an alphabetical listing of the names, social security account numbers, or payroll identification numbers, amount of deductions and the total amount of deductions made by each General Chairman's constituents.

    5    The requirements of this agreement shall not be effective with respect to any individual employe until the employer has been furnished with a written authorization of assignment of wages of such monthly voluntary political contribution.

    Signed at Omaha, Nebraska this 23rd day of April, 1979:

FOR:

BROTHERHOOD OF RAILWAY, AIRLINE
AND STEAMSHIP CLERKS, FREIGHT
HANDLERS, EXPRESS AND STATION
EMPLOYES

FOR:

UNION PACIFIC RAILROAD COMPANY

_Deane D. Willey_

General Chairman, Eastern District

_[signature]_

Vice President-Labor Relations

_Paul J. Meier_

General Chairman, Western District

_A H Kenny_

Director Labor Relations-System

CONFIDENTIAL

UP-AVINA-002410



March 11, 2011
297 - 41

Mr. Steve Mether
International Representative - TCU
2820 S. 87th Avenue
Omaha, NE 68124

Dear Sir:

The Supply Department is seeking your concurrence to establish one (1) vacancy relief position at West Colton, California, for the purpose of providing vacation, personal leave day, sick leave and other short vacancy coverage for Material Clerk and Material Handler positions at West Colton as well as provide support during periods when no vacations are scheduled or there are no vacancies.

Accordingly, pursuant to the provisions of Rule 41 of the UP/TCU Agreement effective July 31, 2006, the Carrier is seeking the Organizations concurrence in the establishment of the aforementioned position with relevant information pertaining to this position being set forth as follows:

| | | |
|---|---|---|
| MATERIAL CLERK | | |
| MATERIAL HANDLER | - | VACANCY RELIEF* |
| PERMANENT | | |
| REST DAYS | - | VARIOUS |
| HOURS | - | VARIOUS |
| RATE | - | PAID RATE OF POSITION WORKED |
| LUNCH | - | 20 MINUTES PAID |

*When the position is not scheduled to relieve vacancies, it will be assigned to perform Material Handler duties on the first shift, Monday through Friday.

In establishing this position, it is understood that during the period this position is in effect, vacancies for Material Clerk and Material Handler positions will not be posted pursuant to Rule 12 of the current Agreement unless they are to be filled and the Vacancy Relief position is unavailable to fill the vacancy/vacancies.

This Agreement may be cancelled by the serving of a notice to cancel by either party. In the event notice is served, this Agreement will be terminate 30 days from the date of notice and the provisions of the Schedule Agreement will be applicable.

Yours truly,

*Dean D. Matter*

AGREED:

_____          3-11-11
International Representative – TCU          Date

D. D. Matter
General Director

CONFIDENTIAL
UNION PACIFIC RAILROAD
1400 Douglas St., Stop 0710, Omaha, NE 68179-0710
UP-AVINA-002411



June 9, 2011
File: 297-11

Marilyn J. Ahart
Director
REC'D
JUN 1 4 2011
Labor Relations

Mr. S. W. Mether
International Representative - TCU
2820 South 87th Ave.
Omaha, NE 68124

Dear Mr. Mether:

This is to confirm our verbal agreement to waive the 5-day bulletin period for CMS vacancies advertised June 1, 2011. The initial bulletin period was bypassed and the vacancies were posted for ten (10) days under the provisions of Rule 11.

It is understood this agreement is made to address a unique situation to expedite the assignment of employees to unanticipated vacancies and to facilitate the recall of furloughed employees. It does not establish a precedent and is not to be cited for any reason. If you agree, please sign in the space indicated, retaining a copy of this letter and returning a copy for my files.

Sincerely,

_____
International Representative – TCU

_____6 - 13 - 11_____
Date

CONFIDENTIAL UP-AVINA 002412
Case 4:18-cv-00480-RR Document 70-3 Filed 03/15/22 Page 188 of 196

## AGREEMENT

## Between The

## UNION PACIFIC RAILROAD COMPANY

## And The

## TRANSPORTATION COMMUNICATIONS UNION (TCU)

## TCF FOREMAN AGREEMENT (LATC)

The parties agree the following provisions may be implemented at Los Angeles, California at the discretion of management.

1. TCF Foreman Positions

   a. At Los Angeles Transportation Center, the position of TCF Foreman may be bulletined and assigned subject to the terms and conditions outlined below.

   b. The rate of pay for the TCF Foreman will be a Wage Grade 5 ($253.90 per ten (10) hour day).

   c. TCF Foreman positions will be assigned to work ten (10) hours per day, four (4) days per week. Initially, two positions will be established, as follows:
      - 0500-1500 rest days Sunday, Monday, Tuesday
      - 1700-0300 rest days Thursday, Friday, Saturday

2. The following Rules of the applicable Collective Bargaining Agreement are modified to reflect the modified work schedule of these positions.

   a. Rule 41 – Forty Hour Workweek – remains unchanged except for the following:

      i. The Carrier will establish a workweek of forty (40) hours, consisting of four (4) days of ten (10) hours each, with three (3) consecutive days off in each seven (7) days.
      ii. The workweeks will be staggered in accordance with the Carrier's operational requirements.
      iii. Regular relief assignments with four (4) days of work and three (3) consecutive rest days may be established to perform relief work on the rest days of the above-mentioned assignments.

   b. Rule 35 – Meal Period – will be modified as follows:

      i. Employees working under the modified work schedule will have a twenty (20) minute paid meal period.
      ii. The meal period will be between the ending of the fourth and the beginning of the seventh hour after starting time.

   c. Rule 38 – Overtime – will remain unchanged except overtime will be paid on any given day for time on duty in excess of ten (10) hours instead of eight (8) hours.

d. Rule 22 – Basic Day – will be modified to state that ten (10) consecutive hours shall constitute a day's work.

e. Rule 18 – Reduction in Force – will be modified to state that if the force is to be reduced or position to be abolished, four (4) working days' notice will be given prior to such action to the clerical employee affected and a list will be furnished to the General and Local committees.

3. Modification to Paid Leave Provisions

   a. The National Vacation Agreement provisions will be converted so that an employee eligible for vacation will receive hours equal to those when on a five (5) day workweek assignment. As an example, an employee entitled to three (3) weeks' vacation, i.e., one hundred twenty (120) hours-fifteen (15) days at eight (8) hours, would now be entitled to twelve (12) days at ten (10) hours. While on four (4) day workweek, a day's vacation will be ten (10) hours.

      i. The workday of a four (4) day workweek will be considered as 1.25 days for qualifying day purposes for vacation in the following year. If at the end of the calendar year, an employee's vacation qualifying days would be adversely affected, upon presentation of proof of an adverse impact the parties agree to meet to determine whether an adjustment to vacation qualifying days would be required.

      ii. In the event the 10 hour day arrangement creates a problem with regard to scheduled 2013 vacation, the Local/District Chairperson will meet with the Local Supervisor to arrange a mutually satisfactory method for providing vacation coverage.

   b. For the purposes of applying Rule 42-Sick Leave Allowance to a ten (10) hour day position, a day's sick leave pay will be converted to hours on the basis of eight (8) hours for each day of sick leave to which an employee is entitled, e. g. 10 days of sick leave will be converted to eighty (80) hours, totaling (8) days of sick leave.

   c. Employees qualifying for Bereavement and Jury Duty, under the applicable provisions of the Collective Bargaining Agreement and National Agreements will be compensated ten (10) hours at the straight time rate for the days to which they are entitled.

   d. Employees qualifying for Holidays and Personal Leave Days, under the applicable provisions of the Collective Bargaining Agreement and National Agreements will be compensated eight (8) hours at the straight time rate for those days to which they are entitled.

   e. Employees entitled to paid personal leave days may elect to receive pay for those personal leave days in increments of two (2) hours if used to complete a ten (10) hour day for purposes of applying the Holiday and Personal Leave payments.

4. Other Provisions

    a. The above modifications to the Collective Bargaining Agreement will be applicable only when employees are working a four (4) day workweek consisting of ten (10) hours a day. It is not the intent of this Agreement to result in any increased costs to the Carrier in converting from a five (5) day workweek to a four (4) day workweek.

    b. For purposes of this Agreement, EMRs will be converted to an hourly basis.

The provisions of this Agreement are not to be considered as a precedent nor be referred to in the handling of any other matters. This Agreement may be cancelled by one party serving fifteen (15) days' written notice upon the other and the cancellation shall become effective on the first day of the payroll half following the end of the fifteen (15) day notice.

Signed this 11th day of February 2013.

FOR THE ORGANIZATION:

Robert Ragland
TCU/IAM National Representative

FOR THE CARRIER:

Andrea Gansen
AVP Labor Relations

Andrea Gansen
Asst. Vice President
402-544-3073



March 13, 2012
297.38
NCSC

Mr. Steve W. Mether
National Representative TCU/IAM
2820 South 87th Avenue
Omaha, NE 68124

Dear Sir:

This has reference to recent discussions regarding the Memorandum of Agreement outlining the overtime call provisions which were effective February 22, 1994 for the National Customer Service Center, Zone 210.

Section 3-Preferential Calling Order, Item D of the above-reference Memorandum of Agreement is modified to reflect the following windows for calling:

| Calling window: | Positions beginning at: |
|---|---|
| 4:30 A.M. to 5:30 A.M. | 7:00 A.M. |
| 5:30 A.M. to 6:30 A.M. | 8:00 A.M. |
| 6:30 A.M. to 7:30 A.M. | 9:00 A.M. |
| 7:30 A.M. to 8:30 A.M. | 10:00 A.M. |
| 9:30 A.M. to 10:30 A.M. | 12:00 P.M. |
| 12:30 P.M . to 1:30 P.M. | 3:00 P.M. |
| 8:30 P.M. to 9:30 P.M. | 11:00 P.M |

In the event a position is subsequently added that has a start time not listed above, the calling cycle will be the one and one-half (1 ½) to two and one-half (2 ½) period preceding the start of the shift. For example, the calling cycle for a position beginning at 11:00 A.M. will be 8:30 A.M. to 9:30 A.M.

In order to alleviate problems with respect to the filling of vacancies, it is agreed that except in emergency situations, employees who request to be absent from their assigned positions must do so two (2) hours prior to start of shift.

This understanding is made without prejudice to the position of either party and may be cancelled by either party with the serving of a thirty (30) day advance notice.

If this letter properly reflects our understanding in this matter, please signify in the space provided below.

Agreed:

Yours truly,

3-14-/2

Steve Mether
National Representative TCU/IAM



Marilyn J. Ahart
Director

March 14, 2013
297 – NSP
297 – 74


Mr. R. L. Ragland
National Representative TCU/IAM
2820 S. 87th Avenue
Omaha, NE 68124

Dear Mr. Ragland:

This is in reference to the TCF Foreman positions which are bulletined and assigned to work four (4) ten hour straight time shifts per week.

It is agreed that the requirement to bid to these positions in order to preserve an Employee Maintenance Rate (EMR) or a February 7, 1965 Job Stabilization rate is waived It is understood that this waiver is being offered to address a unique situation and will not serve as a precedent. If you agree with waiving the requirements of the National Salary Plan and the February 7, 1965 Job Stabilization Agreement, as amended, outlined herein, please sign in the space indicated, retaining one copy of this letter and returning the other copy for my files.

Sincerely,

*[signature]*

NATIONAL REPRESENTATVE TCU/IAM

_____

Robert L. Ragland

3·27·2013

Date

REC'D
OCT 31 2013
Labor Relations

UNION PACIFIC RAILROAD
1400 Douglas Street, STOP 0710
Omaha, Nebraska 68169

**Andrea R. Gansen**   Assistant Vice President

P 402 544 3073

October 24, 2013

297-5; 297-74

Mr. Robert Ragland
National Representative, TCU/IAM
2820 South 87th Ave
Omaha, NE 68124

Re:  Transfer of Utility Clerks from El Paso, Texas, to Santa Teresa, New Mexico

Dear Sir:

This letter is to give such notice as may be required under Article III of the UP/TCU Job Stabilization Agreement regarding the Carrier's planned operational change of assignment for Utility Clerks at El Paso, Texas. On January 1, 2014, the crew change point for train and engine employees will be almost entirely shifted from El Paso to Santa Teresa, New Mexico. In support of this change in operations, the Carrier proposes the following:

1. Agreement that Santa Teresa, New Mexico, will be included as a part of Seniority Zone 220 – Field Operations Texas, in Rule 4 of the Collective Bargaining Agreement.

2. Effective January 1, 2014, the three (3) incumbent Utility Clerks headquartered at El Paso, Texas, will have their headquarters/reporting location changed to Santa Teresa, New Mexico. These incumbent employees are, in seniority order:

   Sylvia Gerardo       EID 167401       Seniority Date: 11/19/1996
   Diana Alarcon        EID 009025       Seniority Date: 11/19/1996
   Elizabeth Perez      EID 420764       Seniority Date: 10/17/2005

3. As the Santa Teresa terminal is located within thirty (30) miles of the El Paso terminal, it is the understanding of the parties that the Utility Clerk Agreement, effective February 15, 2002, applies to the crew hauling positions transferred to Santa Teresa.

4. It is likewise recognized that no change of residence is required to effectuate this change in operations.

If you are agreeable, please indicate with your signature and return one copy to me for my handling.

Sincerely,

AGREED:

Robert Ragland, TCU/IAM

www.up.com                                                   BUILDING AMERICA®

**UNION PACIFIC RAILROAD**
1400 Douglas Street, STOP 0710
Omaha, Nebraska 68169

**Andrea R. Gansen**   Assistant Vice President

P 402 544 3073

May 23, 2014

297- 2, 297-10

Mr. R. L. Ragland
National Representative TCU/IAM
2820 S. 87th Avenue
Omaha, NE 68124

Dear Mr. Ragland:

This Letter Agreement concerns the application of Rule 10 and the ability of an employee to retain his or her TCU seniority when he or she elects to transfer to a position represented by an Organization not affiliated with the TCU.

It is agreed to allow employees transferring to a different, non-affiliated craft the opportunity to keep their TCU seniority date for ninety (90) calendar days after the first date they are compensated for service or training for said position. It is understood that in order for employees to maintain their TCU seniority date, they will be required to continue their dues to the Organization. On the ninety-first (91st) calendar day, the employee's TCU seniority will end and he or she will be removed from all TCU seniority rosters.

Employees maintaining their TCU seniority under the provisions of this Agreement may only use their seniority to bid to open positions and may not displace other employees. Employees who are furloughed during the ninety (90) day period are not entitled to any protective benefits under the TCU Collective Bargaining Agreement.

Please indicate your agreement by signing in the space provided below. This agreement will be effective June 1, 2014.

Sincerely,

AGREED:

Robert Ragland, National Representative

5/23/14
Date

cc:   Jason Brink, Finance
      Donna Callender, Finance
      Rowena Davis, LR
      Jim Eisele, LR

FILE COPY

TO:      Max Connealy - MC 7080

BCC:     John Steiger
         Debbi Peitzmeier
         Steve Wheeler
         Glen Lamp
         Denny Palma
         Jerry Woodard

FROM:    Dean Matter ⅅⅮⅯ

DATE:    November 29, 1995

FILE:    297-42

   This has reference to Rule 42(d) of the UP/TCU Agreement providing for the payment of unused sick leave.  Prior to 1993, employees could receive payment for unused sick leave in the month of February.  Because this payment was made at the first of the year, it was determined that current year sick leave would not be included in the "buy back" provisions of the Agreement.  When Rule 42 was changed to provide for payment in the month of December for unused sick leave, the Organization argued that current year sick leave should be included in the "buy back" provisions of Rule 42. Because the payment is made at the end of the year, the Carrier agreed to allow payment of unused sick leave for all unused sick leave days including unused sick leave for the current year.

   If you have any questions concerning this interpretation of Rule 42, please do not hesitate to contact my office.

h:\ddm\1129.95