# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| NANCY AVINA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-00480-CV-RK |
| | ) |
| UNION PACIFIC RAILROAD | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Union Pacific Railroad Company's motion for summary judgment. (Doc. 56.) The motion is fully briefed. (Docs. 57, 69, 70, 76, 77.) After careful consideration, the motion is **GRANTED in part and DENIED in part**.

### Background[1]

Plaintiff Avina is a 46-year-old, Hispanic female. Defendant hired Plaintiff in September 2005. Avina's first position with Defendant was on the Extra Board, which meant Avina did not have a normal shift, but was on call 24 hours a day, seven days a week. Avina would receive two hours' notice before having to report for work. Between 2006 and 2011, Avina obtained several positions with Defendant as a Material Handler, GEB General Clerk, and Utility Clerk. In 2011, Avina moved into the Supply Department as a Material Handler and remained there until her position was abolished in December 2019. After the abolishment of her Material Handler position in December 2019, Avina bid back into a Utility Clerk position. Currently, Avina's position is a Relief Utility Clerk, where Avina drives three times a week and then relieves the Yard Office Coordinator/Chief Clerk two times a week.

In 2014, Avina was subpoenaed to be a witness for Shelby Monaco in a sexual harassment case against Defendant that was tried in Jackson County, Missouri, from November 17-21, 2014. Avina appeared at trial and testified against Defendant. The Monaco trial resulted in a verdict for

---

[1] The following facts are taken from the parties' statements of uncontroverted material facts. The Court recognizes that many of the following facts are in fact controverted. However, for the purposes of summary judgment, the Court finds sufficient evidence to support these facts. Such facts are not necessarily established for purposes of trial.

Shelby Monaco, in the amount of $20,000. The total judgment entered against Defendant was $229,643.06 plus interest.

Within the first four years of Avina's employment, Avina attempted to be qualified for the Chief Clerk and Assistant Chief Clerk position but was not allowed to exercise her seniority rights approximately four separate times. There were four white co-workers, with less seniority, who leapfrogged over Avina – one of whom was Cindi Wood. Kantrell Robinson (African American) testified that Wood was installed as Assistant Chief Clerk within four to six months. When Robinson asked why Wood got the opportunity and Robinson did not, despite Robinson having more seniority, Union Pacific officials told Robinson, "Manager discretion. They do what they want."

Avina applied for the material supervisor 1E position in approximately 2008. Kim Peterson (white) was also interviewed for the position, and Avina and Peterson prepared for the interviews together. Avina interviewed only with Craig Mitchell. Peterson was awarded the position, and Peterson later told Avina that Mitchell did not want Avina to have the position, and Mitchell had suggested to Peterson that she enroll for college courses so Peterson would have an advantage over Avina.[2]

Avina sought a transfer and applied for a position in the diesel shop between 2009-2010 but was never given the opportunity to interview. Gayla Krouse (white) applied for the same position and was given the position without having to interview for the position. Avina testified the hiring manager, Mr. Slattery (white), did not like her. Avina stated Slattery's demeanor with the way he looked at her and the way he spoke to her was different. She indicated he would "just talk to . . . Caucasian people." Around the same time, Avina sought a transfer to train services, and again was denied an opportunity to interview for that position.

Avina testified she applied again for the material supervisor 1E position when it became available in June 2017, though Defendant contests whether she actually applied or followed the correct procedure to apply. Avina testified she was threatened not to apply by Samantha Miller, because Miller told Avina that Miller was only going to consider one individual in Supply, and she was already going to take that position. Avina questioned Miller why the position was

---

[2] Defendant objects on the ground of inadmissible hearsay. While the parties have not briefed the issue of hearsay extensively, the Court has only included statements it believes could be admissible under an exclusion or exception to the hearsay rule. However, the Court reserves final ruling on such issues until trial.

2

bulletined if everyone was not getting the opportunity to qualify or apply for it, and Miller told Avina it was "none of your business." Miller denies having memory of Avina speaking with Miller about the 1E position specifically and denies knowing who the bid would be awarded to. Avina testified she still applied by submitting her resume to Miller, exactly as the bulletin requested. Robinson testified she saw Avina, in passing, in the clerical break room, as Avina was faxing her resume in application for the position. Robinson also submitted her resume via email, and via facsimile, in applying for the material supervisor 1E position. Neither Avina nor Robinson were afforded an interview. Melanie King, a younger, white female, was selected for the position.

Avina raised concerns to Cindi Wood as Union President when King was selected as supervisor. Avina testified Wood even said, "You have a point because I can't believe they picked Melanie over me." Avina believes she mentioned "age discrimination" to Wood because King had not been in the Supply Department long enough to have the knowledge and experience required for the position. Michelle Collins (African American) also felt the selection of King was age discrimination and race discrimination.

After King was awarded the supervisor position, King did not know how to do the work, so Miller and King would try to give the work to Avina, in addition to Avina's regular duties. If Avina would not do King's work as instructed by Miller, Miller would retaliate against Avina.

Avina applied for an administrative aide position in June 2018. Avina was sent an email thanking her for applying, but that she was not being considered for the position. Avina went to Jennifer Perkins, seeking feedback as to why Avina was not being given another opportunity, and Perkins told Avina they already had an employee from the Supply Department in mind for the position. Avina questioned why the position is even posted for bid if there is not going to be a fair opportunity given to all and Perkins stated, "It has to look formal because it's the process." After Avina had already seen the bulletin awarding the administrative aide position to Melanie King, she received a phone call from Superintendent, Kelli Dunn, and two other individuals to be interviewed on the spot for the position.

The material supervisor 1E position became available once again due to King being awarded the administrative aid position. Avina asserts she applied for the position, not only by bidding through the system but by submitting her resume as requested. Perkins testified Avina did not apply, because "[s]he did not send in her resume." Avina was not afforded an interview for this position, and Cindi Wood was selected for the position. Wood initially was deemed to not be

3

qualified for the supervisor position just one year earlier in 2017. Robinson testified that Wood had to receive training from Avina, that Avina did most of the work in those departments, and that Avina had "way more knowledge" than both Wood and Perkins.

Samantha Miller came to Kansas City in March 2017 as the Manager of Supply Operations. Immediately after Miller assumed the position of Manager of Supply Operations, Miller introduced herself to Michelle Collins as the person that was going to "make everyone's lives miserable." Avina described how Miller would get into Avina's face and scream at her or harass Avina by recording Avina on Miller's phone. Miller would scream and slam doors. Miller would also fabricate events. For example, Miller called Avina and falsely said Melanie King accused Avina of being insubordinate. On another occasion, Miller wrote up Avina for being late or being a no-call, no-show when Avina was actually on vacation. Avina additionally described that Miller would raise her voice and scream at the minorities, direct the minorities in a bad demeanor, slam doors on the minorities, and just caused a hostile work environment for the minorities most of the time.

Avina testified she and Collins always had excessive work, and Miller gave them double the amount of work versus other employees. Avina testified everyone but her and Collins had only one job to do and that no other employee was required to work both the Material Handler and Material Clerk positions in any given day. Collins agreed the workload was not equally distributed between employees. Avina testified Miller would haphazardly change Avina's work location from Kansas to Missouri and vice versa without informing Avina. Miller would do it unpredictably over the course of six months – two to three times a week – and Miller was the first manager to do that. For instance, Miller would instruct Avina to report to Missouri, and then Miller would report Avina as a no-call, no-show in Kansas. In June 2017, Avina made a safety complaint regarding an eye wash station. On July 10, 2017, Avina was coached under the MAPS Policy due to violating Rule 1.15 – Not leaving an assignment without relief. Miller left Defendant's employment on June 2, 2018.

Jennifer Perkins (white) assumed the Manager of Supply Operations position on July 1, 2018. On October 3, 2018, Perkins held a breakfast for the department. Avina testified of the event: "[A]s soon as I got there, Cindi Wood … was telling Perkins and the group … 'Well, have you guys heard Kantrell Robinson is coming over here? We need to hurry up and qualify Michael

4

because we don't want her here.'"  Neither Perkins nor Wood mentioned Robinson's race or gender at the breakfast.

Robinson was disqualified from the Material Handler position on February 26, 2019. On March 5, 2019, a formal hearing was held and Avina testified on behalf of Robinson during such hearing. After Avina testified on behalf of Robinson, Perkins purposely would avoid Avina if Avina sought instruction in order to complete her job. Perkins would not answer Avina's telephone calls or Avina's emails. During the morning meetings or any other group discussion, Perkins displayed poor body language towards Avina and would ignore Avina.

In 2019, the position held by Avina was abolished. Avina testified only the Missouri positions were being abolished and asked why her position in Kansas was also being abolished. During this time, the shops in both Kansas and Missouri were being closed and winding down, though the parties dispute the timing of such events. Wood stayed on in Kansas to help wind down.

Avina was recently qualified as a Relief Chief Clerk and was threatened to be written up and disqualified by her supervisor, Jeremy Schultz, for not making a phone call. Avina did attempt to call Schultz when the train crew was running late, but Schultz did not answer his phone. Avina was not afforded the full four-week training period as allowed by the collective bargaining agreement ("CBA"). Collins was not afforded the appropriate training period either. Robinson was disqualified for not making a phone call. Collins was written up and drug tested for not making a phone call. Jerry Kirkpatrick, Union Representative and Yard Office Coordinator, testified in his deposition that in his 41-year career, he had observed other employees not follow the rule of alerting the run-through manager when an employee is running late, and none of those other individuals had been disqualified from their position.

Plaintiff and Collins assert that Caucasian women are doing similar things and are not being reprimanded for it. For example, Plaintiff testified that Cheryl Harris was a Chief Clerk who was unprofessional, did not do her job right, and was able to perform her job for five years without getting disqualified. Further, Robinson testified "over a period of time there's things and events that happened, and our white [co-workers] do some of the same things. They're not disciplined. They're not wrote up (sic)."  Jolenta Goode (African American) who works at Union Pacific, stated she has witnessed and personally experienced unfairness between races at Union Pacific. Goode has witnessed minorities not being given the same forgiveness for mistakes and are

5

disciplined differently than white employees. Throughout Collins's 41-year career at Union Pacific, she has witnessed (and experienced) that management likes to pick on minorities more than their white counterparts.

Regarding age, Robinson specifically detailed she had heard manager Aaron Keith say, "They're old. Their memory, they can't remember stuff," as well as, "All these old people." Robinson pointed out that Manager Jeremy Schultz also made comments related to age similar to, "I wish some of these women would retire," as well as, "I wish some of these old people would just retire."

## Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted).

## Discussion

Plaintiff brings claims for race discrimination and retaliation under 42 U.S.C. § 1981 and age discrimination under 29 U.S.C. § 623 (ADEA).[3] In discrimination cases, a plaintiff can establish a claim by presenting direct evidence of discrimination or through circumstantial evidence. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010); *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007). Plaintiff presents no direct evidence of discrimination. Where no direct evidence of discrimination exists, the Court applies the *McDonnell Douglas* burden shifting framework. *Id. Lake* summarizes the framework well:

> Under *McDonnell Douglas*, the plaintiff initially has the burden to establish a prima facie case of discrimination. A prima facie case creates a rebuttable presumption of discrimination. The burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its decision. If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext for discrimination.

---

[3] Though the discrimination claims and retaliation claims are contained in two respective counts (under § 1981 and ADEA), the Court, as well as the parties, analyze the claims as four independent claims: race discrimination under § 1981, retaliation under § 1981, age discrimination under ADEA, and retaliation under ADEA.

6

*Lake*, 596 F.3d at 873-74 (internal citations and quotations omitted). Defendants make several arguments why summary judgment should be granted. The Court will address each.

I. **Racial Discrimination and Retaliation**

   A. **Claims that are Time-Barred**

Avina's claims under § 1981 are governed by a four-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Avina filed the instant lawsuit on June 20, 2019. Thus, any conduct occurring before June 20, 2015, is time-barred and Avina cannot maintain an independent claim for any such conduct. Further, Avina alleges discrete acts of discrimination, and as such the continuing violation theory does not apply. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111-14 (2002). However, conduct occurring before June 20, 2015, may be relevant evidence of discrimination after June 20, 2015. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113 (a plaintiff is not barred "from using the prior acts as background evidence in support of a timely claim.").

   B. **Prima Facia Case (as to claims after 2015)**

To establish a prima facie case of race discrimination pursuant to § 1981, Avina must show: (1) she is a member of a protected class; (2) she met Union Pacific's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Lake, Inc.*, 596 F.3d at 874. Defendant argues Avina cannot make a prima facia case because she cannot show circumstances which give rise to an inference of discrimination. Defendant's argument is without merit.

Here, the first three elements are not contested.[4] Plaintiff provides sufficient evidence to give rise to an inference of discrimination. In addition to testifying about Miller's abusive behavior, Avina specifically testified Miller treated her differently. Avina testified Miller would fabricate events or wrongly write Avina up, give her excessive work compared to other employees, and change her work location without informing her. Unlike a Plaintiff's subjective belief about discrimination, the testimony of Avina provides specific examples of potential discrimination sufficient to create an inference of discrimination. This is in addition to evidence that minorities are treated differently, disciplined differently, and passed over for interviews even though they

---

[4] The Court notes Defendant may contest the elements to specific actions or claims, but as a whole, Defendant concedes, for the purposes of summary judgment only, the first three elements are satisfied.

7

may be more qualified than their white counterparts. As, such, Plaintiff has presented a prima facia case of discrimination.

Avina also alleges racial discrimination for failure to promote. To establish a failure to promote claim Avina must show that she is: (1) a member of a protected class; (2) qualified and applied for the promotion; (3) was rejected; and (4) another employee who was not a member of a protected group was promoted instead. *Cunningham v. Kansas City Star Co.*, 995 F. Supp. 1010, 1022 (W.D. Mo. 1998) (citing *Marzec v. Marsh,* 990 F.2d 393, 395–96 (8th Cir. 1993)). Defendant argues Avina never applied for certain positions, but genuine issues of fact exist. For instance, as to the 2017 material supervisor position, Avina testified she applied to the job, was not provided an interview, and Melanie King, a younger, white employee, was selected for the position. There is also evidence that King was less experienced than Avina or others who applied for the position. Regarding the 2018 material supervisor position, Avina again testified she applied for the position, but was not afforded an interview. Cindi Wood was given the position. There is additional testimony that Wood was less qualified than Avina and had to receive training from Avina once awarded the position. Moreover, there is testimony to the effect that when interviews were given, despite already selecting a candidate, it was done to make the process look formal. From these facts, an inference of discrimination can be made because a reasonable trier of fact could determine that when a company hires a less-qualified, white employee instead of a more qualified, Hispanic employee, the decision was racially discriminatory. As to the 2018 administrative aide position, Defendant concedes Plaintiff makes a prima facia case.

Defendant argues Avina never applied for the material supervisor positions and there were specific reasons why King was hired. However, Avina's testimony is competent and admissible evidence to contradict Defendant's assertions. *See also Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011) (Even if plaintiff did not apply, "[f]ailure to formally apply for a position does not bar a plaintiff from establishing a prima facie case, as long as the plaintiff made every reasonable attempt to convey [her] interest in the job to the employer.") (citation and internal quotation omitted). A trier of fact is entitled to believe Avina's testimony and disbelieve the assertions of Defendant as to whether Avina applied, the correct process to apply, and consideration of applicants. Thus, genuine issues of fact exist as to the relevant positions Avina may have applied for, and Plaintiff has made a prima facia case for failure to promote.

### C. Defendant's Legitimate, Nondiscriminatory Reason

Next, the Court considers if Defendant has any legitimate, nondiscriminatory reason for its actions. "This burden is exceedingly light;" Defendant must merely proffer a non-race, non-age based, or non-retaliatory reason." *Ottman v. City of Indep.*, Mo., 341 F.3d 751, 758 (8th Cir. 2003). Here, Defendant offers evidence that Miller was abrasive and harsh with most employees, not just the minority or older ones. Further, Defendant asserts it treated Avina consistent with its policies at all times. Regarding the failure to promote claims, Defendant offers evidence Avina failed to correctly apply for some jobs, and they hired the most qualified candidate for each position. Therefore, Defendant has sufficiently offered legitimate, nondiscriminatory reasons for its actions.

### D. Pretext

Finally, the Court turns to whether Plaintiff has offered sufficient evidence of pretext to survive summary judgment. To rebut the legitimate, nondiscriminatory reasons of Defendant, Avina must "point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence does not directly contradict or disprove the defendant's articulated reasons for its actions." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 995 (8th Cir. 2011) (cleaned up). "Plaintiff must . . . establish the existence of facts which if proven at trial would permit a jury to conclude that the defendant's proffered reason is pretextual and that intentional discrimination was the true reason for the defendant's actions." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 958 (8th Cir. 1995).

Here, there is sufficient evidence of pretext. Avina has presented evidence of several positions for which she applied but was not selected. Avina has presented evidence that other white and younger employees were given the positions instead. Further, Avina has presented evidence that the hiring process was predetermined, or at a minimum, Avina may have received less consideration than others. For instance, in 2008, Avina allegedly applied for the material supervisor position. Kim Peterson was awarded the position. Kim Peterson also allegedly told Avina that Craig Mitchell, who interviewed Avina, told Peterson he did not want Avina to have the position and suggested Peterson take classes to have an advantage over Avina. While this occurred before 2015, these facts are relevant in establishing genuine issues of fact as to pretext. Avina provides similar testimony and evidence regarding positions she allegedly applied for throughout her employment with Defendant, including positions in 2009, 2017, 2018, and 2020.

From these facts, a reasonable trier of fact could disbelieve Defendant's stated reasons and find intentional discrimination based on race or age.

Avina has also presented other evidence which could create an inference of pretext. Avina provided testimony that Samantha Miller treated her and other minorities differently. Specifically, Avina testified she was given excess work compared to other employees and had her location changed without notice. Avina also testified to a conversation in which Jennifer Perkins stated another employee should be qualified soon so as to prevent Kantrell Robinson from getting a position. Perkins allegedly stated, "We need to hurry up and qualify Michael because we don't want her [(Robinson)] here."

Finally, there is evidence minorities were treated differently and suffered greater disciplinary actions than their white counterparts for the same or similar conduct.

Defendant's arguments here are without merit at the summary judgment stage. Defendant argues any actions attributed to Miller fail because Avina admitted Miller's actions were in response to a safety report. However, Avina's testimony regarding the treatment of minorities sufficiently controverts this and may allow for an inference of pretext. Further, Defendant argues Miller disqualified Peterson, an under-40, Caucasian woman from the 1E material supervisor position, which led to the June 2017 opening. While this is clearly a relevant argument, it does not preclude a trier of fact from finding pretext based on the other practices of Defendant in this case.

Next, Defendant argues Avina never applied for the 1E material supervisor positions. Avina's testimony creates a genuine issue of fact on this issue. Defendant cites to *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010), for the proposition that Avina's testimony is insufficient here. However, in *Anuforo*, the self-serving allegation was a general denial of liability by Plaintiff. *Id.* In contrast, contrary testimony, given under oath, is sufficient to survive summary judgment if it raises a genuine issue of material fact. *See Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir .1988) ("any party could head off a summary judgment motion by supplanting previous depositions…", indicating deposition testimony is competent evidence at the summary judgment stage). From the facts presented, a reasonable trier of fact could believe Avina and disbelieve Defendant.

Defendant then argues it hired the most qualified candidate for the 2018 administrative aide position. "To support a finding of pretext, the applicant must show that the [Defendant] hired

10

a less qualified applicant." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1049 (8th Cir. 2011) (cleaned up). However, if Plaintiff can present probative evidence the interview process was a sham, a genuine issue exists as to whether the stated nondiscriminatory reason was pretextual. *See McKay v. U.S. Dep't of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) ("Lacking probative evidence that the interview process was a sham or that Thomson was the real decisionmaker, McKay failed to introduce evidence creating a genuine issue whether this nondiscriminatory reason was pretextual."). Defendant's argument fails here as Avina has presented evidence the hiring process may have been applied differently to different individuals. Avina was sent an email thanking her for applying but stating she was not being considered for the position. Avina sought feedback as to why Avina was not being given another opportunity and was told Defendant already had an employee from the Supply Department in mind for the position. Avina questioned why the position is even posted for bid if there is not going to be a fair opportunity given to all, and Perkins stated, "It has to look formal because it's the process." Avina had already seen the bulletin awarding the administrative aide position to Melanie King, and she and two other individuals received a phone call from Superintendent Kelli Dunn to be interviewed on the spot for the position. An interview after the position has already been filled creates a reasonable inference the hiring or interview process may have been a sham. Additionally, Avina has presented evidence she was more qualified. Although Defendant has explanations and facts to support a contrary inference, the evidence presented by Plaintiff, even if primarily through her own sworn testimony, establishes a genuine issue of fact. Therefore, from these facts taken as a whole, a reasonable trier of fact could disbelieve Defendant's stated reasons for its actions and find intentional discrimination.

    E.  **Retaliation**

To establish a prima facie case of retaliation pursuant to § 1981, Avina must show: (1) she engaged in protected activity; (2) she suffered a material adverse employment action; and, (3) there was a causal connection between the protected activity and the adverse action. *Young v. Builders Steel Co.*, 754 F.3d 573, 579 (8th Cir. 2014). There is sufficient evidence Plaintiff has engaged in protected activity and suffered adverse employment actions. The only issue is whether a causal connection exists between them.

The Court applies the same analysis "to § 1981 retaliation claims and to retaliation claims under Title VII of the Civil Rights Act of 1964." *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025,

1030 (8th Cir. 2013). "Although the wording of § 1981 differs from that of Title VII, the underlying retaliation analysis is the same and [the Court] may look to Title VII precedent to inform [its] analysis of the elements under § 1981." *Id.* "Protected activity under Title VII includes, (1) opposition to employment practices prohibited under Title VII, and (2) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII." *Comstock v. Consumers Markets, Inc.*, 953 F. Supp. 1096, 1103 (W.D. Mo. 1996). "A materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. There must be a material change in employment status - a reduction in title, salary, or benefits." *Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) (cleaned up). "In addition, an employer's denial of an employee's request for training is not, without more, an adverse employment action." *Id.* at 697 (cleaned up).

Here, the only claims of adverse employment actions within the relevant time period are the denial of a promotion to the 1E material supervisor position in 2017 and 2018; the actions of Miller; the denial of a promotion to the administrative aide position in 2018; and the elimination of Plaintiff's position in 2019 or 2020.[5]

As to the alleged adverse employment actions, no causal connection exists. In each instance, Avina alleges no specific protected activity engaged in prior to the adverse actions. For instance, as to the 1E material supervisor position in 2017, the only alleged protected activity prior to that time was Avina's testimony in the Monaco trial. However, such testimony was given in 2014 and is too remote to infer a causal connection. *See Kipp v. Missouri Highway and Transp. Com'n.*, 280 F.3d 893, 897 (8th Cir. 2002) (holding, in a Title VII retaliation case, that two months was too long to permit a causation inference). As to the actions of Miller, while Avina testifies Miller treated minorities differently, she fails to testify to any facts tying those specific actions to any protected activity. Thus, while her testimony is sufficient for a claim of racial discrimination, it is insufficient to support a claim of retaliation. As to the positions in 2018, while Avina did complain of harassment, such complaints were made nearly six months prior to her applications. Thus, the protected activity is too remote to infer retaliation. *Id.* Finally, regarding the abolishment of Avina's position, at the earliest, it was abolished in October 2019. Avina's most recent protected activity prior to that was the filing of the instant lawsuit in June 2019. Avina fails to

---

[5] It is disputed whether Plaintiff's position at the Kansas location was abolished in 2019 or 2020.

present enough factual support to find a causal connection between her protected activity and any adverse employment action.

On a final note, the Court addresses Plaintiff's argument of systematic retaliation. While Avina is correct that the Eight Circuit, in *Kim v. Nash finch Co.*, declined to decide if each act constituted an adverse employment action, the plaintiff in that case had alleged systematic retaliation. 123 F. 3d 1059, 1060. Here, Plaintiff does not allege systematic retaliation, and other Courts have found when the plaintiff fails to plead systematic retaliation, each alleged retaliatory act should be considered a separate adverse employment action. *See e.g., Fercello v. Cty. Of Ramsey*, 612 F.3d 1069, 1084 (8th Cir. 2010); *Muldrow v. City of St. Louis*, No. 4:18-CV-02150-AGF, 2020 WL 5505113, at *14 (E.D. Mo. Sept. 11, 2020). Therefore, Avina fails to present a genuine issue of fact as to her retaliation claims, and the Court will grant Defendant's motion on this point.

## II. Age Discrimination and Retaliation

"The ADEA protects individuals aged 40 and over by prohibiting employers from discharging or otherwise discriminating against such individuals with respect to their compensation, terms, conditions, or privileges of employment on the basis of their age." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011) (citing 29 U.S.C. § 623(a)). Without direct evidence, ADEA claims follow the same *McDonnell Douglas* burden-shifting framework outlined above. *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1119 (8th Cir. 1997).

### A. Claims that are Time-Barred

The ADEA requires the filing of a Charge of Discrimination with the EEOC within 300 days of the alleged act of discrimination. 29 U.S.C. § 626(d)(2). Avina filed her Charge on February 26, 2019. Applying the respective statute of limitations, Avina's claims of discriminatory acts prior to May 2, 2018, are time barred. *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 825 (8th Cir. 2003). Thus, any claim Avina might make regarding the June 2017 1E material supervisor position is time-barred as it occurred almost 630 days before she filed her Charge. *Id.*

### B. Prima Facia Case

To establish a prima facie case of age discrimination, Avina must show: (1) she was at least 40 years old; (2) she met the applicable job qualifications, (3) she suffered an adverse employment action; and, (4) there is some evidence that age was a factor in Union Pacific's decision. *Rahlf v.*

13

*Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011). In regard to any alleged failure to hire/promote Avina must demonstrate: (1) she is over 40 years old; (2) she was otherwise qualified for the position; (3) she suffered an adverse employment action; and, (4) a younger person was hired to fill the position. *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 856 (8th Cir. 2003). At all times, Avina retains the burden of persuasion to prove her age was the "but for" cause of any alleged adverse employment action. *Gross v. FBL Financial Services*, 557 U.S. 167, 176 (2009); *Rahlf*, 642 F.3d at 637.

Here, as to the 2018 1E material supervisor position, Defendant's only argument is Avina never applied for this position. As noted above, the Court finds a genuine issue of fact exists here. Additionally, Defendant concedes a prima facia case has been established as to the 2018 administrative aide position. In each instance, a younger employee who was arguably less qualified was given the position over Avina. Defendant argues Avina's reference to seniority defeats her claim because seniority is different than age. This argument fails because the facts suggest younger employees were hired in each instance as it relates to the 2018 positions. Further, while not always correlated, seniority at Defendant's company may also closely relate to the age of the individual. Therefore, a prima facia case has been made for age discrimination as it relates to the 2018 positions.

### C. Defendant's Legitimate, Nondiscriminatory Reason

As discussed above, Defendant has offered legitimate, nondiscriminatory reasons for its actions.

### D. Pretext

For many of the same reasons above, the Court finds there is sufficient evidence of pretext. There is evidence the hiring process was applied differently to younger individuals and younger individuals were afforded greater consideration than older ones. There is evidence the interviews given to Avina were merely a formality to make the process look legitimate and not predetermined. Finally, Robinson testified managers in her department made comments to the effect of, "They're old. Their memory, they can't remember stuff," as well as, "All these old people." Robinson pointed out Manager Jeremy Schultz also made comments related to age similar to, "I wish some of these women would retire," as well as, "I wish some of these old people would just retire." Jeremy Schultz is one of Avina's supervisors. Therefore, at this stage, the Court finds a genuine

issue of material fact exists as to Plaintiff's age discrimination claim and summary judgment will be denied.

### E. Retaliation

Plaintiff abandons her retaliation claim under ADEA. Therefore, the Court will grant summary judgment on this claim.

## Conclusion

After careful consideration, the motion is **GRANTED in part and DENIED in part.** Specifically, Defendant's motion as to Plaintiff's Race and Age discrimination claims is **DENIED**. Defendant's motion as to Plaintiff's retaliation claims is **GRANTED** and those claims are dismissed.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: July 9, 2021