IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NANCY AVINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 4:19-cv-00480-RK |
| UNION PACIFIC RAILROAD ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MOTION UNDER RULE 54(b)
FOR RELIEF FROM AN INTERLOCUTORY ORDER
AND SUPPORTING SUGGESTIONS**

> **For a wise man once said: An error doesn't become a mistake until you refuse to correct it.**
> **- *John F. Kennedy***

Plaintiff respectfully submits that the Court erred by dismissing Plaintiff's 42 U.S.C. §1981 race discrimination claims on the 2017 and 2018 1E Material Supervisor position on the grounds of preemption / lack of subject matter jurisdiction.  Simply put, Plaintiff's claims are based on a federal statute other than the RLA and Plaintiff's claims do not require the Court to interpret any provision of a collective bargaining agreement.  This error can and should be corrected by reinstating those claims so that they may be tried together with the claim relating to the 2018 Administrative Aide position when the case is reset for trial.  Plaintiff therefore moves the Court pursuant to ***Fed.R.Civ.P. 54(b)*** to reinstate those claims.

# Table of Authorities

**Cases**

*Benson v. Northwest Airlines,* Inc., 62 F.3d 1108 (8th Cir.1995) ................ 11

*Blackorby v. BNSF Ry. Co.,* 2018 WL 11193334, at *1 (W.D. Mo. Feb. 22, 2018) ................................................................................................ 2

*Craik v. Minnesota State Univ. Bd.,* 731 F.2d 465, 472 (8th Cir. 1984) ..... 8

*Deneen v. Northwest Airlines. Inc.,* 132 F.3d 431 (8th Cir.1998) ............... 11

*Disc. Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.,* No. 2010 WL 3522476, at *2 (W.D. Mo. Sept. 2, 2010) ....................................... 2

*Gore v. Trans World Airlines*, 210 F.3d 944, 947 (8th Cir. 2000) .............. 13

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256, 114 S. Ct. 2239, 2246, 129 L. Ed. 2d 203 (1994) ....................................................... 4, 5, 7, 12

*Hogan v. Northwest Airlines, Inc.,* 880 F.Supp. 685 (D.Minn. 1995).... 9, 10

*Johnson v. Humphreys*, 949 F.3d 413, 415 (8th Cir. 2020) ......................... 13

*Kim v. Nash Finch Co.,* 123 F.3d 1046, 1056 (8th Cir. 1997)........................ 12

*Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S. Ct. 1877, 1885, 100 L. Ed. 2d 410 (1988) ........................................................... 7

*Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S. Ct. 2068, 2078, 129 L. Ed. 2d 93 (1994) ........................................................................................ 7

*Markham v. Wertin*, 861 F.3d 748, 755 (8th Cir. 2017)................................. 5

*Meyer v. Schnucks Markets, Inc.,* 163 F.3d 1048, 1051 (8th Cir. 1998) .. 5, 6

*Norman v. Missouri Pac. R. R.,* 414 F.2d 73, 82–83 (8th Cir. 1969) ........... 11

*Schiltz v. Burlington N. R.R.,* 115 F.3d 1407, 1415 (8th Cir. 1997)........... 12

*Stokes v. Norfolk S. Ry. Co.,* 99 F. Supp. 2d 966, 971 (N.D. Ind. 2000)...... 10

*Sturge v. Northwest Airlines, Inc*., 658 F.3d 832, 838 (8th Cir. 2011) ........ 6

*Thomas v. Union Pac. R. Co.,* 308 F.3d 891, 893 (8th Cir. 2002) ................. 5

*Vosdingh v. Qwest Dex, Inc.,* No. 2005 WL 1323007, at *1 (D. Minn. June 2, 2005)................................................................................................. 2

*Williams v. Nat'l Football League*, 582 F.3d 863, 876 (8th Cir. 2009) ....... 5

**Rules**

*Fed.R.Civ.P. 54(b)*................................................................................. 1, 2

## RULE 54(B) STANDARD

Because the Court's order dismissing Plaintiff's 1E claims on the basis of preemption adjudicated fewer than all of the claims, it may be revised at any time before the entry of a judgment adjudicating all the claims. **Fed.R.Civ.P. 54(b).** The standard for reversing an order on a request for reconsideration is unclear. ***Vosdingh v. Qwest Dex, Inc.,*** No. 2005 WL 1323007, at *1 (D. Minn. June 2, 2005)("Since this Court owes no deference to itself and knows it makes mistakes, motions to reconsider will be granted and a change made when convinced an error has been made, manifest or not."). The Court has greater discretion to grant a motion to reconsider an interlocutory order than a motion to reconsider under Rules 59(e) or 60(b). ***Blackorby v. BNSF Ry. Co.,*** 2018 WL 11193334, at *1 (W.D. Mo. Feb. 22, 2018)(Bough, J.). At least two divisions of this Court have adopted as the standard for reconsideration of an interlocutory order a showing by a party "(1) that it did not have a fair opportunity to argue the matter previously, and (2) that granting the motion is necessary to correct a significant error." ***Id.; Disc. Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.,*** No. 2010 WL 3522476, at *2 (W.D. Mo. Sept. 2, 2010)(Kays, J.). That standard is more than satisfied here by virtue of the facts set forth below.

## Argument

Defendant first raised the issue of preemption on Friday, February 4, 2022, the fourth day of an eight-day trial. This was more than two and one-half years after Plaintiff filed her Complaint and more than a year after Defendant sought

2

summary judgment accompanied by suggestions that specifically point out the fact the 1E position at issue is governed by a collective bargaining agreement. *See* Doc 57, pp. 9-10.

Had Defendant raised its preemption argument at the time of summary judgment, Plaintiff would have had a minimum of thirty (30) days to research and brief the issue and the Court would have had months, not days, to thoroughly consider both parties' briefs and arguments and thoroughly research the issue itself, if necessary. If Defendant had even raised the issue by a Rule 12 motion at *any time* before trial, Plaintiff would have had a minimum of 14 days to thoroughly research and brief the issue.

Whether Defendant's delay in raising the issue until mid-trial was strategic and intended to compress the time for Plaintiff to respond and the Court to consider the issue, or not, the prejudice to Plaintiff is the same – Plaintiff was denied a full and fair opportunity to research the issues and the Court was forced to make a rushed decision in the middle of a jury trial, leading it to make a significant error. An unhurried analysis of that decision makes clear that the ruling was erroneous.

Fortunately, the jury's inability to reach a unanimous verdict on one of the remaining claims which resulted in a mistrial provides the Court with a unique opportunity to cure the error and resulting prejudice to Plaintiff by reconsidering and correcting its ruling now, at a time when the Court is not "under the gun" in the middle of a jury trial.

## I. A Correct and Faithful Application of *Hawaiian Airlines, Inc. v. Norris* Requires Reversal of the Court's Preemption Ruling

The United States Supreme Court has made clear that the Railway Labor Act ("RLA") does not "pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256, 114 S. Ct. 2239, 2246, 129 L. Ed. 2d 203 (1994). Conversely, claims are preempted only when "the employee's claim [is] firmly rooted in a breach of the CBA itself" or "the dispute may be conclusively resolved by interpreting the existing [CBA]." *Id.* at 2245-46. And, importantly, claims that present "purely factual questions" about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of the CBA. *Id.* at 2248.

Where, as here, there exists independent of the CBA the duty not to discriminate on the basis of race (*i.e.,* 42 U.S.C. §1981), the mere existence of a CBA does not supplant that duty or transform the racial discrimination claim into one preempted by the RLA. "The [Defendant's] obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the CBA did not relieve petitioners of this duty." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. at 258. Instead, the RLA preempts only those claims "firmly rooted in a breach of the CBA itself." *Id.* at 2246.

In this case, Plaintiff's dismissed claims are both "independent of the CBA" and present "purely factual questions." They do not arise under the CBA nor do they require the Court to interpret any provision of a CBA. Thus, the Court's

4

dismissal of Plaintiff's 1E Material Supervisor claims was erroneous and should be corrected.

II. **The Fact that Plaintiff's Counsel Mentioned the CBA in Opening and Showed it to Witnesses Does Not Establish that Plaintiff's Claim Requires the Court to Interpret the CBA**

In giving its rationale for its preemption ruling, the Court pointed out that Plaintiff's counsel referred to the CBA in opening statement, moved to admit the CBA into evidence and showed the CBA to witnesses. However, both the Supreme Court and the Eighth Circuit have made clear in cases binding on this Court that "the bare fact that a collective-bargaining agreement will be consulted"[1] and "mere reference to or consultation of a CBA"[2] is not enough to trigger preemption. *See also,* ***Thomas v. Union Pac. R. Co.***, 308 F.3d 891, 893 (8th Cir. 2002) ("Although the collective bargaining agreement would undoubtedly be referred to during the prosecution of this case, appellants' claim does not involve an interpretation of the agreement, and thus it is not preempted."). Rather, "the claim must *require* the interpretation of some *specific provision* of CBA." ***Markham v. Wertin***, 861 F.3d 748, 755 (8th Cir. 2017) (emphases added), *citing* ***Meyer v. Schnucks Markets, Inc.,*** 163 F.3d 1048, 1051 (8th Cir. 1998).

"Interpretation of a provision of a collective bargaining agreement entails the resolution of *a dispute about the meaning of the provision.*" ***Sturge v. Northwest***

---

[1] ***Hawaiian Airlines, Inc. v. Norris,*** 114 S. Ct. at 2248, n.8.
[2] ***Markham v. Wertin***, 861 F.3d 748, 755 (8th Cir. 2017); ***Williams v. Nat'l Football League***, 582 F.3d 863, 876 (8th Cir. 2009)("An otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication").

*Airlines, Inc.*, 658 F.3d 832, 838 (8th Cir. 2011)(emphasis added). "[W]here the meaning of a provision in the CBA is not disputed, the application of that provision to a set of facts involves only reference to the provision." *Id.* Like the plaintiff in *Sturge,* Plaintiff here "does not dispute the meaning of any of these provisions" and therefore "the evidence requires at most mere reference to a collectively bargained agreement." *Id.*

In this case, the Court's comments are suggestive of a belief that because Plaintiff referred to the CBA *a number of times*, that necessarily means that a specific provision of the CBA *requires* interpretation by the Court. As noted below, however, Defendant identified *no specific provision* of the CBA that requires interpretation and Plaintiff has found no authority supporting a ruling that the question of preemption turns on the *number of times* the CBA is referred to or consulted in opening statement or in the evidence.

### III. No "Specific Provision" of the CBA Requires Interpretation to Resolve Plaintiff's Claim

It was evident from the discussion of Defendant's Rule 50 motion that the Court was mindful that under binding Eighth Circuit precedent,

> the claim must *require* the *interpretation of some specific provision of a CBA*; it is not enough that the events in question took place in the workplace or that a CBA creates rights and duties similar or identical to those on which the state-law claim is based.

*Meyer v. Schnucks Markets, Inc.,* 163 F.3d at 1051 (emphasis added).

During argument on the Rule 50 motion, defense counsel was asked which provision of the CBA Defendant contended Plaintiff was asking the Court to

6

interpret. Defense counsel pointed to Rule 11 and Appendix M. However, defense counsel did not identify any "specific provision" in either section where there was "a dispute about [its] meaning" that required interpretation by the Court to resolve Plaintiff's claims. Defense counsel's answer merely pointed to "the bare fact that a collective-bargaining agreement [was] consulted," a fact that the Supreme Court has repeatedly made clear does not extinguish a claim that has a basis independent of the CBA. **Hawaiian Airlines, Inc. v. Norris,** 114 S. Ct. at 2248, n.8, *citing* **Livadas v. Bradshaw**, 512 U.S. 107, 124, 114 S. Ct. 2068, 2078, 129 L. Ed. 2d 93 (1994), *citing* **Lingle v. Norge Div. of Magic Chef, Inc.,** 486 U.S. 399, 413, 108 S. Ct. 1877, 1885, 100 L. Ed. 2d 410 (1988).

Plaintiff and Defendant have no disagreement as to the meaning of any provision in Rule 11 or Appendix M, and therefore Plaintiff's claim does not require the Court to interpret any such provision. To the contrary, Plaintiff has conceded that Defendant had the right under the CBA to adopt any procedure it wanted for 1E exempt or right of selection positions, *including requiring the use of iTrackForce to apply for such positions.*

The parties' disagreement relates to a *"purely factual question"*[3] – i.e., was there in fact, as Defendant contends, an unwritten requirement that *applicants for 1E exempt positions* had to place a computerized bid in iTrackForce *in addition to*

---

[3] "'[P]urely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" **Hawaiian Airlines, Inc. v. Norris**, 114 S. Ct. at 2248 *quoting* **Lingle v. Norge Div. of Magic Chef, Inc.,** 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988),

7

following the instructions on the bulletin to email or fax a resume to the hiring official?

Plaintiff disputes that Defendant had *in fact* adopted such a requirement for 1E exempt positions. Plaintiff presented sworn testimony from witness Kantrell Robinson that it was in fact *impossible* to submit a bid for a 1E exempt position through iTrackForce – 1E positions, although visible in iTrackForce, did not have "submit" buttons like the non-exempt positions that everyone agrees were required to be bid on through the iTrackForce system.

In an effort to divert the Court's attention towards contract interpretation principles, Defendant argued that the existence of this "purely factual dispute" amounts to "custom and usage" evidence which therefore necessarily means the Court is required to interpret a specific provision of the CBA. This sleight-of-hand argument is precisely the kind of argument that the Court would have properly rejected had the Court had sufficient time to consider the matter.

In essence, Defendant argues that because evidence of this "purely factual dispute" would be relevant evidence of custom and usage *if there were a contract dispute, ipso facto* there must a contract dispute. The fallacious premise in this argument is the unstated assumption that any particular evidence can only be relevant to a single claim. That is not so. Evidence relating to one claim may be relevant to and persuasive with regard to others. ***Craik v. Minnesota State Univ. Bd.,*** 731 F.2d 465, 472 (8th Cir. 1984). Here, what Defendant labels "custom and usage" evidence was not offered to show the meaning of any specific provision of the

8

CBA, but to show that *in fact* Defendant had no policy requiring submission of bids through iTrackForce for 1E exempt positions. There simply is no claim here that UP lacked the right under the CBA to adopt such a policy; instead, Plaintiff's claim raises the "purely factual question" whether such a policy was *in fact* adopted.

Defendant's National Labor Board case involves precisely the dispute that is absent from this case: did UP have the right under the CBA to adopt – for bargaining unit positions that were *non-exempt, non-1E* positions – a policy that required bidding through iTrackForce. Obviously, evidence of the adoption of such a practice by UP and acquiescence in the practice by the union sufficed there as custom and usage evidence that tended to show that adoption of such a practice was permissible under the CBA. Again, that is not the question presented by Plaintiff's claim which relates to an exempt 1E position.

Likewise, the district court case of ***Hogan v. Northwest Airlines, Inc.,*** 880 F.Supp. 685 (D.Minn. 1995), upon which the Court seems to have placed great reliance does not actually support the Court's preemption ruling. As the Court noted, a question presented in ***Hogan*** was whether the Plaintiff applied for the position at issue – "Northwest contends that Hogan cannot establish a prima facie case of discriminatory failure to hire because he cannot establish that he applied for the position he claims he was denied." *Id.* at 689. Further, "Northwest argue[d] before this Court that Hogan did not apply for the Bulletin Number 92–360 position in accordance with the procedures set forth in Article 9 of the Blue Book." *Id.* at

9

691. The Court's opinion does not contain any reference to how or when Hogan said he *did* apply. The opinion merely reflects Hogan's argument that,

> the Blue Book does not apply to the janitorial positions at issue here because those positions became "company select" positions when it appeared that no "eligible bidders" had applied to fill them, thus taking them outside the scope of the Blue Book's vacancy procedures.

*Id.* at 690.

**Hogan** thus presents the inverse or exact opposite of Plaintiff's claim here. In **Hogan,** the plaintiff *failed to follow* the application procedure laid out in the CBA and asked the court to *interpret* the CBA to determine that he was not required to do so under the circumstances so his claim would survive. The district court correctly granted summary judgment, ruling that a determination whether Hogan's conduct constituted an "application" required interpretation of the vacancy provisions of the Blue Book, a determination committed by Congress to the exclusive procedures of the RLA. *Id.* at 691.

Here, Plaintiff's evidence is that she *followed* the procedures laid out in the bulletin and in the CBA. Unlike in **Hogan,** Plaintiff's claim does not require interpretation of the CBA and the defense presents only the "purely factual question" of whether Defendant in fact had adopted (as Plaintiff concedes Defendant was authorized by the CBA to do) a policy requiring submission of an iTrackForce bid for a 1E position.

Plaintiff's analysis and interpretation of **Hogan** is consistent with the analysis of the court in **Stokes v. Norfolk S. Ry. Co.,** 99 F. Supp. 2d 966, 971 (N.D. Ind. 2000), where the court declined to find preemption and cited many supporting

10

cases, including two from the Eighth Circuit: ***Deneen v. Northwest Airlines. Inc.,*** 132 F.3d 431 (8th Cir.1998) (Pregnancy Discrimination Act claim not precluded) and ***Benson v. Northwest Airlines,*** Inc., 62 F.3d 1108 (8th Cir.1995) (ADA claim not preempted).

The court in ***Benson*** also cited an earlier Eighth Circuit case, that given the short amount of time available, was not previously located by Plaintiff or otherwise brought to the Court's attention, that the Court may find helpful, ***Norman v. Missouri Pac. R. R.,*** 414 F.2d 73, 82–83 (8th Cir. 1969). The court in ***Norman*** noted:

> The Railway Labor Act is not basically a fair employment practice act nor has it been utilized as such. Its basic purpose is to foster and promote collective bargaining between employees and employers with a provision for continuity of service to the public while setting up a detailed and elaborate procedure for the resolution of major and minor disputes that occur in the operation of the railroads. On the other hand Title VII of the Civil Rights Act specifically prohibits racial and other discrimination in employment and employment opportunities.
>
> We, therefore, do not think the plaintiffs are confined to their administrative remedies, which appear without further examination to be inadequate, under the Railway Labor Act. The enactment of Title VII provides a more extensive and broader ground for relief, specifically oriented towards the elimination of discriminatory employment practices based upon race, color, religion, sex or national origin. Title VII is cast in broad, all-inclusive terms setting up statutory rights against discrimination based inter alia upon race. The rights granted by this Title are enforceable by individuals in the District Courts, provided, of course, proper administrative channels are utilized as set forth in the act. [*citations omitted*] Failure to process a complaint through the administrative procedures required by the Act is ground for dismissal. [*citation omitted*]
>
> The plaintiffs here are not attempting to require that the parties bargain in good faith to implement the statutory policy embodied in the Railway Labor Act but are seeking immediate determination of practices made

11

unlawful by Title VII. As contended by the amicus, we do not think that Congress intended to render the railroads immune from the efforts of their employees to pursue their statutory rights under Title VII. The railroads should not be allowed to escape the provisions of § 703 calling for the elimination of discriminatory employment practices by relying upon the provisions of the Railway Labor Act, any more than certified bargaining representatives may evade injunctive relief correcting invidious racial practices in disregard of their statutory responsibilities by relying on the Norris-LaGuardia Act. [*citation omitted*]

The analysis applicable to Title VII disparate treatment claims is the same for those brought under 42 U.S.C. § 1981. ***Kim v. Nash Finch Co.,*** 123 F.3d 1046, 1056 (8th Cir. 1997).

### IV. The CBA is not Inextricably Intertwined with Plaintiff's Claim

In explaining its ruling, the Court stated that it found "that the bulletining requirements are inextricably intertwined with the CBA" and that "[t]he jury must determine if the plaintiff applied and must look at the application requirements." That is quintessentially a "purely factual inquiry" that does not require the Court to interpret the CBA and therefore does not trigger preemption. ***Hawaiian Airlines, Inc. v. Norris***, 114 S.Ct. at 2251.

The Eighth Circuit cases that reference the phrase "inextricably intertwined" involve fact patterns unlike this case.

In ***Schiltz v. Burlington N. R.R.,*** 115 F.3d 1407, 1415 (8th Cir. 1997), Schiltz argued that BNR violated the ADEA by refusing to allow him to exercise his seniority rights in the St. Paul seniority district. That claim required the court to interpret the CBA to determine if Schlitz had seniority rights and it was that

required interpretation that was "inextricably intertwined" with Schlitz's ADEA claim, triggering preemption.

In ***Johnson v. Humphreys***, 949 F.3d 413, 415 (8th Cir. 2020), the plaintiff was a bargaining unit employee of UPS who was fired for what UPS alleged was an "offense of extreme seriousness" – dropping a pallet of merchandise from the back of his trailer on the ground damaging the merchandise. Under the CBA, UPS was entitled to fire an employee for a first-time offense only if it was an "offense of extreme seriousness." *Id.* The Eighth Circuit agreed with the district court that that "whether Johnson's offense was one of 'extreme seriousness,' a term unique to the CBA, is inextricably bound up in the prima facie case." *Id.* at 417. No similar term needs interpreting here.

In ***Gore v. Trans World Airlines***, 210 F.3d 944, 947 (8th Cir. 2000), the plaintiff was a mechanic and belonged to a union that had a CBA with the defendant. After plaintiff threatened to kill himself and other TWA employees, TWA called the police who handcuffed plaintiff while they searched his tool box for weapons. *Id.* Plaintiff submitted to a psychological examination after which he was reinstated. *Id.* at 948.

Gore thereafter sued TWA for false arrest, negligence, libel and slander, and invasion of privacy for publicly placing him in a false light and public disclosure of private facts. *Id.* The opinion notes that under the applicable CBA,

> includes a management rights clause, pursuant to which TWA issued Rules of Conduct and Personnel Regulations, providing in pertinent part that violence, threatening other employees, and firearms are prohibited from the premises and that the company reserves the right to make

13

> inspections of employee lockers, desks, lunch boxes, vehicles, and other items of personal property located on the premises when there is reason to believe they may contain prohibited items. Also, the collective bargaining agreement imposes contractual obligations on TWA to protect the safety of its employees. The agreement requires TWA to maintain safe working conditions and to promptly handle complaints involving the safety of working conditions.

*Id.* at 947-48. Because elements of Gore's state law claims required proof that TWA acted without justification, the Eighth Circuit agreed with the district court that this question was "inextricably intertwined" with consideration of the terms of the CBA and the claims were therefore preempted.

Again, there is no dispute as to the meaning of any term of the CBA and the elements of Plaintiff's claims present "purely factual questions" that are not "inextricably intertwined" with the CBA. Respectfully, this Court's rushed analysis in the middle of trial understandably reached an incorrect result.

## Conclusion

In the smoke and confusion of Defendant's last minute barrage of dozens of cases regarding preemption – an often complex and vexing issue – the Court understandably lost sight of Plaintiff's simple claim which presents a "purely factual question" that requires resolution by a jury – did Defendant's actions, when it admittedly knew of Plaintiff's interest in the position but nevertheless refused to interview her and instead chose a White and patently less qualified candidate, amount to unlawful discrimination? Plaintiff is entitled to have this "purely factual question" resolved by a jury.

14

Therefore, Plaintiff respectfully moves the Court to vacate, reverse, set aside and hold for naught its order finding preemption and therefore dismissing Plaintiff's claims of discrimination relating to the denial of Plaintiff's applications for the 2017 and 2018 1E Material Supervisor position. Plaintiff asks that the claims be reinstated so that they can be retried with the claims relating to the Administrative Aide Position.

*Respectfully submitted,*

**THE MEYERS LAW FIRM, LC**

By: */s/ Martin M. Meyers*
Martin M. Meyers  MO #29524
mmeyers@meyerslaw.com
4435 Main Street, Suite 503
Kansas City, Missouri 64111
(816) 444-8500
(816) 444-8508 *facsimile*

**THE POPHAM LAW FIRM**
DENNIS E. EGAN - MO #27449
degan@pophamlaw.com
COOPER S. MACH – MO #68223
cmach@pophamlaw.com
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Telecopier: (816) 221-3999

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

A true and accurate copy of the above and foregoing was served via email this 17th day of February, 2022 upon:

Kimberly F. Seten, Esq.
kseten@constangy.com
Charles S. Eberhardt, III, Esq.
ceberhardt@constangy.com
Constangy, Brooks, Smith, & Prophete, LLP
2600 Grand Blvd., Suite 750
Kansas City, Missouri 64108

Virginia L. Woodfork, Esq.
vwoodfork@constangy.com
Constangy, Brooks, Smith & Prophete, LLP
600 17th Street, Suite 2700S
Denver, Colorado 80202

Robert L. Ortbals, Jr., Esq.
rortbals@constangy.com
Constangy, Brooks, Smith & Prophete, LLP
680 Craig Rd., Suite 400
St. Louis, Missouri 63141

Attorneys for Defendant

*/s/ Martin M. Meyers*