IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| NANCY AVINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:19-cv-00480-RK |
| UNION PACIFIC RAILROAD | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY SUGGESTIONS IN SUPPORT OF
PLAINTIFF'S MOTION UNDER RULE 54(b)
<u>FOR RELIEF FROM AN INTERLOCUTORY ORDER</u>**

**I.      *The Order Dismissing Plaintiff's Race Discrimination
Claims is One Appropriate for Reconsideration***

The caselaw cited by Defendant on the standard for a motion for

reconsideration does not differ significantly from that cited by Plaintiff.  Plaintiff's

counsel agrees that reconsideration of orders should be reserved for rare

circumstances – which is exactly what this case presents by reason of the mistrial.

Had the jury reached a verdict, Plaintiff would have appealed the dismissal

and, if successful, returned for a second trial.  The occurrence of a mistrial means

that a second trial will take place *before* any appeal is taken and the appeal, if

successful, will result in a *third* trial.  Given this unusual circumstance, it only

makes sense for the Court to reconsider its order of dismissal, Defendant's

argument to the contrary notwithstanding.

Defendant contends that Plaintiff had a fair opportunity to argue this complex legal issue because it was discussed several times over a period of less than a week in the middle of a jury trial. That is inaccurate and unfair. Note that Defendant took the full 14 days permitted by the rules to file its memorandum in opposition to this motion for reconsideration.[1] Plaintiff was denied that same opportunity to fastidiously reflect on Defendant's argument, fully research the matter and fully and adequately frame her response. This deprivation is neither disproven nor cured by simply stating that the Court understood why Defendant did not raise the issue earlier. That is not the point. The point is that the time constraints were undeniable and severe.

Finally, Defendant's argument that if the finding of preemption was error, it was not a significant one is obviously wrong, given that the ruling effectively extinguishes Plaintiff's claims of discrimination relating to the 1E position.

## II. *Defendant Still Fails to Articulate a Specific Provision of the CBA that Requires Interpretation by the Court*

Despite having the benefit of the full fourteen (14) day response time, Defendant still finds itself unable to articulate a "specific provision" of the CBA as to which there is a "a dispute about the meaning of the provision." ***Sturge v. Northwest Airlines, Inc.***, 658 F.3d 832, 838 (8th Cir. 2011). That is because there is none. Defendant's sole attempt to do so consists of the following:

---

[1] And, despite Defendant having taken the full fourteen (14) days, Defendant's Memorandum violates Local Rule 7(d)(3) which requires a table of authorities for Suggestions exceeding 10 pages.

> *Avina presented Rule 11 to several witnesses* at trial in an attempt to demonstrate that Rule 11 did not require Avina to use iTrakForce to bid and that by faxing or e-mailing her résumé, Avina properly applied for the positions under the rule. *Avina even went as far as showing witness Jeffrey Anderson* Form 5 ("Application for Bulletined Position") in Appendix M of the CBA in an effort to demonstrate that Avina had properly applied by submitting her résumé only. See Pl.'s Ex. 79, p. 130. Moreover, *Avina presented several witnesses* with the posted bulletins for the positions in an effort to establish that she properly applied in accordance with the bulletins.

***Memorandum Opposing,*** p.11 (emphasis added).  Yes, the CBA was "consulted" and "referenced" with several witnesses but both the Supreme Court and the Eighth Circuit have unequivocally declared that "the bare fact that a collective-bargaining agreement will be consulted"[2] and "mere reference to or consultation of a CBA"[3] is not enough to trigger preemption.  Instead, the proponent of preemption must demonstrate the existence of a "specific provision" of the CBA as to which there is a "a dispute about the meaning of the provision."  ***Sturge,*** 658 F.3d at 838.  That Defendant has not done for the obvious reason that it cannot be done here.

Defendant makes <u>no</u> attempt to articulate the specific provision of the CBA regarding which there is a "dispute about [its] meaning" but instead simply repeats its argument that Plaintiff "showed" and "presented" the CBA to witnesses.  Simply put, Defendant's only showing is the very showing which the Supreme Court has held "plainly does not require [Plaintiff's] claim to be extinguished."  ***Hawaiian***

---

[2] ***Hawaiian Airlines, Inc. v. Norris,*** 114 S. Ct. at 2248, n.8.
[3] ***Markham v. Wertin***, 861 F.3d 748, 755 (8th Cir. 2017); ***Williams v. Nat'l Football League***, 582 F.3d 863, 876 (8th Cir. 2009)("An otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication").

3

*Airlines,* 114 S.Ct. at 2249, n. 8. As such, Defendant's showing falls far short of the legal mark.

Another clear sign that Defendant is aware that its argument will not survive critical legal scrutiny is that Defendant resorts to the tactic of straw-manning[4] Plaintiff's argument: "Avina's conten[ds] that the use of iTrackForce as the system of bidding does not conform with the requirement of the CBA." ***Memorandum Opposing***, p. 9.

On this record, Defendant's mischaracterization of Plaintiff's argument is troubling. Whatever deficiencies there might be in Plaintiff's arguments and briefing, a lack of clarity on this point is not among them:

> Plaintiff and Defendant have no disagreement as to the meaning of any provision in Rule 11 or Appendix M, and therefore Plaintiff's claim does not require the Court to interpret any such provision. To the contrary, **Plaintiff has conceded that Defendant had the right under the CBA to adopt any procedure it wanted for 1E exempt or right of selection positions, *including requiring the use of iTrackForce to apply for such positions***.
>
> *     *     *
>
> Plaintiff's claim does not require interpretation of the CBA and **the defense presents only the "purely factual question" of whether Defendant in fact had adopted (as Plaintiff concedes Defendant was authorized by the CBA to do) a policy requiring submission of an iTrackForce bid for a 1E position.**

***Plaintiff's Motion***, pp. 7, 10 (boldface added, italics in original).

Defendant's next argument simply begs the question rather than making the necessary showing:

---

[4] Straw-manning is the substitution of a weak imaginary argument that can be easily defeated in place of an argument that cannot be defeated.

4

[the] jury could not determine whether Avina's use of e-mail or fax to apply for the 2017 and 2018 1E Material Supervisor positions met the requirements to be considered an applicant for the positions *because this required an interpretation of the CBA* and the past practice of the use of iTrakForce which is a minor dispute and must be resolved in arbitration.

**Memorandum Opposing**, p. 12 (emphasis added). Declaring that Plaintiff's claim "require[s] interpretation of the CBA" is not the same as demonstrating how that is so.

Plaintiff has clearly and unequivocally conceded that Defendant had the right under the CBA to require the use of iTrackForce to apply for 1E positions. That concession leaves nothing in the CBA for the Court to interpret, but rather leaves only the "purely factual question" for the jury to determine whether Defendant in fact did so. And Defendant's reference to its oral testimony[5] that it had a "past practice" of requiring the use of iTrackForce to apply for 1E positions is merely another way of saying Defendant had "in fact" adopted this procedure, the "purely factual question" requiring resolution by the jury in this case.

Again, whether Defendant had actually adopted such a procedure is a fact question for the jury to decide – it does not present a dispute as to the meaning of any "specific provision" in the CBA. And, obviously, in the absence of a dispute, there is nothing in the CBA for this Court interpret.

---

[5] It bears noting that Defendant who has total access to and control over the documentation of its internal processes produced not a shred of documentary evidence supporting its assertion that Defendant has adopted a policy that 1E positions require the use iTrackForce to apply.

### III. The Evidence was Sufficient to Demonstrate Plaintiff Did Apply for the 1E Positions and for the Jury to Find Defendant's Asserted Non-Discriminatory Explanation Pretextual

Defendant repeats its argument that Plaintiff cannot show that she applied for the position. Not so. Plaintiff's testimony alone is sufficient to satisfy this prong of the prima facie case and Plaintiff's testimony on this point was supplemented and corroborated by the testimony of Kantrell Robinson that iTrackForce did not permit an applicant to apply for a 1E position through that system. Underlying Defendant's argument is the impermissible assumption that the Court is required to accept as true Defendant's testimonial evidence that applying for the position required placing a bid through iTrackForce. As Plaintiff pointed out at trial, the law requires this Court to ignore Defendant's evidence, unless it is uncontradicted, unimpeached, and comes from disinterested witnesses. ***Reeves v. Sanderson Plumbing Prod., Inc***., 530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000).

Defendant's argument also ignores the fact that "[t]he Supreme Court has warned against excessive quibbling over the prima facie case after the defendant has proceeded with evidence of a legitimate, nondiscriminatory reason for the challenged personnel decision. ***Easley v. Empire Inc.,*** 757 F.2d 923, 929–30 (8th Cir. 1985) *citing* ***United States Postal Service Board of Governors v. Aikens,*** 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

And even if the Court were permitted to accept as true Defendant's testimonial evidence that Plaintiff was required to place a bid through iTrackForce to be

6

considered an applicant, Plaintiff still made a submissible case of discrimination on the denial of the 1E position, at least as to the 2018 opening. Here's how.

Jennifer Perkins testified that not a single one of the five applicants who were afforded interviews in 2018 complied with the bulletin's unequivocal requirement that they fax or email their resumes to her. According to Perkins, every one of the resumes came to her from Omaha after having been submitted through iTrackForce. And yet, every one of these five applicants, four of whom were non-minority, was afforded an interview. At the very least, this raises a question as to why Defendant overlooked the application deficiencies of the other applicants for the position – who failed to email or fax their resumes to Perkins as required – yet refused to overlook the failure of the lone Hispanic applicant to submit a bid through iTrackForce.

A simple analogy illustrates the point. Assume the job posting was instead taped onto a glass door with the instructions, "ring bell twice to apply." A Hispanic applicant comes along and knocks on the door loudly. The interviewer hears the knock, comes to the door, looks through it and sees a Hispanic individual standing there. The interviewer then turns and walks away. Next, a series of white applicants come to the door and ring the bell once, not twice as instructed. The interviewer comes to the door and sees that the applicants are white and proceeds to admit each of them for an interview. This is a textbook example of discrimination. As this analogy effectively demonstrates, Defendant's non-discriminatory explanation that Plaintiff failed to apply self-destructs in the face of

7

Perkins' admission that none of the other "applicants" properly applied either, albeit that each of them defalcated in a different manner.

## IV.    Each of the Cases Defendant Cites are Distinguishable

Defendant cites ***Johnson v. Humphries***, 949 F.3d 413, 416 (8th Cir. 2020), for the proposition that *discrimination* cases such as this case are distinguishable from a *retaliation* case such as ***Hawaiian Airlines, Inc. v. Norris.*** However, the distinction present in ***Johnson*** is absent from this case. The ***Johnson*** court admittedly noted that discrimination cases, unlike retaliation cases, require a plaintiff to demonstrate that plaintiff was meeting the legitimate expectations of the employer. And, in ***Johnson,*** that required the court to interpret the CBA because of the specific facts of that case. Here, however, Craig Mitchell conceded that Plaintiff met the qualifications for the 1E position. Thus, the issue present in ***Johnson*** that distinguished it from ***Norris*** is absent from this case. Therefore, Avina's case is like ***Norris*** and unlike ***Johnson***.

Defendant also cites ***Gore v. Trans World Airlines***, 210 F.3d 944, 947 (8th Cir. 2000), without addressing or rebutting the arguments in Plaintiff's Motion as to why ***Gore*** is distinguishable: because elements of Gore's state law claims required proof that TWA acted without justification, the question was "inextricably intertwined" with the terms of the CBA which imposed on TWA contractual obligations to protect the safety of its employees. *See **Plaintiff's Motion,*** pp.13-14.

Defendant reliance on cases that obviously involve disputes between the parties to a collective bargaining agreement as to its interpretation does not advance

8

its argument. In these cases, *both sides agreed* that the meaning of a term of a CBA was in dispute:

- ***Consol. Rail Corp. v. Ry. Labor Executives' Ass'n.***, 491 U.S. 299, 311 (1989);
- ***Transp.-Commc'n Emps. Union v. Union Pac. R.R. Co.***, 385 U.S. 157, 161 (1966);
- ***Brotherhood of Loc. Eng'rs v. Union Pac. R.R. Co.***, 879 F.3d 754, 758 (7th Cir. 2017);
- ***Steelworkers v. Warrior Gulf Navigation Co.***, 363 U.S. 574, 578-79 (1980);
- ***United Transp. Union v. Kan. City S. Ry. Co.***, 172 F.3d 582, 586 (8th Cir. 1999);
- ***Bhd. of Maint. of Way Emples. Div./IBT v. Union Pac. R.R. Co.***, No. 8:17-CV-217, 2018 WL 4953010, at *5-6 (D.Neb. Oct. 12, 2018).

In all these cases, the issue was not *whether there was a dispute* that required interpretation of a collective bargaining agreement – that was a given. The issue was *whether the admitted dispute was a major dispute* – which a district court has jurisdiction to decide – *or a minor dispute* – which must be decided by an arbitrator. *See, e.g., Conrail*, 109 S.Ct. at 2480.

It is self-evident that cases where both sides agree there is need for the Court to interpret the CBA shed no light on the question of whether Plaintiff's claim here requires the Court to interpret a "specific provision" of the CBA as to which there is a "a dispute about the meaning of the provision." ***Sturge v. Northwest Airlines, Inc.,*** 658 F.3d at 838. Defendant's reliance on these cases where the existence of a dispute requiring court interpretation of a CBA was axiomatic is a further indication of Defendant's inability to demonstrate the existence of such a dispute in this case.

9

Finally, Plaintiff stands by the argument in its motion demonstrating that *Hogan v. Northwest Airlines, Inc.*, 880 F.Supp. 685 (D.Minn. 1995), properly analyzed supports Plaintiff's position in this case that there is no dispute requiring interpretation of the CBA. *Plaintiff's Motion,* pp. 9-10.

### Conclusion

Plaintiff's motion presents the Court with a unique opportunity to correct an erroneous ruling that was made under the most difficult circumstances – with neither Plaintiff nor the Court having the time customarily available to consider, reflect upon and resolve an issue of this complexity. Plaintiff respectfully renews its request that the Court to set aside its dismissal and reinstate Plaintiff's discrimination claims on the 2017 and 2018 1E Material Supervisor claims.

*Respectfully submitted,*
**THE MEYERS LAW FIRM, LC**

By:  */s/ Martin M. Meyers*
Martin M. Meyers  MO #29524
mmeyers@meyerslaw.com
4435 Main Street, Suite 503
Kansas City, Missouri 64111
(816) 444-8500
(816) 444-8508 *facsimile*

**THE POPHAM LAW FIRM**
DENNIS E. EGAN - MO #27449
degan@pophamlaw.com
COOPER S. MACH – MO #68223
cmach@pophamlaw.com
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Telecopier: (816) 221-3999

**ATTORNEYS FOR PLAINTIFF**

10

## CERTIFICATE OF SERVICE

A true and accurate copy of the above and foregoing was served via email this 14th day of March , 2022 upon:

Kimberly F. Seten, Esq.
kseten@constangy.com
Charles S. Eberhardt, III, Esq.
ceberhardt@constangy.com
Constangy, Brooks, Smith, & Prophete, LLP
2600 Grand Blvd., Suite 750
Kansas City, Missouri 64108

Virginia L. Woodfork, Esq.
vwoodfork@constangy.com
Constangy, Brooks, Smith & Prophete, LLP
600 17th Street, Suite 2700S
Denver, Colorado 80202

Robert L. Ortbals, Jr., Esq.
rortbals@constangy.com
Constangy, Brooks, Smith & Prophete, LLP
680 Craig Rd., Suite 400
St. Louis, Missouri 63141

Attorneys for Defendant

*/s/ Martin M. Meyers*